## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

JOSEPH MICHAEL ARPAIO, an individual
Fountain Hills, AZ

          Plaintiff,

v.

KEVIN ROBILLARD, an individual
c/o Huffington Post
770 Broadway
New York, NY 10003

And

HUFFINGTON POST, a corporation
770 Broadway
New York, NY 10003

And

TESSA STUART, an individual
c/o Rolling Stone
1290 Avenue of the Americas
New York , NY 10104

And

ROLLING STONE, a corporation
1290 Avenue of the Americas
New York, NY 10104

          Defendants.

Case No.:

**COMPLAINT**

## I.     INTRODUCTION

Plaintiff Sheriff Joseph Michael Arpaio ("Plaintiff Arpaio") brings this Complaint for general defamation, defamation per se, defamation by implication, tortious interference with prospective business relations and false light against Kevin Robillard ("Robillard"), Huffington Post ("HuffPo"), Tessa Stuart ("Stuart") and Rolling Stone.

## II.    JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III.   PARTIES

3.     Plaintiff Arpaio is an individual, natural person who is a citizen of the state of Arizona.

4.     Defendant Robillard is an individual, natural person who is, on information and belief, a citizen of Maryland.

5.     Defendant HuffPo is a nationwide news publication that published, as set forth herein, in this judicial district and with a major news bureau in this judicial district.

6.     Defendant Stuart is an individual, natural person who is, on information and belief, a citizen of California.

7.     Defendant Rolling Stone is a nationwide news publication that published, as set forth herein, in this judicial district and with a major news bureau in this judicial district.

## IV.   STANDING

8.     Plaintiff Arpaio has standing to bring this action because he has been directly affected by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendants.

V.      FACTS

**Background Facts**

9.      Plaintiff Arpaio is a long-time member of the law enforcement community who served as a Washington, D.C. and Las Vegas police officer following his honorable army discharge in 1953.

10.      In November of 1957, Plaintiff Arpaio was appointed as a special agent with the Federal Bureau of Narcotics, which later became part of the Drug Enforcement Agency ("DEA"), which is headquartered in Washington, D.C.

11.      Following his career with the DEA, Plaintiff Arpaio was elected as Sheriff of Maricopa County, Arizona in 1993. He held that position for almost 25 years or until January 1, 2017.

12.      In January of 2018, Plaintiff Arpaio announced that he would run for U.S. Senate in Arizona. He was defeated in the August 28, 2018 Republican primary.

13.      Plaintiff Arpaio intends to run for U.S. Senate or another public office again in 2020 (as well as pursue other political and governmental endeavors in this district) for the seat vacated by the late senator John McCain, which is currently held by John Kyl, a placeholder until the 2020 special election can take place.

14.      Defendants know of Plaintiff Arpaio's intention to run for the U.S. Senate in 2020 and knew of his intention to run at the time they published the defamatory article because it had been widely reported.

**Facts Pertaining to the Defamatory Publications**

15. Plaintiff Arpaio has been the target of two separate defamatory publications that falsely refer to and defame him per se as a convicted felon who was sent to prison (collectively the "Defamatory Publications").

16. Both articles contain false, defamatory factual assertions concerning Plaintiff Arpaio, as well as actionable false and misleading intertwined publications of fact and alleged opinion.

17. These false and misleading factual assertions are carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community – which is centered in this judicial district – as well as with the Republican establishment and donors in order to prevent him from successfully running for U.S. Senate in 2020 or another public office as a Republican.

18. On or about November 5, 2018, Defendant HuffPo published an article written by Defendant Robillard titled *Kyrsten Sinema Wants You To Know She's Not A Progressive*. Exhibit 1. (the "HuffPo Article").

19. In the HuffPo Article, Defendant Robillard falsely claimed and recklessly disregarded the truth that Plaintiff Arpaio had been "sent to prison for contempt of court."

20. Plaintiff Arpaio has never been sent to prison for contempt of court.

21. As of today, the HuffPo Article is still available through Defendant HuffPo's website and no efforts have been taken by Defendant HuffPo or Defendant Robillard to correct this false statement.

22.     On November 13, 2018, Defendant Rolling Stone published an article by Defendant Stuart titled *How Trump Accidentally Helped Democrat Kyrsten Sinema Flip Jeff Flake's Arizona Senate Seat*. Exhibit 2. (the "Rolling Stone Article").

23.     In the Rolling Stone Article, Defendant Stuart falsely and with reckless disregard for the truth referred to Plaintiff Arpaio as an "ex-felon." Plaintiff Arpaio has never been convicted of a felony.

24.     At a later time and date, Defendants Rolling Stone and Stuart silently changed the contents of its article to say that "Arpaio was convicted of contempt of court, a misdemeanor, in 2017 and pardoned by Trump less than one month later." Exhibit 3.

25.     However, as of today, there is no indication on the Rolling Stone Article that a mistake had previously been made in referring to Plaintiff Arpaio as an "ex-felon."

26.     Thus, persons who read the Rolling Stone Article when it falsely referred to Plaintiff Arpaio as an "ex-felon" are not aware that this statement is patently false.

27.     The false and fraudulent statements – including outright lies in the form of false or misleading facts or false and misleading statements mixing opinion and fact – in the articles, which were widely published in this judicial district, nationally and internationally, have severely harmed Plaintiff Arpaio's reputation and caused him financial and emotional damage. In sum, the specific false and misleading publications taken as a whole constitute defamation and/or, at a minimum, false light. *See White v. Fraternal Order of Police*, 990 F.2d 512, 526 (D.C. Cir. 1990).

28.     Plaintiff Arpaio's distinguished 55-year law enforcement and political career has been severely harmed, as his reputation has been severely damaged among and with the

Republican establishment, which is centered in the District of Columbia. The Defamatory Publications alleged herein all occurred in this district and are continuing.

29.     Plaintiff Arpaio's chances and prospects of election to the U.S. Senate in 2020 or another public office as a Republican have been severely harmed by the publication of false and fraudulent facts in the Defamatory Publications. Defendants intended to interfere with Plaintiff Arpaio's chances and prospects. This also harms Plaintiff financially, as his chances of obtaining funding from the Republican establishment and donors for the 2020 election have been damaged by the publication of false and fraudulent representations in the articles.

30.     Plaintiff Arpaio's reputation has also been severely harmed in the law enforcement community, which is centered in this judicial district, and includes the DEA, where he served for 26 years as an agent and top official.

## Defendants Acted with Actual Malice

31.     Defendants, each and every one of them, jointly and severally, and individually, acted with actual malice when they published the defamatory articles because they knew or had reason to know that what they published was false or entertained serious doubts as to the truth of what they published.

32.     Defendants are world-renowned, sophisticated journalists and publications and they know what is true or have reason to know what is false and misleading. Defendants HuffPo and Rolling Stone are sophisticated and knowledgeable publications and Defendants had a duty to publish accurately.

33.     Defendants, each and every one of them, jointly and severally, and individually, acted with actual malice because they were at a minimum subjectively aware that the articles were fabricated in large part and were not corroborated by anyone. They were intentional hit

pieces to harm Plaintiff Arpaio because of his conservative stance on immigration and his support for President Trump, who is hated by these publications.

34.     Defendants, each and every one of them, jointly and severally, and individually, acted with actual malice because what was published was inherently improbable such that only a reckless person would have put it in circulation.

35.     In this regard, Defendant Rolling Stone and Defendant Tessa Stuart published a *prior* article on August 23, 2017 (before the subject Defamatory Publication) which referred to Plaintiff's *misdemeanor*. The article is titled "Trump's Pardon of Joe Arpaio: What You Need to Know." https://www.rollingstone.com/politics/politics-features/trumps-pardon-of-joe-arpaio-what-you-need-to-know-202186/. Defendants Rolling Stone and Stuart therefore **had to know** at the time of the Defamatory Publication that Plaintiff Arpaio was not an "ex-felon" because the same Defendants **personally had already written** that he was convicted of only a misdemeanor and therefore could not possibly have been an "ex-felon." Therefore, Defendants Rolling Stone and Stuart acted with actual malice because they knew what they published was false.

36.     Also in this regard, Defendants HuffPo and Robillard published a *prior* article on August 28, 2018 (before the subject Defamatory Publication) which specifically mentions Plaintiff Arpaio's pardon. The article is titled "With Joe Arpaio in Arizona's Senate Race, the ACLU Jumps Into a Federal Election." https://www.huffpost.com/entry/aclu-federal-election-arizona-arpaio_n_5b803444e4b0348586002b73. That article naturally does not mention prison because Plaintiff Arpaio was never "sent to prison" as he was only found liable of a misdemeanor. Moreover, another article published by Defendant HuffPo titled "Joe Arpaio Guilty of Criminal Contempt, Judge Rules" specifically mentions a misdemeanor and even has as a second headline as "[h]e faces a maximum penalty of six months in jail and a fine."

https://www.reuters.com/article/us-arizona-arpaio/judge-rules-ex-arizona-sheriff-arpaio-guilty-of-criminal-contempt-idUSKBN1AG288. Therefore, as Defendants HuffPo and Robillard published **before** the Defamatory Publication that Plaintiff Arpaio was found liable of a misdemeanor and that he faces a maximum sentence of six months in jail – ***not prison*** – they acted with actual malice because they knew what they published at the later date was false and misleading.

37.     Defendants, each and every one of them, jointly and severally, and individually, purposefully avoided the truth because, among other reasons to be disclosed further in discovery, they were part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Arpaio's personal and professional reputation and profession in general.

38.     The defamatory articles are not an account of two sides of an issue that raise questions in a reader's mind. It is evidence of not only a reckless disregard of the truth but also of common law malice (ill-will or dislike) because Defendants intentionally desired to "get" Plaintiff Arpaio and "muckrake" him.

39.     Because the actual malice inquiry focuses on Defendants' state of mind at the time of publication, Plaintiff Arpaio must rely on inferences from circumstantial evidence.

40.     Circumstantial evidence here that is alleged to indicate actual malice includes but is not limited to: (1) the failure to investigate the seriously false accusation that Plaintiff Arpaio committed a felony or is an "ex-felon"; (2) the failure to seek comment from Plaintiff Arpaio or his lay or legal representatives; (3) the hostility, anger and retaliation to "get" Plaintiff Arpaio because of his conservative stance on immigration and outward support for President Trump; (4) Defendants' sensationalism and "muckraking"; (5) Defendants' preconceived plan to discredit

and destroy Plaintiff Arpaio because of his conservative views before the 2020 election; (6) Defendants' preconceived view or slant; (7) other statements and publications that the very same Defendants wrote about Plaintiff Arpaio; and (7) the ill-will or hostility that Defendants' harbor for Plaintiff Arpaio.

41.     Before any motion to dismiss can be granted, Plaintiff Arpaio is entitled to discovery on Defendants' inner workings in order to prove actual malice. *Herbert v. Lando*, 441 U.S. 153 (1979); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) (permitting discovery before ruling on actual malice). A court should not arrogate until itself what the facts may show without discovery, particularly where a demand for a jury trial has been made. This complaint is more than even plausible.

42.     Defendants published the Defamatory Publications with actual malice by making a calculated decision not to verify their story because they knew or had reason to know it was false and misleading, but wanted to maliciously publish it anyway as it suited their left-leaning, open borders agenda. This is also proven by Defendants having already published accurately about Plaintiff Arpaio's misdemeanor ***prior*** to the Defamatory Publications.

43.     Defendants published the Defamatory Publications with actual malice by purposefully avoiding interviewing anyone who could contradict their story and that would have contradicted Defendants' preconceived storyline because it was false.

44.     Defendants published the Defamatory Publications with actual malice when they failed to request a comment from Plaintiff Arpaio or his lay or legal representatives even though they knew that they would contradict the defamatory statements.

45. Defendants published the Defamatory Publications with actual malice by making a calculated decision not to seek meaningful comment from anyone who could provide a different perspective of their story.

46. Defendants published the Defamatory Publications with actual malice by failing to interview anyone concerning the articles.

47. At a minimum, Defendants had or should have had serious doubts as to the truth of the statements in the Defamatory Publications and a high degree of awareness that they were probably false and therefore were required to investigate their veracity before publishing them. Defendants' failure amounts to actual malice. Defendants purposefully avoided the truth, and purposefully avoided interviewing sources and following fundamental reporting practices intentionally in order to avoid the truth.

48. At the time of the defamatory articles, Defendants knew that their statements were false, or recklessly disregarded the truth.

**The District Court's Findings**

49. In *Arpaio v. Zucker, et al*, 18-cv-2894 (RCL), the Honorable Royce C. Lamberth issued a Memorandum Opinion on October 31, 2019 which found that when Rolling Stone referred to Arpaio as "ex-felon" it was <u>not</u> substantially true. *See* <u>Exhibit 4 at p 7</u>. Indeed, Judge Lamberth ruled "[t]o someone reading the original article without context, the sting or gist of the erroneous publication was the "ex-felon" label itself, which, on its own, carries some serious implications of criminality." *Id*.

50. In *Arpaio v. Zucker*, Judge Lamberth also ruled that what Defendant HuffPo published was also not substantially true when they published falsely that he was "sent to prison for contempt of court." Judge Lamberth ruled, "[t]hose who read the original version of the

article would have been left with the image of Mr. Arpaio – one of the nation's most well-known

law enforcement officers – behind bars. That image, and indeed the sting or gist of the

publication, is not captured by the fact that he was convicted of contempt of court." *Id* at p. 8.

51.     In *Arpaio v. Zucker*, Judge Lamberth found that Plaintiff Arpaio is not a libel-

proof plaintiff.

52.     In *Arpaio v. Zucker*, Judge Lamberth found that:

> [n]othing in this opinion should be understood to be an endorsement of
> defendants' errors. The Court is especially bothered by the conduct of the Rolling
> Stone and HuffPost defendants, whose errors were not even substantially true.
> The media is entrusted with the important responsibility of reporting on issues of
> great public importance so that the American people can make informed decisions
> at the ballot box and elsewhere. Mistakes, honest ones or otherwise, often cause
> much harm to public figures like Mr. Arpaio and diminish voters' abilities to
> impartially weigh the issues that affect them. Later corrections or even apologies
> of untruths rarely correct the original harm caused.

*Id* at p. 12 (emphasis added).

53.     In this instant Complaint, Plaintiff Arpaio has cured any perceived and alleged

deficiencies by pleading actual malice not only with specificity but with specific examples of

how and why Defendants knew their statements were false or at least acted recklessly with

regard to their truth.  At the oral argument on July 25, 2019, Plaintiff's counsel offered to amend

the complaint should the Court have believed that more specificity was needed to plead actual

malice. However, the Court did not give Plaintiff's counsel an opportunity to do so and instead

dismissed the complaint with prejudice. Since that case is now over, this new Complaint and new

action  is being filed which, again, provides the specificity the Court apparently desired. This

case must now expeditiously move forward without delay as the false and defamatory

publications of Defendants are being republished by others, all to harm Plaintiff Arpaio. Quite

apart from Plaintiff Arpaio, respectfully there is no First Amendment right to defame a public

figure, when there exists actual malice, as pled herein. That Defendants are powerful entities in the media, who have the means to also smear this Court as well over rulings they may not like, do not give them a pass to being "above the law" on alleged First Amendment grounds, which do not exist for when defamation is present. While Defendants and others in the media of similar leftist bent have viciously and falsely made Plaintiff "radioactive" which may cause some courts to shy away from entertaining his viable causes of action, he deserves to be accorded the same rights as any other citizen of the United States, without public perception or even politics entering into the equation.

### FIRST CAUSE OF ACTION
#### *Defamation Per Se*

54.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

55.     Defendants, together acting in concert, jointly and severally, and individually, have defamed Plaintiff Arpaio by knowingly, intentionally, willfully, and recklessly publishing statements about Plaintiff Arpaio which they knew or should have known to be false and misleading.

56.     Defendants made and published false and defamatory statements concerning Plaintiff Arpaio by calling, representing and publishing within this district, the nation and the world, with actual malice, that Plaintiff Arpaio had been convicted of a felony.

57.     Defendants Robillard and HuffPo acted in concert and are therefore jointly and severely liable as joint tortfeasors. The statements were made by Defendant Robillard and then published and/or broadcast in this district, nationwide and throughout the world by Defendant HuffPo.

58.     Defendants Stuart and Rolling Stone acted in concert and are therefore jointly and severely liable as joint tortfeasors. The statements were made by Defendant Stuart and then published and/or broadcast in this district, nationwide and throughout the world by Defendant Rolling Stone.

59.     Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their truth. Defendants had reason to know that their publications were false and misleading.

60.     Defendants' statements are defamatory per se insofar as they falsely accuse Plaintiff Arpaio of having been convicted of a felony.

61.     Defendants' Defamatory Publications are not privileged in any way or manner.

62.     Defendants' false words concerning Plaintiff Arpaio are so harmful that proof of their injurious effect is unnecessary.

63.     As a direct and proximate result of Defendants and their agents' extreme, outrageous and malicious, defamatory conduct set forth above, Plaintiff Arpaio has been the subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.

64.     These false impressions of Plaintiff Arpaio, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling.

### SECOND CAUSE OF ACTION
#### *General Defamation*

65.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of this entirety of this Complaint, including with the same force and effect, as if fully set forth herein again at length.

66.     Defendants, together acting in concert, jointly and severally, and individually, have defamed Plaintiff Arpaio by knowingly, intentionally, willfully, and recklessly publishing statements about Plaintiff Arpaio which they knew or should have known to be false and misleading.

67.     Defendants' Defamatory Publications are not privileged in any way or manner.

68.     To establish general defamation, a plaintiff need only show that a person or entity (1) published a false statement of fact; (2) about another person; (3) to a third party; and (4) the falsity of the statement caused injury to the other person.

69.     The false, defamatory and misleading publications about Plaintiff Arpaio were published and the falsity of the statements caused injury to him.

70.     Defendants knew or had reason to know that their publications were false and misleading.

71.     The false impression of Plaintiff Arpaio, which Defendants created, caused irreparable harm to him, his business and person and his calling.

## THIRD CAUSE OF ACTION
### *Defamation by Implication*

72.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including with the same force and effect, as if fully set forth herein again at length.

73.     Defendants, together acting in concert, jointly and severally, and individually, have defamed Plaintiff Arpaio by knowingly, intentionally, willfully, and recklessly publishing statements about Plaintiff Arpaio which they knew or should have known to be false and misleading.

74.     Defendants' Defamatory Publications are not privileged in any way or manner.

75.     Defamation by implication is a tort recognized in the District of Columbia. *See White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990). Defendants juxtaposed a series of facts so as to imply a defamatory connection between them.

76.     Defendants, together acting in concert, jointly and severally, and individually, published false statements about Plaintiff Arpaio and those statements were defamatory in that they created a false impression of Plaintiff.

77.     Defendants, together acting in concert, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

78.     A reasonable person would understand Defendants' statements to impart the false innuendo, which would be highly offensive to a reasonable person.

79.     Defendants intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

80.     The false impression of Plaintiff Arpaio, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling.

### FOURTH CAUSE OF ACTION
***Tortious Interference with Prospective Business Relations***

81.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including with the same force and effect, as if fully set forth herein again at length.

82.     Plaintiff Arpaio has a prospective business relationship with the Republican National Committee ("RNC"), and its National Republican Senate Campaign Committee

("NRSC") which is headquartered in Washington D.C., as well as their affiliated political action committees and entities and persons, including donors.

83.    The RNC and its NRSC, in conjunction with affiliated political action committees and entities and donors routinely provide funding to Republican political candidates for their campaigns. Plaintiff Arpaio ran for U.S. Senate in 2018 as a Republican, and intends to run again for a U.S. Senate seat or other public office in 2020 as a Republican and ardent supporter of President Donald J. Trump and his administration.

84.    Defendants are aware of these prospective business relationships and thus, given their malice and leftist enmity of Plaintiff Arpaio, intentionally, unlawfully and maliciously sought to destroy these relationships with the publications of the defamatory publications and intentionally interfered with Plaintiff Arpaio's business relationships in order to harm him.

85.    Defendants intentionally interfered with the expectancy by inducing or causing these prospective relationships to abandon Plaintiff Arpaio financially in his run for the U.S. Senate.

86.    Defendants published the Defamatory Publications to influence the RNC, the NRSC and affiliated political action committees, political donors, supporters and persons, and other donors, to cause the withholding of funding for Plaintiff Arpaio's 2020 political campaign by smearing and destroying his reputation and standing in his law enforcement, government and political community.

87.    Defendants' egregious misconduct in publishing the defamatory articles has and will continue to severely impede Plaintiff Arpaio's ability to capitalize on his U.S. Senate and/or other endeavors to run for public office r and the goodwill associated with it, and to gainfully,

efficiently and legitimately utilize the business concept of the RNC and the NRSC to generate business and economic advantage.

88.     Plaintiff Arpaio has been harmed as to his personal and professional reputation as "America's Sheriff" and harmed financially by the Defamatory Publications. Indeed, Plaintiff Arpaio also has two private business enterprises, which have been severely harmed by the Defamatory Publications of the Defendants, as well as the republication of the alleged falsities by others. Few if any want to do business with a "convicted felon!"

### FIFTH CAUSE OF ACTION
#### *False Light*

89.     Plaintiff Arpaio repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including with the same force and effect, as if fully set forth herein again at length.

90.     The Defamatory Publications falsely and very publicly portrayed Plaintiff Arpaio in a negative, false light.

91.     The Defamatory Publications contained false statements, representations, or imputations understood to be of and concerning Plaintiff Arpaio.

92.     The Defamatory Publications all falsely accuse Plaintiff Arpaio of having been convicted of a felony.

93.     These statements are misleading and false and made with a reckless disregard for the truth.

94.     These statements, made with actual malice, place Plaintiff in a false light that would be highly offensive to a reasonable person.

95.     As a direct and proximate result of Defendants and their agents' extreme, outrageous and malicious conduct set forth above, Plaintiff Arpaio has been the subject of

widespread ridicule and humiliation and has suffered severe loss of personal and professional reputation, which has in turn also caused him pain and financial damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against each Defendant, jointly and severally, as joint tortfeasors as follows:  actual, compensatory, and punitive damages in excess of $300,500,000 USD, as well as attorneys' fees and costs, and any other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts, as to all issues so triable.

DATED: November 7, 2019                          Respectfully submitted,


                                                 /s/ Larry Klayman
                                                 Larry Klayman, Esq.
                                                 Chairman and General Counsel
                                                 FREEDOM WATCH, INC.
                                                 2020 Pennsylvania Ave NW Suite 345
                                                 Washington, DC, 20006
                                                 Email: leklayman@gmail.com
                                                 Tel: 561-558-5336
                                                 *Counsel for Plaintiff*