# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSEPH MICHAEL ARPAIO, | ) |
| Plaintiff, | ) |
| v. | )    Civil No. 18-2894 (RCL) |
| JEFF ZUCKER, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Joseph Arpaio brings this action against three media corporations and several of their employees for publishing or broadcasting allegedly defamatory statements concerning Mr. Arpaio's 2017 criminal contempt of court conviction. Defendants erroneously represented that Mr. Arpaio had either been convicted of a felony or had spent time in prison.[1] And so, Mr. Arpaio filed the instant suit alleging defamation, tortious interference with prospective business relations, and false light.

Defendants argue that the statements were substantially true, but even if they were not, Mr. Arpaio has not alleged any facts tending to prove actual malice. Each group of defendants separately filed motions to dismiss pursuant to both Federal Rule of Civil Procedure 12(b)(6) and the D.C. Anti-SLAPP Act.

For the reasons that follow, the Court will grant defendants' motions to dismiss Mr. Arpaio's claims pursuant to Rule 12(b)(6) and deny defendants' motions to dismiss Mr. Arpaio's claims pursuant to the D.C. Anti-SLAPP Act.

---

[1] Mr. Arpaio's contempt of court conviction was only a misdemeanor and President Donald Trump pardoned him before he was sentenced.

1

## I.      Background

Mr. Arpaio served as the Sheriff of Maricopa County from 1993 to 2017. Compl. ¶ 14,

ECF No. 1. During his tenure as Sheriff, Mr. Arpaio was frequently at the center of various

controversies. Among them was Mr. Arpaio's handling of his office's policing tactics in Latino

neighborhoods, as detailed in *Melendres v. Arapaio*, No. CV-07-2513-PHX-GMS. In *Melendres*,

Judge G. Murray Snow enjoined then-Sheriff Arpaio and his office from "detaining any person

based only on knowledge or reasonable belief . . . that the person is unlawfully present within the

United States because as a matter of law such knowledge does not amount to reasonable belief that

the person" committed a crime. *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017

U.S. Dist. LEXIS 214888, at *4 (D. Ariz. July 31, 2017). Judge Snow would go on to refer Mr.

Arpaio for an investigation of criminal contempt based on the court's finding that Mr. Arpaio had

knowledge of the injunction and continued to engage in conduct that violated it. *See id.* at *3;

*Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 U.S. Dist. LEXIS 111489, at *5–6 (D.

Ariz. Aug. 19, 2016).

The U.S. Department of Justice brought criminal contempt charges against Mr. Arpaio but

agreed to limit the sentence it would seek to six months. Mar. 1, 2017 Order, *United States v.

Arpaio*, No. CR-16-01012-001-PHX-SRB (D. Ariz.) (Dkt. No. 83) at 2–3. On July 31, 2017, Judge

Susan R. Bolton found Mr. Arpaio guilty of criminal contempt of court. *Arpaio*, 2017 U.S. Dist.

LEXIS 214888, at *26; *see id.* at *25 (explaining how Mr. Arpaio "flagrant[ly] disregard[ed]"

Judge Snow's order). On August 25, 2017, President Donald Trump pardoned Mr. Arpaio, thereby

mooting Mr. Arpaio's sentencing. *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB,

2017 U.S. Dist. LEXIS 182254, at *4 (D. Ariz. Oct. 19, 2017).

*a.   Cable News Network, Inc. ("CNN")*

On January 10, 2018, CNN anchor (and defendant) Chris Cuomo introduced a report about Mr. Arpaio's 2018 U.S. Senate candidacy on CNN's "New Day" morning show. In doing so, Mr. Cuomo stated that Mr. Arpaio was a convicted felon who was later pardoned by President Trump. CNN New Day Tr. 2:3, ECF No. 34-2. The report itself correctly stated that Mr. Arpaio was convicted of a misdemeanor and provided context for the conviction. *Id.* at 3:4–12. Within minutes of Mr. Cuomo's erroneous statement and at the close of the report, Mr. Cuomo corrected his statement and clarified that Mr. Arpaio was convicted of a misdemeanor. *Id.* at 5:25–6:2. CNN placed a recording of that segment on its website which included Mr. Cuomo's introduction and the report itself, but it did not include Mr. Cuomo's explicit correction after it. CNN Defs.' Mot. to Dismiss 14 n.11, ECF No. 34. CNN did not add Mr. Cuomo's explicit correction to its online recording until Mr. Arpaio filed the present lawsuit. *Id.*

Mr. Arpaio alleges that defendants Jeff Zucker, Chris Cuomo, and CNN (collectively "the CNN defendants") acted in concert and with actual malice to defame him. Compl. ¶¶ 36–37. According to Mr. Arpaio, CNN broadcasted Mr. Cuomo's defamatory introduction, which Mr. Zucker, as the President of CNN, later ratified. *Id.* ¶ 37. Mr. Arpaio alleges that, as a result of the CNN defendants' actions, he has suffered from "widespread ridicule and humiliation and . . . severe loss of reputation, which has in turn also caused him pain and financial damage." *Id.* ¶ 43.

For their part, the CNN defendants argue that Mr. Cuomo's statements were substantially true, but even if they were not, Mr. Arpaio has not alleged any facts tending to prove actual malice. CNN Defs.' Mot. to Dismiss 11.

b.  *Rolling Stone LLC ("Rolling Stone")*

On November 13, 2018, Rolling Stone published an online article written by defendant Tessa Stuart (collectively "the Rolling Stone defendants") about Kyrsten Sinema's electoral victory over Martha McSally in the 2018 Arizona U.S. Senate race.  The article refered to Mr. Arpaio as an "ex-felon" when explaining who Martha McSally defeated in the Arizona Republican primary.  Compl. Ex. 2, ECF No. 1-2.  Within hours of the article's publication, Rolling Stone revised the article and changed "ex-felon" to "presidential pardonee."  Rolling Stone Defs.' Mot. to Dismiss Ex. B, ECF No. 36-2.  The revised article further clarified that Mr. Arpaio was convicted of a misdemeanor and the editor's note contains an apology.  *Id.*

Mr. Arpaio alleges that the Rolling Stone defendants acted in concert and with actual malice to defame him.  Compl. ¶¶ 36, 39.  According to Mr. Arpaio, the Rolling Stone defendants' conduct caused him to suffer from "widespread ridicule and humiliation and . . . severe loss of reputation, which has in turn also caused him pain and financial damage."  *Id.* ¶ 43.

For their part, the Rolling Stone defendants argue that the passing reference to Mr. Arpaio as an "ex-felon" was substantially true, but even if it was not, Mr. Arpaio has not alleged any facts tending to prove actual malice.  Rolling Stone Defs.' Mot. to Dismiss 6, ECF No. 36.

c.  *TheHuffingtonPost.com, Inc. ("HuffPost")*

On November 5, 2018, HuffPost published an online article written by defendant Kevin Robillard (collectively "the HuffPost defendants") about Kyrsten Sinema's record.  The article mentioned Mr. Arpaio and erroneously stated that he had been sent to prison for his contempt of court conviction.  Compl. Ex. 1, ECF No. 1-1.  Within two days, HuffPost explicitly corrected the mistake in the prior version of the article.  *Id.*; HuffPost Defs.' Mot. to Dismiss 17–18, ECF No. 30.

4

Mr. Arpaio alleges that the HuffPost defendants acted in concert and with actual malice to defame him. Compl. ¶¶ 36, 38. According to Mr. Arpaio, the HuffPost defendants' conduct caused him to suffer from "widespread ridicule and humiliation and . . . severe loss of reputation, which has in turn also caused him pain and financial damage." *Id.* ¶ 43.

For their part, the HuffPost defendants argue that the reference to Mr. Arpaio being sent to prison was substantially true, but even if it was not, Mr. Arpaio has not alleged any facts tending to prove actual malice. HuffPost Defs.' Mot. to Dismiss 19, 25. And, unlike the other defendants, the HuffPost defendants argue that Mr. Arpaio is a libel-proof plaintiff. *Id.* at 24.

## II.   Defamation

A defamation claim brought under District of Columbia law requires: "(1) a false and defamatory statement; (2) published without privilege to a third party; (3) made with the requisite fault; and (4) damages." *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 90 (D.D.C. 2018) (citing *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)). The requisite fault for public figures under the First Amendment is actual malice. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988). Actual malice is best understood as "knowledge that [the communication] was false or with reckless disregard of whether [the communication] was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Mr. Arpaio has not denied his status as a public figure and his complaint is worded according to that of a public figure. *See* Compl. ¶¶ 36, 40, 43, 47, 55–56. The record is replete with evidence detailing Mr. Arpaio's status as public figure. *See* CNN Defs.' Mot. to Dismiss 4–6 (detailing Mr. Arpaio's public profile and involvement in high-profile lawsuits). As such, the Court will treat him as a public figure.

"[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017). Here,

defendants seek to dismiss Mr. Arpaio's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and the D.C. Anti-SLAPP Act.

To move his case past a Rule 12(b)(6) motion to dismiss, Mr. Arpaio's complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that his complaint raises "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court cannot accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as true. *Id.* The Court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

*a.  Substantial Truth*

Defendants admit that their publications or statements were, at least, erroneous. They have acknowledged their errors and corrected them, but their admissions do not end the discussion of falsity as a matter of law. Defendants may dismiss a libel claim on falsity grounds if the publications or statements, when read in the context of the entire communication, were substantially true. *See Tavoulareas v. Piro*, 817 F.2d 762, 779 (D.C. Cir.) (en banc), *cert. denied*, 484 U.S. 870 (1987); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 149 (D.D.C. 2017).

The truth of the communication is a complete defense in a libel action. *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 59 (D.D.C. 2002). For purposes of defamation law, a communication can be "true" even if it is only substantially true (i.e., not literally true). *See Liberty Lobby, Inc.*, 838 F.2d at 1296; *Benic v. Reuters America, Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004). "'Substantially true' means that the 'gist' of the statement is true or that the statement is

substantially true, as it would be understood by its intended audience." *Benic*, 357 F. Supp. 2d at

221 (citing *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990)).   "Minor inaccuracies do not

amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified."

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (quotation marks omitted).   If the

"sting of the charge" is substantially true, the defamation suit must fail. *Parsi v. Daioleslam*, 595

F. Supp. 2d 99, 108 (D.D.C. 2009).

The CNN defendants' communications were substantially true, even if Mr. Cuomo's

introductory statement about Mr. Arpaio was erroneous.   Mr. Cuomo's error amounted to a mistake

in legal nomenclature that was contextualized by the report that immediately followed the

erroneous statement.[2]   The Court agrees with the CNN defendants that the sting or gist of the

statements, when taken together, was that Mr. Arpaio flagrantly disregarded a court order, which

resulted in criminal charges and an eventual conviction.   Because the report provided the context

of Mr. Arpaio's conviction, the difference between a felony or a misdemeanor became less

meaningful.

Although the Rolling Stone defendants made virtually the same mistake in referring to Mr.

Arpaio as an "ex-felon," their publication did not contain any context for that label.   Their article

simply makes a passing reference to Mr. Arpaio being an "ex-felon" without detailing his disregard

for a court order or the presidential pardon that followed.   To someone reading the original article

without any context, the sting or gist of the erroneous publication was the "ex-felon" label itself,

which, on its own, carries some serious implications of criminality.   The "ex-felon" label was thus

not substantially true.

---

[2] Furthermore, if viewers were confused by the report's contradiction of Mr. Cuomo's representations, Mr. Cuomo immediately corrected his error after the report concluded.   CNN New Day Tr. at 5:25–6:2.

The HuffPost defendants' erroneous publication was also not substantially true. They argue that the sting of the erroneous publication was the fact that Mr. Arpaio was convicted of contempt of court, and they find support from various state court cases that contemplate similar facts. *See* HuffPost Defs.' Mot. to Dismiss 20–24 (citing cases). But those cases are not binding on this Court. Those who read the original version of the article would have been left with the image of Mr. Arpaio—one of the nation's most well-known law enforcement officers—behind bars. That image, and indeed the sting or gist of the publication, is not captured by the fact that he was convicted of contempt of court. As such, the Court holds that the HuffPost defendants' erroneous publication was not substantially true.

### b.  Libel-Proof Plaintiff

The HuffPost defendants argue that Mr. Arpaio is a libel-proof plaintiff because their erroneous communication, within the context of the entire publication, could not damage Mr. Arpaio's reputation any further. HuffPost Defs.' Mot. to Dismiss 24 (citing *Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978)). The Court disagrees. The libel-proof plaintiff doctrine is a "judicially created doctrine" that has been applied where "'true statements in a particular publication' have so badly damaged a plaintiff's reputation 'that minor false accusations within the same publication cannot result in further meaningful injury.'" *Carpenter v. King*, 792 F. Supp. 2d 29, 34 n.2 (D.D.C. 2011) (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986)). As discussed above, the Court believes that the original publication's erroneous claim—that Mr. Arpaio spent time in prison—is distinct from the fact that Mr. Arpaio was convicted of contempt of court. The erroneous claim was a distinct harm that could have damaged Mr. Arpaio's reputation even further, so the Court holds that he is not a libel-proof plaintiff under these circumstances.

8

*c.  Actual Malice*

Although the Rolling Stone and HuffPost defendants' statements were not substantially true, Mr. Arpaio has failed to articulate any facts of actual malice (against any group of defendants) sufficient to withstand a Rule 12(b)(6) motion to dismiss.

Mr. Arpaio's complaint does not come close to adequately pleading facts of actual malice. The complaint makes only two attempts to explain why defendants acted with actual malice. The first attempt alleges that "[d]efendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity." Compl. ¶ 40.  This allegation is nothing more than a "[t]hreadbare recital[]" of the definition of actual malice. *See Iqbal*, 556 U.S. at 678; *Sullivan*, 376 U.S. at 280.  As such, the Court can easily dismiss that allegation.

The second attempt to allege facts of actual malice requires more elaboration.  Mr. Arpaio alleges that defendants were motivated by "malice and leftist enmity" when they made their respective errors.[3]  Compl. ¶ 47.  The Court understands that portion of his complaint to mean that allegations of differences in political opinions should satisfy the requirement to plead facts of actual malice.   Even assuming the alleged "leftist enmity" is real, the motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law. *See Harte-Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("[A defendant's] motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice.").   Furthermore, "a media defendant's 'adversarial stance' may be 'fully consistent with professional, investigative reporting' and is not

---

[3] Although this allegation is buried in the portion of the complaint alleging tortious interference with prospective business relations, the Court will still consider it with respect to the defamation claim.

'indicative of actual malice.'" *Lohrenz*, 223 F. Supp. 2d at 46 (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)).

The Court will not pry open the gates of discovery just because Mr. Arpaio believes the erroneous communications were motivated by differences in political opinions. Doing so would run afoul of the Supreme Court's landmark ruling in *New York Times Co. v. Sullivan. See* 376 U.S. at 271–72 (noting that errors are inevitable when there is free debate and that they too must be protected to give breathing room to those exercising their freedom of expression). Allegations of "leftist enmity" cannot trump the guarantees of the First Amendment. Accordingly, the Court will grant defendants' motions to dismiss pursuant to Rule 12(b)(6).

*d. D.C. Anti-SLAPP Act*

Defendants also submitted special motions to dismiss pursuant to the D.C. Anti-SLAPP Act. Although more recent developments in D.C. Court of Appeals case law may lead the D.C. Circuit to someday alter its D.C. Anti-SLAPP Act precedent, this Court is bound by the D.C. Circuit's present precedent and must therefore dismiss these claims.

The D.C. Anti-SLAPP[4] Act ("the Act") provides libel defendants with the opportunity to seek prompt dismissal of claims that "arise[] from an act in furtherance of the right of advocacy on issues of public interest" and have no likelihood of success on the merits. D.C. Code § 16-5502(b). The Act exists to deter frivolous lawsuits that have the effect of chilling discourse on issues of public interest and to compensate those who are engaged in this type of protected speech and are financially punished by such frivolous libel lawsuits. *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226, 1238 (D.C. 2016). The Act thus permits libel defendants to recover litigation costs and attorneys' fees. D.C. Code § 16-5504(a).

---

[4] "SLAPP" stands for "Strategic Lawsuits Against Public Participation." *Fairbanks*, 314 F. Supp. 3d at 93.

Before discussing the merits of defendants' special motions, the Court must address why the D.C. Circuit's holding in *Abbas v. Foreign Policy Group*, 783 F.3d 1328 (D.C. Cir. 2015), requires the dismissal of these claims. The *Abbas* court analyzed the issue in accordance with *Shady Grove Orthopedic Associates v. Allstate Insurance*, 559 U.S. 393 (2010), and held that "[a] federal court exercising diversity jurisdiction . . . must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision." *Abbas*, 783 F.3d at 1337. The court reasoned that the Act's requirement for defamation plaintiffs to show "likelihood of success on the merits" went beyond what Rules 12 and 56 require to bring a case to trial. *Id.* at 1334.

But since *Abbas*, the D.C. Court of Appeals addressed the issue in *Competitive Enterprise Institute v. Mann*. The *Mann* court interpreted the Act's likelihood of success standard to mirror the Rule 56 standard. 150 A.3d at 1238 n.32. Defendants argue that *Mann* "clearly and unmistakably" resolves the question at issue, *Easaw v. Newport*, 253 F. Supp. 3d 22, 34 (D.D.C. 2017), thus requiring this Court to apply the D.C. Court of Appeals' interpretation of D.C. law.

Although the *Mann* court addressed the Act's requirements, it is not this Court's responsibility to instruct the D.C. Circuit on how and when to change its understanding of the D.C. Code in light of new case law. Indeed, several other courts in this District have also declined the opportunity to correct the D.C. Circuit on this issue. *See, e.g.*, *Fairbanks*, 314 F. Supp. 3d at 95 (noting that *Mann* "'clearly and unmistakably' confirms *Abbas*'s determination that [the standards imposed by the Act and the Federal Rules of Civil Procedure] differ"); *Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 160–61 (D.D.C. 2018) (agreeing that *Mann* did not "clearly and unmistakably" resolve the issue). For those reasons, the Court will deny defendants' motions to dismiss pursuant to the D.C. Anti-SLAPP Act.

III.    **Tortious Interference with Prospective Business Relations and False Light**

The Court need not delve too deeply into Mr. Arpaio's additional claims because the First Amendment considerations governing the dismissal of Mr. Arpaio's defamation claims also require the dismissal of his tortious interference and false light claims. *See Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013). Mr. Arpaio cannot use related causes of action stemming from the same allegedly defamatory communications to circumvent the constitutional requirements of a defamation claim. *Id.* As such, the Court will grant defendants' motions to dismiss these claims pursuant to Rule 12(b)(6).

IV.    **Conclusion**

Nothing in this opinion should be understood to be an endorsement of defendants' errors. The Court is especially bothered by the conduct of the Rolling Stone and HuffPost defendants, whose errors were not even substantially true. The media is entrusted with the important responsibility of reporting on issues of great public importance so that the American people can make informed decisions at the ballot box and elsewhere. Mistakes, honest ones or otherwise, often cause much harm to public figures like Mr. Arpaio and diminish voters' abilities to impartially weigh the issues that affect them. Later corrections or even apologies of untruths rarely correct the original harm caused. But the courts ultimately must vigorously protect the First Amendment rights of journalists and the press to issue their reports, unless there is some evidence of actual malice attributable to them. Unfortunately, Mr. Arpaio has failed to meet his burden here.

In dismissing Mr. Arpaio's claims, the Court acknowledges that the burden of putting forward articulable facts of actual malice is a difficult one to meet, especially when discovery is not yet available to the parties. But without this safeguard, the threat of lawsuits would chill our

precious First Amendment rights to freely engage in political discourse.  Accordingly, the Court will grant defendants' motions to dismiss Mr. Arpaio's claims pursuant to Rule 12(b)(6) and deny defendants' motions to dismiss Mr. Arpaio's claims pursuant to the D.C. Anti-SLAPP Act.  A separate order follows.


Date:   October 31, 2019

Royce C. Lamberth
United States District Judge