## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO, | * |
| Plaintiff, | * |
| v. | *     Civil Action No. 1:19-cv-03366-RCL |
| KEVIN ROBILLARD | * |
| and | * |
| HUFFINGTON POST | * |
| and | * |
| TESSA STUART | * |
| and | * |
| ROLLING STONE | * |
| Defendants. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OF LAW IN SUPPORT OF
## THE HUFFPOST DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Jean-Paul Jassy (*Pro Hac Vice* Pending)
William T. Um (*Pro Hac Vice* Pending)
Elizabeth H. Baldridge (*Pro Hac Vice* Pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants*
*TheHuffingtonPost.com, Inc. and Kevin Robillard*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

RELEVANT BACKGROUND .......................................................................................... 2

   I.     PROCEDURAL HISTORY ..................................................................... 2

   II.    THE PARTIES ...................................................................................... 3

     A.  Plaintiff Joe Arpaio ........................................................................ 3

     B.  Defendants HuffPost and Kevin Robillard........................................ 4

   III.   ARPAIO WAS CONVICTED OF CRIMINAL CONTEMPT IN 2017. ........ 4

   IV.   THE HUFFPOST ARTICLE AND ARPAIO'S REPEATED PLEADINGS ................ 6

LEGAL STANDARD......................................................................................................... 9

ARGUMENT ................................................................................................................... 10

   I.     ARPAIO'S COMPLAINT IS SUBJECT TO DISMISSAL UNDER THE DOCTRINES OF RES JUDICATA AND ISSUE PRECLUSION. ..................... 10

   II.    ARPAIO'S CLAIMS AGAINST THE HUFFPOST DEFENDANTS ARE TIME-BARRED................................................................................................. 13

   III.   ARPAIO FAILS TO STATE A CLAIM. .................................................... 15

     A.  Arpaio Did Not—And Cannot—Plausibly Allege That the HuffPost Defendants Acted with Actual Malice.......................................................... 15

     B.  The HuffPost Article Was Substantially True.............................. 22

   IV.   ARPAIO FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS OR FALSE LIGHT. ................ 27

     A.  The Tortious Interference and False Light Claims are Duplicative of the Failed Defamation Claim. ..................................................... 27

     B.  The Tortious Interference Claim Fails for Additional Reasons. ................... 28

CONCLUSION................................................................................................................. 31

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 17

*Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210 (D.C. Cir. 2004)................................. 10, 11

*Arpaio v. Cottle*, No. 1:18-cv-02387-APM (D.D.C.) ...................................................... 3

*Arpaio v. Zucker, et al.*, No. 1:18-cv-02894-RCL ("*Arpaio I*") ........................................ passim

*Ashbourne v. Hansberry, 245 F. Supp. 3d 99 (D.D.C. 2017)*...................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... passim

*Bennett Enterprises, Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493 (D.C. Cir. 1999)...................... 31

*Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60 (D.D.C. 2011)................................... 14

*Bose Corp. v. Consumer Union,* 466 U.S. 485 (1984)..................................................... 16

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .................................................... 14

*Buckley v. Valeo*, 424 U.S. 1 (1976) ......................................................................... 16

*Burdick v. United States*, 236 U.S. 79 (1915) .............................................................. 5

*Campbell v. District of Columbia*, 894 F.3d 281 (D.C. Cir. 2018)................................... 22

*Carr v. Brown*, 395 A.2d 79 (D.C. 1978) ................................................................... 28

*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017................................ 17, 18, 19

*Doe v. Southeastern Univ.*, 732 F. Supp. 7 (D.D.C. 1990)............................................ 14

*Economic Research Svcs., Inc. v. Resolution Economics, LLC*, 208 F.Supp.3d 219 (D.D.C. 2016)

.................................................................................................................. 29, 30

*Elemary v. Philip Holzmann A.G.*, 533 F. Supp. 2d 116 (D.D.C. 2008) .............................. 30, 31

*Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018)............................................... passim

*Farah v. Esquire Magazine,* 736 F.3d 528 (D.C. Cir. 2013) ........................................... 27

*Farah v. Esquire Magazine*, 863 F.Supp.2d 29 (D.D.C. 2012)....................................... 27

*Fendler v. Phoenix Newspapers Inc.*, 636 P.2d 1257 (Ariz. Ct. App. 1981)........................ 23, 24

*Flake v. Arpaio*, No. CV-15-01132-PHX-NVW, 2016 WL 4095831 (D. Ariz. 2016) ................ 3

*Forras v. Rauf*, 39 F. Supp. 3d 45 (D.D.C. 2014)........................................................ 14

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) ...................................... 16, 20

*Hayward v. Watsonville Register-Pajaronian and Sun*, 265 Cal. App. 2d 255 (1968).............. 26

*Hoffman v. Washington Post Co.,* 433 F. Supp. 600 (D.D.C. 1977) ............................... 21

*Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016) ........................... 17, 18, 19

*Hurd v. D.C. Gov't*, 864 F.3d 671 (D.C. Cir. 2017) ................................................. 9

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016) ...................................... 19

*Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61 (D.D.C. 2003) ............................... 13

*Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103 (D.D.C. 2008) ............................. 13

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ................................................... 21

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106 (D.C. Cir. 2017) ................................ 9, 10, 16

*Lane v. Random House*, 985 F. Supp. 141 (D.D.C. 1995) ............................................. 22

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) ................................ 23

*Liberty Lobby, Inc. v. Rees*, 852 F.2d 595 (D.C. Cir. 1988) ........................................ 20

*Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018) ................................ 23

*Logan v. District of Columbia,* 447 F. Supp. 1328 (D.D.C. 1978) .................................... 21

*Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) ........................................ 19, 20, 22

*Lohrenz v. Donnelly*, 350 F.2d 1272 (D.C. Cir. 2003) ........................................... 15, 17

*Marin v. McClincy*, 15 F.Supp.3d 602 (W.D. Pa. 2014) ............................................ 28

*Martin v. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007) ........................................ 11

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ..................................... 15, 16, 23

*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996) ................................... 15

*Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 4414755
   (D. Ariz. Aug. 19, 2016) ................................................................... 4

*Mittleman v. U.S.*, 104 F.3d 410 (D.C. Cir. 1997) ................................................ 14

*Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80 (D.D.C. 2014) ...................................... 14

*Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994) ................................... 27

*Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994) .................................... 27

*Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016) ...................................... 8, 12

*Morgan v. United States Parole Comm'n*, 304 F. Supp. 3d 240, 251 (D.D.C. 2016) ........... 10, 12

*Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296 (D.C. 2001) ............................ 14

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ........................................... 15, 16, 17

*Ning Ye v. Holder*, 644 F. Supp. 2d 112 (D.D.C. 2009) ........................................ 23

*Ocala Star-Banner Co. v. Damron*, 401 U.S. 295 (1971) ....................................... 16

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018) ................................... 21

*Parisi v. Sinclair*, 845 F. Supp. 2d 215 (D.D.C. 2012) ....................................... 17, 19

*Parklane Hoisery Co. v. Shore*, 439 U.S. 322 n.5 (1979) ............................................................ 10

*Pearce v. E.F. Hutton Grp., Inc.*, 664 F. Supp. 1490 (D.D.C. 1987) .......................................... 23

*Pearlman v. NYP Holdings, Inc.*, Case No. 157546/14 (N.Y. Sup. Ct. May 11, 2015) ......... 24, 26

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ............................................. 22, 23

*Rivera v. Rosenberg & Assocs., LLC*, 142 F.Supp.3d 149 (D.D.C. 2015) .................................. 21

*Sharon v. Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984) ......................................................... 23

*Skrocki v. Stahl*, 110 P. 957 (Cal. Ct. App. 1910) ................................................................. 25,26

*Smalls v. U.S.*, 471 F.3d 186 (D.C. Cir. 2006).......................................................................... 10

*Smith v. Clinton*, 253 F.Supp.3d 222 (D.D.C. 2017) ............................................................... 23

*Son v. Kim*, No. 05-2318, 2007 WL 950085, at *2 (D.D.C. Mar. 28, 2007) ............................. 28

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ........................................................................ 16

*Stith v. Chadbourne & Parke, L.L.P.*, 160 F. Supp. 2d 1 (D.D.C. 2001) ................................... 13

*Stovell v. James*, 965 F. Supp. 2d 97 (D.D.C. 2013) ............................................................. 13, 14

*Tembec Inc. v. U.S.*, 570 F. Supp. 2d 137 (D.D. C. 2008)........................................................ 10

*U.S. v. Arpaio*, (No. CR-16-01012-001-PHXSRB) 2017 WL 3268180
  (D. Ariz. July 31, 2017) ........................................................................................................ 3

*U.S. v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072
  (D. Ariz. Oct. 19, 2017)......................................................................................................... 5

*U.S. v. Baxley*, 228 Fed. Appx. 901 (11th Cir. 2007) .................................................................. 5

*U.S. v. Hendrickson*, 822 F.3d 812 (6th Cir. 2016) .................................................................... 5

*U.S. v. Marx*, 553 F.2d 874 (4th Cir. 1977) ................................................................................ 5

*U.S. v. Prince*, 526 Fed. Appx. 447 (6th Cir. 2013) .................................................................... 5

*U.S. v. Trudeau*, 812 F.3d 578 (7th Cir. 2016) ........................................................................... 5

*Wilson v. United Press Ass'ns*, 98 N.E.2d 391 (ILL. Ct. App. 1951) .................................... 25, 26

*Woods v. Evansville Press Co., Inc.*, 791 F.2d 480 (7th Cir. 1986) ............................................ 16

*Xereas v. Heiss*, 933 F.Supp.2d 1 (D.D.C. 2013) ................................................................. 28, 29

*Yamaha Corp. of Am. v. U.S.*, 961 F.2d 245 (D.C. Cir. 1992)..................................................... 11

*Yates v. U.S.*, 355 U.S. 66 (1957) .............................................................................................. 5

*Zelaya v. UNICCO Svc. Co.*, 587 F.Supp.2d 277 (D.D.C. 2008).......................................... 28, 30

**Statutes**

18 U.S.C. § 201 ........................................................................................................................ 29

Civil Code § 47 ........................................................................................................................ 26

D.C. Code Ann. § 12-301(4) (2002) ............................................................................................ 13

**Other Authorities**
Maricopa County, Arizona, Recorder's Final Summary Report, November 8, 2016 ................... 3

Official Canvass of Results from Arizona Secretary of State:

    https://azsos.gov/sites/default/files/2018%200910%20Signed%20Statewide%20Canvass.pdf  6

*The More Demonstrators the Better,' Fort Worth Star-Telegram (Feb. 19, 2019)*....................... 3

*Tom Wright, Protestors Gather for Joe Arpaio Speech in Carme*l, Monterey Herald (Sep. 13,

    2018) ........................................................................................................................................... 3

## INTRODUCTION

In this time-barred and procedurally unsupportable second Complaint, Plaintiff Joseph M. Arpaio blatantly disregards this Court's prior order in a related case, *Arpaio v. Zucker, et al.*, Case No. 1:18-cv-02894-RCL ("*Arpaio I*").  This Court already dismissed the *same* claims on the *same* facts against the *same* parties with prejudice and without leave to amend.  Rather than follow that ruling or timely seek reconsideration or appeal, Arpaio ignored this Court's order and deigned to grant himself leave to amend by filing this second action.  Arpaio has previously been held in criminal contempt of court for violating a court order, and by taking this procedural tactic of filing this new Complaint, Arpaio continues his pattern of flagrantly, knowingly and willfully violating court orders.  In addition to being barred by the doctrines of res judicata and issue preclusion, Arpaio's claims against the HuffPost Defendants in this second case are now time-barred.  But even without those procedural principles, his current Complaint would still be subject to dismissal for substantive reasons.

Just like Arpaio's first case, his latest action against HuffPost and one of its reporters, Kevin Robillard, stems from a November 5, 2018 article, not about Arpaio, but about Kyrsten Sinema, the then-Democratic United States senatorial nominee (and later elected Senator) from Arizona.  In the context of discussing Sinema and her relatively moderate to conservative positions on various issues, the article briefly mentions Arpaio, accurately reporting that he had been convicted of criminal contempt and discusses Sinema's response to the possibility that Arpaio could get a presidential pardon.  Arpaio's entire complaint against the HuffPost Defendants centers on just six words in the article that were promptly corrected: ". . . who had been sent to prison . . . ."  Undeterred by a federal court's finding that he violated the law, Arpaio, who pridefully boasted that "he was going to do business as usual no matter who said otherwise," complains that those

words defamed him, tortiously interfered with his ability to raise money for future political campaigns, and put him in a false light because he was pardoned shortly before he was sentenced.

The Court can dispose of this action on procedural grounds alone because Arpaio's case is barred by the doctrines of res judicata, issue preclusion and untimeliness.  Aside from the statute of limitations issue and the rule that re-pleading causes of action based on the same nucleus of facts in a prior case is plainly barred, the defamation claims also fail because Arpaio, a household name who is undisputedly a public figure, did not—and cannot—adequately allege that the HuffPost Defendants published with the requisite degree of fault, actual malice—*i.e.*, with knowledge of falsity or reckless disregard for the truth.  Arpaio's tag-along claims for tortious interference and false light fail again because they are subject to the same constitutional limitations as the doomed defamation claim.  The tortious interference and false light claims should also be dismissed with prejudice because Arpaio does not—and cannot—plausibly allege necessary elements to each of those claims.

The HuffPost Defendants' Motion to Dismiss should be granted with prejudice.

## **RELEVANT BACKGROUND**

## I.     **PROCEDURAL HISTORY**

Arpaio's Complaint, filed on November 7, 2019, comes on the heels of this Court's October 31, 2019, dismissal of Arpaio's Complaint in *Arpaio I* without leave to amend.  The Court granted the HuffPost Defendants' and other *Arpaio I* Defendants' respective motions to dismiss and issued an order and final judgment "dismissing th[e] case with prejudice."  *Arpaio I* Order and Final Judgment, Oct. 31, 2019, ECF No. 55.  Despite the Court's unambiguous denial of a chance to re-plead, Arpaio's Complaint in the current action is based on the exact nucleus of facts asserted in *Arpaio I*.

2

Since the Court's dismissal, Arpaio's time to file a notice of appeal in *Arpaio I* pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A) has expired.  His deadline to move for additional time to file a notice of appeal has also passed.  *See* Fed. R. App. P. 4(a)(5).

## II.   THE PARTIES

### A.   Plaintiff Joe Arpaio

Arpaio served for nearly 25 years as the elected Sheriff of Arizona's Maricopa County. *See* Compl. ¶ 11.  During his tenure as Sheriff, Arpaio became a nationally-known figure with particularly outspoken and controversial views on law enforcement, immigration policy, and racial profiling.  He co-authored two books: *America's Toughest Sheriff: How to Win the War Against Crime* and *Joe's Law: America's Toughest Sheriff Takes on Illegal Immigration, Drugs and Everything Else That Threatens America*.  He has appeared extensively in media interviews and profiles, and has regularly convened press conferences.[1]  In 2016, the voters of Maricopa County denied Arpaio another term as their Sheriff.[2]  After leaving office as sheriff, Arpaio stayed in the public eye with a 2018 run for the United States Senate and appearances on the speaking circuit.[3] Arpaio asserts that he intends to run for the Senate again in 2020.  Compl. ¶ 13.

---

[1] *See, e.g.*, *United States v. Arpaio*, (No. CR-16-01012-001-PHXSRB) 2017 WL 3268180 (D. Ariz. July 31, 2017), at *2-3 (listing interviews with Fox News, Univision and PBS); *Flake v. Arpaio*, No. CV-15-01132-PHX-NVW, 2016 WL 4095831 (D. Ariz. 2016), at *1-*2 (issuing press releases and holding press conference). A more extensive discussion of Arpaio's background, activities as Sheriff and relationship with the media can be found in the Motion to Dismiss filed in this case by defendants Jeff Zucker, Chris Cuomo and Cable News Network, Inc, as well as the Motion to Dismiss filed in 2019 by Michelle Cottle and The New York Times Company in *Arpaio v. Cottle*, No. 1:18-cv-02387-APM (D.D.C.) (Dkt No. 8), at 6-26.

[2] Maricopa County, Arizona, Recorder's Final Summary Report, November 8, 2016 election, available at https://recorder.maricopa.gov/electionarchives/2016/11-08-2016%20Final%20Summary%20Report.pdf at 6.

[3] Compl. ¶ 12; Bud Kennedy, Sheriff Joe Arpaio is Coming to Arlington: '*The More Demonstrators the Better,' Fort Worth Star-Telegram (Feb. 19, 2019); Tom Wright, Protestors Gather for Joe Arpaio Speech in Carme*l, Monterey Herald (Sep. 13, 2018).

In *Arpaio I*, this Court recognized that Arpaio does not deny his status as a public figure and decided to treat him as a public figure: "The record is replete with evidence detailing Mr. Arpaio's status as a public figure." *See Arpaio I* Mem. Opp'n, Oct. 31, 2019, ECF No. 56 ("*Arpaio I* Opp'n"), at 5.

**B.      Defendants HuffPost and Kevin Robillard**

Defendant HuffPost is an online newspaper, founded in 2005, with newsrooms and editions in 16 countries, and a robust commitment to breaking and featuring stories on politics.  Defendant Kevin Robillard is a senior politics reporter with HuffPost, and before that he was a politics reporter with Politico.

**III.     ARPAIO WAS CONVICTED OF CRIMINAL CONTEMPT IN 2017.**

Arpaio's tactical decision to re-file claims following this Court's dismissal with prejudice was not his first time flagrantly disobeying a court order.  *See generally Arpaio I* Opp'n at 2.  On December 23, 2011, United States District Court Judge G. Murray Snow issued an order enjoining Arpaio and his subordinates "from detaining any person based only on knowledge or reasonable belief, without more, that the person is unlawfully present in the United States …" (the "Injunction").  *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 WL 3268180 (D. Ariz. July 31, 2017), at *1.  Because Arpaio refused to obey the Injunction, Judge Snow found Arpaio in civil contempt of the Injunction and referred Arpaio for an investigation of criminal contempt.  *Id.*; *see also Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 4414755 (D. Ariz. Aug. 19, 2016), *1-*2 (referring Arpaio for criminal contempt investigation, holding that Arpaio violated the Injunction and that he "did so based on the notoriety he received for, and the campaign donations he received because of, his immigration enforcement activity").  The U.S. Department of Justice agreed to limit the prison sentence it would seek to six months in prosecuting

Arpaio.  *United States v. Arpaio*, Case No. CR-16-01012-001-PHX-SRB, Dkt. No. 83 (D. Ariz. Mar. 1, 2017) at 2-3.

On July 31, 2017, following a five-day bench trial, United States District Judge Susan R. Bolton found Arpaio guilty of criminal contempt of court.  *Arpaio*, 2017 WL 3268180, at *7. Judge Bolton made extensive findings of fact and conclusions of law, including that Judge Snow's Injunction was "clear and definite," that Arpaio "had knowledge of" the Injunction, and that the "evidence shows a flagrant disregard for Judge Snow's order."  *Id.* at *5, *7.  Judge Bolton found that Arpaio "announced to the world and to his subordinates that he was going to continue business as usual no matter who said otherwise."  *Id.* at *7.  The order concluded that Arpaio was "guilty of criminal contempt" because he "willfully violated an order of the court."  *Id.*  Sentencing was set for October 5, 2017.  *Id.*[4]  However, before he could be sentenced, President Trump pardoned Arpaio, and Arpaio accepted the pardon.  *United States v. Arpaio*, Case No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072 (D. Ariz. Oct. 19, 2017), at *1.  "A presidential pardon must be accepted to be effective," and "a pardon 'carries an imputation of guilt; acceptance a confession of it.'"  *Id.* (citing and quoting *Burdick v. United States*, 236 U.S. 79, 94 (1915)).  Thereafter, Judge Bolton dismissed Arpaio's criminal contempt case with prejudice, but refused Arpaio's subsequent request to vacate all prior rulings in the case, holding that the pardon did not "revise the historical facts."  *Id.* at *2 (internal quotation marks omitted).

---

[4] It is not unusual for criminal contempt to be punished with a prison sentence.  *See*, *e.g.*, *Yates v. U.S.*, 355 U.S. 66, 72 (1957) ("it is unquestioned that imprisonment for a definite term may be imposed to punish the contemnor in vindication of the authority of the court"); *U.S. v. Baxley*, 228 Fed. Appx. 901, 905 (11th Cir. 2007) (finding an 18-month prison sentence for criminal contempt reasonable); *U.S. v. Trudeau*, 812 F.3d 578, 594 (7th Cir. 2016) (upholding prison sentence for criminal contempt); *U.S. v. Prince*, 526 Fed. Appx. 447, 450 (6th Cir. 2013) (affirming imposition of prison sentence for criminal contempt); *U.S. v. Marx*, 553 F.2d 874, 876-877 (4th Cir. 1977) (same); *U.S. v. Hendrickson*, 822 F.3d 812 (6th Cir. 2016) (same).

IV.     **THE HUFFPOST ARTICLE AND ARPAIO'S REPEATED PLEADINGS**

In 2018, Arpaio unsuccessfully ran for a seat representing Arizona in the United States Senate. Compl. ¶ 12. He came in third place with just 19% of the vote in the Republican primary.[5] The Democratic primary winner was Kyrsten Sinema, who eventually won the Senate seat.[6]

On November 5, 2018, the eve of the 2018 general election, HuffPost published an article written by Kevin Robillard entitled "Kyrsten Sinema Wants You To Know She's Not A Progressive" (the "HuffPost Article"). Compl., ECF No. 1-1; HuffPost Defendants' concurrently-filed Request for Judicial Notice ("RJN"), Ex. A. As the title suggests, the HuffPost Article focused on Sinema, discussing her policy positions (*e.g.*, on "Medicare for all," taxes and the Affordable Care Act), her moderate voting record in the U.S. House of Representatives, her membership in the Blue Dog Caucus (composed of conservative Democrats) and the pro-business New Democrats, and her endorsement by the U.S. Chamber of Commerce. *Id.* The article also noted that, as a Congresswoman, Sinema voted with the Trump Administration nearly two-thirds of the time. *Id.*

In the course of discussing Sinema's record, the HuffPost Article briefly mentioned Arpaio. *Id.* The Article noted that "every Democratic member of the Arizona congressional delegation—except Sinema—" signed "a letter asking the president not to pardon Arpaio." *Id.* Nevertheless, the article continued, Sinema's campaign sent out "dozens of online fundraising missives invoking Arpaio" in a negative way, including one that read: "'The last time [Vice President Pence] was [in Arizona], he attacked Kyrsten and praised convicted criminal Joe Arpaio!'" *Id.*

---

[5]     *Id.*; Official Canvass of Results from Arizona Secretary of State: https://azsos.gov/sites/default/files/2018%200910%20Signed%20Statewide%20Canvass.pdf.

[6] *Id.*

Buried in the midst of the discussion of Sinema was a brief contextual reference to Arpaio that read: "A few weeks before [Sinema's] Senate bid, rumors began to swirl that Trump was going to pardon the state's notorious former Maricopa County sheriff, Joe Arpaio, who had been sent to prison for contempt of court."  *Id.*

The claims against the HuffPost Defendants in Arpaio's Complaint in *Arpaio I*, as well as in the Complaint in the instant suit, hinge on the words "… ***who had been sent to prison*** …," which language was removed promptly from the article, and replaced with "… ***who was convicted of criminal contempt of court***."  Compl., ECF No. 1-1 at 2, 3 (emphasis added).  A prominently-placed correction was contemporaneously added to the article, reading: "***CORRECTION: A previous version of this story mistakenly indicated Joe Arpaio went to prison for his conviction.***"  Compl., ECF No. 1-1 at 3 (emphasis in original).  The correction is included in documents attached to Arpaio's current Complaint, and a date stamp on the upper left corner of the document showing the correction indicates that the correction was published by "11/6/2018"—just one day after the original article was published.  *Id.*  Arpaio's case against the other defendants in both *Arpaio I* and the instant action revolves around allegedly being called a "felon," *Arpaio I* Compl. ¶¶ 20-21, 28, 30-31, 36, 41, 53; Compl. ¶¶ 15, 23, 25, 26, 35, 40, 49, 56, 60, 88, 92; whereas the case against the HuffPost Defendants centers exclusively on the words: ". . . who had been sent to prison . . . ." *Arpaio I* Compl. ¶¶ 24-26; Compl. ¶¶ 15, 19, 20.

Arpaio first sued the HuffPost Defendants and other media entities and reporters in *Arpaio I* for defamation, tortious interference with prospective business relations, and false light. *Arpaio I* Compl. ¶¶ 35-56.  In the current action, filed more than a year after the article at issue was published, Arpaio sues the ***same*** HuffPost Defendants over the ***same*** language in the ***same*** article, and, once again, brings defamation, false light and tortious interference with prospective

business relations claims.[7]  Compl. ¶¶ 54-95.  Arpaio also adds a section in his current Complaint attempting to add allegations relating to the actual malice requirement for defamation claims.  *See id.* ¶¶ 31-38.  Specifically, Arpaio alleges that Defendants:

- "know what is true or have reason to know what is false or misleading," *id.* ¶ 32;
- "were at a minimum subjectively aware that the articles were fabricated in large part and were not corroborated by anyone," and deliberately sought to harm Arpaio because of his conservative politics, *id.* ¶ 33;
- previously published an article[8] discussing Arpaio, but which did not state (one way or the other) whether he went to prison, *id.* ¶ 36; and
- did not investigate the facts stated in the article at issue, *id.* ¶¶ 45-46.

In *Arpaio I*, this Court held that Arpaio "[did] not come close to adequately pleading facts of actual malice." *Arpaio I* Op. at 9.  Even if this Court had given Arpaio leave to amend—which it did not— Arpaio's conclusory allegations still do not come close to adequately pleading actual malice.

Arpaio admits in his Complaint that in *Arpaio I*, "the Court did not give Plaintiff's counsel an opportunity to [amend Arpaio's Complaint] and instead dismissed the Complaint with prejudice." *Id.* ¶ 53.  But, blatantly ignoring the basic civil procedure doctrines of res judicata and issue preclusion, Arpaio continues on to allege that "that case is now over, [and] this new Complaint and new action is being filed which . . . provides the specificity the Court apparently desired." *Id.*  The Complaint does not explain—nor could it possibly—how Arpaio can be permitted to file a "new Complaint and new action" where claims based on the same nucleus of

---

[7] In *Arpaio I*, Arpaio asserted a cause of action for defamation per se, whereas in the current Complaint he purports to add causes of action for general defamation and defamation by implication.  However, these three asserted causes of action contain the same elements and are treated by courts simply as "defamation."  *See, e.g.*, *Montgomery v. Risen*, 197 F. Supp. 3d 219, 266 (D.D.C. 2016) (entering summary judgment on defamation claim for lack of actual malice where plaintiff asserted claims for defamation, defamation per se, and defamation by implication).  Accordingly, the Court should treat Arpaio's three defamation-related causes of action as one cause of action for purposes of this Motion to Dismiss.

[8] Arpaio's Complaint also, confusingly, claims that the HuffPost Defendants published another prior article about Arpaio, but his own Complaint shows that the article referenced was published by Reuters, with no evident connection to the HuffPost Defendants.  *See* Compl. ¶ 36.

facts have been previously dismissed with prejudice. Additionally, the Complaint implicitly admits that Arpaio did not seek reconsideration in *Arpaio I* or appeal the Court's decision in *Arpaio I*, in that he admits *Arpaio I* is "over" and that he chose to file a "new Complaint" in an entirely "new action" after the Court's dismissal with prejudice on the same facts. *See id.* ¶ 53.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully," and requires "the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545–46. Thus, a court evaluating a motion to dismiss for failure to state a claim does not accept the truth of legal conclusions, "naked assertion[s] devoid of further factual enhancement," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Consideration is limited to "well-pleaded factual allegations," in the complaint, *id.* at 679, and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017).

"[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits" in order "[t]o preserve First Amendment freedoms and give reporters … the breathing room they need to pursue the truth[.]" *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017). Early resolution of defamation cases on a motion to dismiss "not only protects against the costs of meritless litigation, but provides assurance to those exercising their

First Amendment rights that doing so will not needlessly become prohibitively expensive." *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 89 (D.D.C. 2018) (internal quotation marks omitted); *see also Kahl*, 856 F.3d at 109 ("[c]ostly and time-consuming defamation litigation can threaten those essential freedoms [of speech and of the press]"); *Arpaio I* Op. at 12 ("[C]ourts ultimately must vigorously protect the First Amendment rights of journalists and the press to issue their reports").

## **ARGUMENT**

## I.   **ARPAIO'S COMPLAINT IS SUBJECT TO DISMISSAL UNDER THE DOCTRINES OF RES JUDICATA AND ISSUE PRECLUSION.**

Arpaio's Complaint in this action amounts to an unpermitted amendment to the *Arpaio I* Complaint, as it is based on the same nucleus of facts and theories dismissed in *Arpaio I*.  An "attempt to re-raise claims that [a plaintiff] has previously litigated and lost" "must be dismissed under Rule 12(b)(6)." *Morgan v. United States Parole Comm'n*, 304 F. Supp. 3d 240, 251 (D.D.C. 2016); *see also Smalls v. U.S.*, 471 F.3d 186, 193 (D.C. Cir. 2006) (affirming Rule 12(b)(6) dismissal and denial of reconsideration where "[i]n accordance with the doctrine of res judicata, the record shows that both the [] lawsuits arise from the same underlying transaction").  Under the doctrine of res judicata, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties . . . based on the same cause of action." *Tembec Inc. v. U.S.*, 570 F. Supp. 2d 137, 140-141 (D.D. C. 2008) (quoting *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)).  Res judicata "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate[,] protect[s] their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 140.  It applies where there is (1) a judgment on the merits in a prior suit; (2) involving the same parties; and (3) based on the same nucleus of facts. *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004).

Issue preclusion, also known as collateral estoppel, is a similar concept that protects the parties and the courts.  It bars relitigation where: "(1) the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case; (2) the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination."  *See*, *e.g.*, *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007).

The doctrines of res judicata and collateral estoppel both apply here and specifically prohibit Arpaio's Complaint in this case.  The Court's dismissal of *Arpaio I* with prejudice meets the requirement of a ruling on the merits for both res judicata and issue preclusion purposes because in the order and final judgment, the Court actually and necessarily decided the issue of whether Arpaio's causes of action—reasserted in this action—are subject to dismissal.  *Arpaio I*, ECF Nos. 55, 56.  The final judgment requirement for purposes of res judicata is therefore satisfied.

Moreover, both doctrines apply because the parties, claims, and issues Arpaio presents in *Arpaio II* are identical to those previously asserted—and adjudicated—in *Arpaio I*.  Courts have held that res judicata applies to a later-filed action where the claims share a common nucleus of facts with claims in a previously adjudicated matter.  *See Apotex*, 393 F.3d at 212.  Issue preclusion need not involve the same facts as the previous action, but it prevents a plaintiff from reasserting issues in hopes of getting a better result.  *See Yamaha Corp. of Am. v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit").

Here, Arpaio impermissibly relitigates his claims following this Court's dismissal in *Arpaio I*.  Arpaio presents the identical issues the Court actually and necessarily decided in

dismissing the first case with prejudice and without leave to amend.  *Compare* Compl. ¶¶ 18-21 *with Arpaio I* Compl. ¶¶ 23-26.   Indeed, the allegations are nearly verbatim between the two pleadings.  *Id.*  The claims in the two complaints stem from the same allegedly defamatory article, and the two complaints pinpoint the same allegedly harmful speech within the article.  *Id.*  Arpaio seeks the exact same figure of damages in both complaints, *see* Compl. p. 18; *Arpaio I* Compl. p. 9, and fundamentally asserts the same causes of action, *see* Compl. ¶¶ 54-95; *Arpaio I* Compl. ¶¶ 35-56.  *See* fn. 8, *supra* (defamation claims styled in different fashions are still defamation claims for legal analysis, *see Montgomery*, 197 F. Supp. 3d at 266).

Arpaio acknowledges that he sought to amend his original complaint in *Arpaio I*, but the Court denied his request when it granted the HuffPost Defendants' Rule 12(b)(6) motion.  Compl. ¶ 53.  Arpaio further acknowledges that this new Complaint was filed to try to do what this Court specifically prohibited, namely to try to cure deficiencies in the dismissed *Arpaio I* Complaint.  *Id.* For these reasons, the instant Complaint easily meets each of the requirements for application of both res judicata and issue preclusion.

Courts have specifically held that reasserting claims after dismissal with prejudice, as Arpaio has done here, makes later-filed claims subject to dismissal.  In *Morgan*, 304 F. Supp. 3d at 251, the court explained that the plaintiff's "dissatisfaction" with a prior ruling in another case based on the same facts "provides no basis for this Court to revisit the [issues presented], and to find otherwise would contravene core principles of res judicata."  The court found that it was therefore mandated to dismiss the claim under Rule 12(b)(6).  *Id.*  Similarly, the *Ashbourne v. Hansberry* court determined that a second-filed case "present[ed] the same cause of action as *Ashbourne I*, which involves the same parties, and wherein a court of competent jurisdiction issued a final decision on the merits."  245 F. Supp. 3d 99, 106 (D.D.C. 2017).  As such, the action was

"barred by res judicata in its entirety, and therefore must be dismissed for failure to state a claim upon which relief can be granted."  *Id.* at 101.

Here, too, *Arpaio I* presents the same causes of action as the instant case, involves the same parties, and was already decided and dismissed by this Court.  The application of *res judicata* and issue preclusion could not be plainer.  Any other rule would permit plaintiffs to simply ignore dismissals with prejudice and continue to refile the same claims on the same facts against the same defendants *ad infinitum*.  The Court should dismiss Arpaio's unsupportable re-assertion of his claims with prejudice and without leave to amend.  The Court does not need to conduct any further analysis to rule in the HuffPost Defendants' favor.

## II. ARPAIO'S CLAIMS AGAINST THE HUFFPOST DEFENDANTS ARE TIME-BARRED.

Arpaio's claims are also barred by the statute of limitations.  The District of Columbia has a one-year statute of limitations for defamation claims.  D.C. Code Ann. § 12-301(4) (2002); *Stith v. Chadbourne & Parke, L.L.P.*, 160 F. Supp. 2d 1, 6 (D.D.C. 2001).  This Court recognizes that "District of Columbia courts adhere strictly to the one-year limitation" in defamation actions.  *Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003).  The same one-year statute of limitations applies to other claims, such as false light and tortious interference with prospective business relations, that are "intertwined with a defamation claim."  *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 114 (D.D.C. 2008) (finding that tortious interference with prospective business relations claim was intertwined with defamation claim and subject to one-year statute of limitations); *Stovell v. James*, 965 F. Supp. 2d 97, 102 (D.D.C. 2013) (finding that false light claim was intertwined with defamation claim and subject to one-year statute of

limitations).[9]  When an applicable statute of limitations bars a cause of action, it is properly raised

on a Rule 12(b)(6) motion.  *See*, *e.g.*, *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002)

(affirming dismissal of defamation and other intertwined causes of action on statute of limitation

grounds); *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 86-87 (D.D.C. 2014) (same).

      Here, the statute of limitations runs from the date of first publication.  *Jin*, 254 F. Supp. 2d

at 68 ("the statute of limitations for defamation claims is one year from the date of first publication

. . . [and] any subsequent sale or delivery of a copy of the publication does not create a new cause

of action"); *Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60, 78 (D.D.C. 2011) (statute of

limitations starts to run on date of an article's publication; no difference between print and internet

publications for purposes of this rule).[10]  Arpaio's Complaint makes clear that the HuffPost Article

at issue was published on November 5, 2018.  Compl. ¶ 18 (citing the date of publication); ECF

No. 1-1 at p. 1 (indicating publication date of "11/05/2018").  Arpaio filed his Complaint in the

current action more than one year later on November 7, 2019.[11]  The relevant statute of limitations

bars each of Arpaio's claims against the HuffPost Defendants because Arpaio filed his Complaint

in this action more than one year after the HuffPost Article with the allegedly actionable language

was published.

---

[9] *See also Mittleman v. U.S.*, 104 F.3d 410, 415 (D.C. Cir. 1997) (same); *Forras v. Rauf*, 39 F.
Supp. 3d 45, 57 (D.D.C. 2014) (same); *Doe v. Southeastern Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990)
(applying one-year statute of limitations across the board to causes of action in a "defamation type
action").

[10] There is no applicable discovery rule that could delay accrual of the statute of limitations here,
as "the District of Columbia Court of Appeals has expressly rejected the application of the
discovery rule to mass media defamation claims."  *Stovell*, 965 F. Supp. 2d 97, 103 (D.D.C. 2013)
(citing *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 299 (D.C. 2001)).

[11] Although Exhibit 1 to Arpaio's Complaint plainly shows that the HuffPost Article was corrected
on November 6, 2018, Compl. Ex. 1-1 at 3 (upper left corner of document showing correction also
shows date of "11/6/2018"), Arpaio's Complaint falsely alleges that the article was never
corrected, Compl. ¶ 21.

### III.     ARPAIO FAILS TO STATE A CLAIM.

Arpaio's Complaint is time-barred and subject to dismissal based on res judicata and issue preclusion grounds, but it fails for an additional reason: it does not state a claim on which relief could be granted.  As this Court already decided in *Arpaio I*, Arpaio's allegations are subject to dismissal under Rule 12(b)(6).  Arpaio's additional allegations in the current Complaint based on the same overall occurrence or transaction in *Arpaio I* do nothing to change the outcome, and as such, Arpaio's Complaint should be dismissed for the additional, independent reason that it fails to state a claim.

### A.     Arpaio Did Not—And Cannot—Plausibly Allege That the HuffPost Defendants Acted with Actual Malice.

#### 1.     Arpaio is Required to Plead and Prove Actual Malice.

There is no question that Arpaio is a quintessential public figure subject to the actual malice standard, and this Court previously determined that Arpaio is a public figure in *Arpaio I*.  *Arpaio I* Op. at 5 ("The record is replete with evidence detailing Mr. Arpaio's status as a public figure.").

Public figure plaintiffs like Arpaio must plead and prove that the defendant published allegedly defamatory material with "actual malice"—*i.e.*, "with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Masson v. New Yorker Magazine*, 496, 510 (1991), 501 U.S. at 510 (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  This Court determined in *Arpaio I* that based on Arpaio's public figure status, he would need to plausibly allege actual malice "[t]o move his case past a Rule 12(b)(6) motion to dismiss."  *Arpaio I* Op.at 6.  As the D.C. Circuit has made clear, "[t]he standard of actual malice is a daunting one," *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), which imposes a "heavy burden" on public figure defamation plaintiffs, *Lohrenz v. Donnelly*, 350 F.2d 1272, 1283 (D.C. Cir. 2003).  This high barrier to recovery by public figure and public official plaintiffs comes

"against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times*, 376 U.S. at 270.  As the Supreme Court explained, "erroneous statement is inevitable in free debate and … it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need … to survive.'"  *Id.* at 271-72.  In particular, "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of our system of government established by our Constitution."  *Buckley v. Valeo*, 424 U.S. 1, 14 (1976); *see also Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-301 (1971) ("[p]ublic discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* [actual malice] rule").

Consistent with the national commitment to open debate on public issues and public officials (whether erstwhile, current or aspirational), the imposing actual malice standard focuses solely on the defendant's *actual* state of mind "at the time of publication." *Bose Corp. v. Consumer Union,* 466 U.S. 485, 512 (1984).  "Mere negligence does not suffice." *Masson*, 501 U.S. at 510. Rather, the term "knowledge of falsity means simply that the defendant was *actually aware* that the contested publication was false." *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 484 (7th Cir. 1986) (emphasis added).  Similarly, to establish that the defendant published a statement with "reckless disregard" for the truth, the plaintiff must show "that the defendant actually had a '*high degree of awareness … of probable falsity*.'"  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989 (emphasis added); *Kahl*, 856 F.3d at 118 (same).  "Reckless disregard" is not measured "by what a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Instead, "[t]here must be

sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* This standard "is subjective; the plaintiff must prove that the defendant actually entertained a serious doubt." *McFarlane*, 91 F.3d at 1508. The actual malice standard is not satisfied even by proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Clyburn*, 903 F.2d at 33 (internal quotation marks omitted). As an additional safeguard, the First Amendment requires that the plaintiff prove actual malice by "clear and convincing" evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986).

### 2. Arpaio's New Complaint Still Fails to Adequately Allege Actual Malice Against the HuffPost Defendants.

The *Arpaio I* Complaint "[did] not come close to adequately pleading facts of actual malice," *Arpaio I* Op. at 9, and Arpaio's latest unauthorized complaint still falls short of the required standard. In keeping with the high threshold to demonstrate actual malice and the policies encouraging debate over matters of public concern, this District Court routinely dismisses cases where the plaintiff has not adequately pleaded actual malice. *See, e.g.*, *Fairbanks*, 314 F.Supp.3d at 93 (finding that complaint did not state a defamation claim where it "do[es] not provide clear and convincing evidence of actual malice"); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017 (rejecting argument that "alleging actual malice is unnecessary at this [pleading] stage" and dismissing complaint with prejudice based in part on plaintiff's failure to plead facts to show that defendant "acted with actual malice"); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016) (dismissing complaint where "[t]he bald allegations of the Complaint are insufficient to allege malice"); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012) (dismissing claim where "plaintiffs merely allege in a conclusory fashion that the defamatory statements were made and published by defendants with knowledge of their falsity or with reckless

disregard for their truth"); *Arpaio I* Op. 9 (dismissing case based on insufficient allegations of actual malice).

These cases reinforce the rule that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and "formulaic recitation[s] of the elements" do not meet basic pleading requirements sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. In *Arpaio I*, Arpaio's conclusory allegations of actual malice, plus references to "leftist enmity," were plainly insufficient and the Court properly dismissed the case on that basis. *Arpaio I* Op. at 9. Arpaio's new Complaint in this action still misses the mark. In *Fairbanks*, the plaintiff's complaint articulated four different bases for defendant's purported actual malice, including an alleged "fail[ure] to perform due diligence consistent with professional standards of journalism," but the Court concluded that the plaintiff's allegations did not "come[] close to satisfying the First Amendment's demanding standard for public figures bringing defamation actions," and dismissed the defamation claim. 314 F.Supp.3d at 92-93. In *Deripaska*, the plaintiff "failed to adequately allege actual malice" even though his complaint articulated specific "crucial background" information that was allegedly intentionally omitted from a publication, but even that, the Court ruled, did "not come close to plausibly alleging that the [defendant] acted with actual malice or reckless disregard for the facts when it published the article in question." 282 F.Supp.3d at 143-44. In *Parisi*, 845 F.Supp.2d at 218–19, the court dismissed the complaint where it contained "no factual allegation, other than the plaintiffs' own assertions that the statements were false." Similarly, in *Hourani*, the court quoted the plaintiff's conclusory allegations of actual malice and then held that the "Complaint does not allege any ***facts*** supporting the claim that [defendants] made statements knowing they were false or with reckless disregard to their truth." 164 F.Supp.3d at 144 (emphasis added) (dismissing complaint).

Arpaio's conclusory allegation that Defendants "know what is true or have reason to know what is false or misleading," Compl. ¶ 32, is in line with the insufficient allegations in *Arpaio I, Parisi* and *Hourani*, where the court found that the plaintiff's assertions of falsity and formulaic allegations of actual malice did not support a defamation cause of action.  Moreover, Arpaio's allegations that the HuffPost Defendants previously published an article[12] about Arpaio not stating (one way or the other) whether he went to prison, *id.* ¶ 36, and that they purposely did not investigate the facts stated in the article at issue, *id.* ¶¶ 45-46, invoke *Fairbanks* and *Deripaska*, which specifically found that allegations of a failure to perform journalistic due diligence and of intentional omission of facts did not amount to actual malice.  *See also St. Amant*, 390 U.S. at 731 (actual malice is not measured "by what a reasonably prudent man would have published, or would have investigated before publishing"); *Lohrenz v. Donnelly*, 223 F. Supp. 2d at 46 (failure to investigate a story does not show actual malice unless "that failure constituted a purposeful avoidance of the truth").  Arpaio's allegations regarding an earlier HuffPost article referencing Arpaio's pardon, without discussing one way or the other whether he went to prison, are of no consequence; the standard is not whether a defendant should have known that a statement was false, but whether the defendant *actually*, subjectively doubted the truth of the statement.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) ("[I]t is not enough to show that defendant should have known better; instead, the plaintiff must offer evidence that the defendant in fact harbored subjective doubt").  Here, the existence of a prior article that does not even state whether or not Arpaio went to prison—Arpaio's own Complaint describes it as "not mention[ing] prison,"

---

[12] As discussed in fn. 9, *supra*, Arpaio's Complaint also references a Reuters article in the allegations about the HuffPost Defendants' prior articles about Arpaio.  *See* Compl. ¶ 36.  A publication by Reuters has no bearing on the HuffPost Defendants.

Compl. ¶ 36—has no application toward adequately alleging that the HuffPost Defendants harbored subjective doubt about the truth of the HuffPost Article.

In a last-ditch attempt to show actual malice, Arpaio again asserts that the HuffPost Defendants "were part of a leftist/Democrat political partisanship scheme" that caused them to "purposefully avoid[] the truth[.]"  Compl. ¶ 37.  This Court already has rejected this argument, however, following Supreme Court precedent that states that a defendant's "motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice."  *Harte-Hanks Commc'ns*, 491 U.S. at 665; *Arpaio I* Op.at 9 ("Allegations of 'leftist enmity' cannot trump the guarantees of the First Amendment"); *see also Lohrenz*, 223 F. Supp. 2d at 46 ("a media defendant's 'adversarial stance' may be 'fully consistent with professional, investigative reporting' and is not 'indicative of actual malice'") (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)).  The Court should again reject this as a basis for alleging actual malice by the HuffPost Defendants.

Even without the application of res judicata, issue preclusion or the statute of limitations, Arpaio again has failed to adequately plead actual malice, and his defamation claim should be dismissed for that additional reason.

### 3.   Arpaio Cannot Plausibly Allege that the HuffPost Defendants Acted with Actual Malice.

Arpaio cannot, consistent with *Iqbal/Twombly* or Rule 11 of the Federal Rules of Civil Procedure, plausibly allege that the HuffPost Defendants acted with knowledge of falsity or reckless disregard for the truth.  Arpaio alleges that "no efforts have been taken by Defendant HuffPo or Defendant Robillard to correct this false statement [about being 'sent to prison for contempt of court']."  Compl. ¶ 21.  He included an identical allegation in his Complaint in *Arpaio I. Arpaio I* Compl. ¶ 26.  In both Complaints, that allegation is manifestly false, and is disproven by Arpaio's own exhibits, which show that the HuffPost Defendants **did** promptly correct the

HuffPost Article.  *Compare* Compl. ECF No. 1-1 at 2 (with handwritten note reading "Initial Report") *with id.* at 3 (with handwritten note reading "Updated Report" and circling "***CORRECTION***" at the bottom of the corrected Article).  The Court should reject Arpaio's allegation in favor of the attachments to the Complaint and Request for Judicial Notice.  *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272-273 (D.C. Cir. 2018) (stating that the court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice" (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)));  *Rivera v. Rosenberg & Assocs., LLC*, 142 F.Supp.3d 149, 161 (D.D.C. 2015) ("[w]here, as here, the complaint's factual allegations are contradicted by exhibits incorporated by reference in the complaint and of which the Court may take judicial notice, the Court need no longer accept as true plaintiff's version of events").  Although actual malice is measured at the time of publication, numerous courts have held that a correction is evidence of a lack of actual malice.  *See Hoffman v. Washington Post Co.,* 433 F. Supp. 600, 605 (D.D.C. 1977) (stating that a correction "is significant and tends to negate any inference of actual malice")*; Logan v. District of Columbia,* 447 F. Supp. 1328, 1332 (D.D.C. 1978) ("the correction published the next day by [defendant]" tends to negate "any inference of actual malice," quoting *Hoffman*).  Arpaio's failure to adequately allege actual malice a second time is not surprising since there are no plausible facts—let alone any potential for the requisite clear and convincing evidence—that could support a finding of actual malice, and Arpaio's allegation regarding a failure to correct the article is belied by his own evidence.  Unsurprisingly given his flimsy actual malice allegations, Arpaio returns to his theme from *Arpaio I* of "leftist enmity" on the HuffPost Defendants' part, which this Court has already rejected.  Compl. ¶ 84; *Arpaio I* Op. at 9-10.

Arpaio's defamation claim should be dismissed with prejudice because as both Complaints demonstrate, Arpaio does not—and cannot—articulate facts to show that the HuffPost Defendants acted with actual malice.

### B.     The HuffPost Article Was Substantially True.

The HuffPost Defendants advanced an argument as to substantial truth in their Motion to Dismiss Arpaio's Complaint in *Arpaio I*, as did other defendants in that action.  The Court accepted Defendants Cable News Network ("CNN"), Jeff Zucker, and Chris Cuomo's substantial truth argument as to a CNN news piece, but it did not accept the HuffPost Defendants' substantial truth argument in *Arpaio I*.  *See Arpaio I* Op.at 7-8.  The HuffPost Defendants respect this Court's ruling in *Arpaio I*; but if the Court rejects the HuffPost Defendants' res judicata, issue preclusion, statute of limitations and actual malice arguments in this action, then the HuffPost Defendants respectfully renew and advance their substantial truth argument here for reconsideration and for the purposes of appeal preservation.  *Cf. Campbell v. District of Columbia*, 894 F.3d 281, 287 (D.C. Cir. 2018) (arguments must be made in the lower court to preserve them for appeal).

### 1.     Arpaio Has the Burden to Demonstrate Falsity.

Falsity is an element of a defamation claim.  *Lohrenz*, 223 F. Supp. 2d at 39.[13]  "The burden of proving falsity rests *squarely on the plaintiff*, [who] must demonstrate either that the statement is factual and untrue, or an opinion based implicitly on facts that are untrue."  *Lane v. Random House*, 985 F. Supp. 141, 150 (D.D.C. 1995) (emphasis added); *see also Philadelphia Newspapers,*

---

[13] The elements of defamation are: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."  *Id.* at 39.  Furthermore, if a court finds that the plaintiff is a public figure, that "requires plaintiff to show that defendants acted with 'actual malice' in publishing the allegedly defamatory statements."  *Id.* at 40.

*Inc. v. Hepps*, 475 U.S. 767, 776-777 (1986) (burden of proving falsity is on plaintiff in a defamation case against a media defendant where the underlying issue is of public concern).  If the plaintiff is a public figure then he or she must prove falsity with clear and convincing evidence. *Pearce v. E.F. Hutton Grp., Inc.*, 664 F. Supp. 1490, 1512 (D.D.C. 1987); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 558 (S.D.N.Y. 1984); *cf. Fairbanks,* 314 F. Supp. 3d at 90 ("[t]he First Amendment requires public figures suing in defamation to 'demonstrate by at least a fair preponderance of the evidence that the [allegedly] defamatory statement is false,' with close cases decided against them" (citation omitted)).

A statement is nonactionable if "[t]he sting of the charge ... is substantially true." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (internal quotation marks omitted); *see also Ning Ye v. Holder*, 644 F. Supp. 2d 112, 116 (D.D.C. 2009) (it is an "absolute defense" to a defamation claim if the statements are "substantially true").  The "court must … determine the threshold question of law of whether the statement is false." *Smith v. Clinton*, 253 F.Supp.3d 222, 239 (D.D.C. 2017).  In the context of granting a motion to dismiss, and "[w]here the question of truth or falsity is a close one, a court should err on the side of nonactionability." *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155 (D.D.C. 2018) (internal quotation marks omitted).

### 2.  The "Gist" and "Sting" of the HuffPost Article's Reference to Arpaio is that He Was Convicted of Criminal Contempt of Court.

In a case from Arpaio's home state, the Court of Appeals of Arizona held that a newspaper editorial accurately reported that a defamation plaintiff had been convicted of "fraudulent practices" but erroneously reported that he was "doing four-to-five years in prison." *Fendler v.*

*Phoenix Newspapers Inc.*, 636 P.2d 1257, 1259 (Ariz. Ct. App. 1981).  The court affirmed a decision in favor of the newspaper defendants based on the substantial truth doctrine holding that, "for purposes of damage to reputation, which is the interest protected by an action for defamation, we believe the inaccuracy in the editorial was not significant."  *Id.* at 1260-62.  The opinion explained that ***"[d]amage to reputation flows not from being in a prison facility per se, but from the fact that the person has been adjudged guilty of a crime by a court of law*****.**"  *Id.* at 1262 (emphasis added).  The "substantial 'sting,' is the same," the court held, "whether he had started his prison term or will never actually spend time in prison."  *Id.*

A trial court in New York recently came to a similar conclusion.  In *Pearlman v. NYP Holdings, Inc.*, Case No. 157546/14 (N.Y. Sup. Ct. May 11, 2015) (Dkt. No. 26), the plaintiff entered a guilty plea to money laundering, and was fined and sentenced to "a term of probation." *Id.* at 1.[14]  A newspaper article later erroneously reported that the plaintiff "reside[s] in a federal prison" for money laundering.  *Id.* at 2.  The plaintiff sued for libel and defendant brought a motion to dismiss, which was granted in pertinent part on substantial truth grounds.  *Id.* at 2-5.  The court noted that, contrary to the mistaken newspaper report, plaintiff was "able to avoid incarceration," but nevertheless held that "the statement plaintiff engaged in criminal behavior by laundering money and was currently residing in federal prison was substantially true because she did plead guilty to a crime related to the laundering of money."  *Id.* at 5.  "The inaccurate assertion that she was imprisoned, as opposed to being on probation for her criminality," the court held, "could not have had a different or worse effect on the mind of a reasonable reader than the truth."  *Id.* (citation omitted).

---

[14] A true and correct copy of this Order is attached as Exhibit B to the HuffPost Defendants' RJN.

This principle is not new.  Over a century ago, a newspaper article reported that plaintiff Walter Skrocki said recently-assassinated President William McKinley "'ought to have been killed,'" and that Skrocki was thereafter "placed under arrest and held at the city jail" before being released.  *Skrocki v. Stahl*, 110 P. 957, 958 (Cal. Ct. App. 1910).  At the trial for libel against the newspaper, "it was not shown … that plaintiff himself was placed under arrest or held at the jail." *Id.* at 959.  The California Court of Appeal held that "proof of the truth of the charge [was] a complete defense" to the libel claim.  *Id.*  The rule "manifestly based on right reason" is that "defendants were not required to justify every word of the defamatory matter" as it "was sufficient if the gist or sting of the libelous charge was justified, and immaterial variances and defects of proof upon minor matters are to be disregarded if the substance of the charge be justified." *Id.* The court ruled that the "failure to prove that plaintiff was arrested and detained in jail" was "without prejudice to any of his substantial rights" because the "sting of the charge here is that plaintiff said President McKinley 'ought to have been killed.'"  *Id.*  "In comparison with such a charge," the court asked "how insignificant is the accusation that he was arrested therefor and detained in jail," and answered that it was "comparatively trivial."  *Id.*  The court disagreed with plaintiff's contention that the allegedly false statement that he was arrested and imprisoned could support a defamation claim: "It would require certainly a good deal of temerity for anyone to argue to a jury that, although defendants were justified in declaring in effect that plaintiff was an anarchist, he was damaged by the false publication in regard to his arrest."  *Id.*

Forty years later, in *Wilson v. United Press Ass'ns*, 98 N.E.2d 391, 391-92 (Ill. Ct. App. 1951), a newspaper erroneously stated that the plaintiff was "now serving a 10-year sentence" when, in fact, he was free on bail pending an appeal and a new trial.  The Illinois Appellate Court held that the "sole question presented is whether this circumstance can be made the basis of an

action for libel." *Id.* at 392.  The court concluded that it could not as the article was "accurate reportage." *Id.*  "It is evident," the court held that "the pertinent news angle … was the fact that plaintiff had been improperly convicted and had been granted a new trial.  Whether or not he was serving his sentence or was free on bail was of secondary importance." *Id.*  Citing *Skrocki*, the court stated that "plaintiff could not be injured by the erroneous statement that he was serving his ten-year sentence pending appeal of the case rather than the factual statement that he was out on bail pending appeal." *Id.* at 393.  Therefore, the court held that the article at issue was "substantially true and accurate." *Id.*[15]

Consistent with the holdings in *Fendler*, *Pearlman*, *Skrocki*, and *Wilson*, the gist and sting of the HuffPost Defendants' brief reference to Arpaio in an article about Kyrsten Sinema concerns Arpaio's conviction for criminal contempt of court.  Compl., ECF No. 1-1; RJN, Exs. A, B.  The harm to Arpaio's reputation is that he was convicted of a crime, not whether he was sent to "a prison facility per se," *Fendler*, 636 P.2d at 1262, or whether he was "able to avoid incarceration," *Pearlman*, Case No. 157546/14 (N.Y. Sup. Ct. May 11, 2015) (Dkt. No. 26), at 5.  The erroneous statement that Arpaio "had been sent to prison" was "comparatively trivial," *Skrocki*, 110 P. at 959, and of "secondary importance" as compared to the "accurate reportage" of the "pertinent news angle" regarding Arpaio's conviction and Sinema's role in Arpaio's then-prospective pardon, *Wilson*, 98 N.E.2d at 392.  Over a century of precedent nationwide supports the conclusion that the HuffPost Article was substantially true.  Given Arpaio's flagrant, knowing and willful disobedience of Judge Snow's Injunction, his criminal conviction therefor and his acceptance of a

---

[15] *Accord Hayward v. Watsonville Register-Pajaronian and Sun*, 265 Cal. App. 2d 255, 257-58, 261-62 (1968) (newspaper's erroneous statement that plaintiff "served a term in a Kansas prison" captured the "gist," "sting" and "substance" of an FBI investigation record under California's fair report statute, Civil Code § 47, even though plaintiff did not serve time in prison, but actually served only 11 days in a reformatory).

pardon which is tantamount to a confession of guilt, "[i]t would," as the *Skrocki* court put it, "require certainly a good deal of temerity for" Arpaio to argue otherwise.  110 P. at 959.

## IV.  ARPAIO FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS OR FALSE LIGHT.

Arpaio's fourth claim for tortious interference with prospective business relations and his fifth claim for false light should also be dismissed for additional reasons.

### A.  The Tortious Interference and False Light Claims are Duplicative of the Failed Defamation Claim.

As this Court recognized in ruling on Arpaio's Complaint in *Arpaio I*, the tortious interference and false light claims are duplicative of the defamation claim and fail for the same reasons the defamation claim fails.  *See Arpaio I* Op. at 10 ("The Court need not delve too deeply into Mr. Arpaio's additional claims because the First Amendment considerations governing the dismissal of Mr. Arpaio's defamation claims also requires the dismissal of his tortious interference and false light claims.").  Where a "defamation claim fails, so do … other tort claims based upon the same allegedly defamatory speech" because the "First Amendment considerations that apply to defamation … apply also to [plaintiffs'] counts for false light and tortious interference." *Farah v. Esquire Magazine,* 736 F.3d 528, 540 (D.C. Cir. 2013).  This principle is based on the well-established rule that "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim." *Moldea v. New York Times Co.*, 22 F.3d 310, 319-20 (D.C. Cir. 1994) (*Moldea II*) (rejecting duplicative false light claim); *Moldea v. New York Times Co.*, 15 F.3d 1137, 1151 (D.C. Cir. 1994) (*Moldea I*) ("a plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light"); *Farah v. Esquire Magazine*, 863 F.Supp.2d 29, 39 (D.D.C. 2012) ("Plaintiffs' claim for tortious interference fails because it is grounded in the same nonactionable claim for defamation"), *aff'd*, 736 F.3d 528, 540

(D.C. Cir. 2013).[16] Moreover, these claims have already been raised in *Arpaio I*, and are thus subject to dismissal based on the principles of res judicata, issue preclusion, and the statute of limitations discussed herein.

### B. The Tortious Interference Claim Fails for Additional Reasons.

First, Arpaio's tortious interference claim also fails because he does not allege the existence of a "valid business relationship or expectancy," which is one of the elements of the claim. *Xereas v. Heiss*, 933 F.Supp.2d 1, 11 (D.D.C. 2013).[17] Such relationships must be "commercially reasonable to anticipate." *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978) (affirming grant of motion to dismiss). Arpaio alleges unspecified harm to his ability to obtain "funding for [his] 2020 political campaign." Compl. ¶ 86.[18] Campaign contributions are not "business relationships." *See Son v. Kim*, No. 05-2318, 2007 WL 950085, at *2 (D.D.C. Mar. 28, 2007) (ruling in a jurisdictional context that "politics is not business," and having political support does not "show that defendant derives substantial revenue from goods used or consumed, or services rendered").[19] Just as this

---

[16] Likewise, where an ancillary tort claim is based on an alleged defamation that fails the *Twombly/Iqbal* standard, it should be dismissed for that reason as well. *Zelaya v. UNICCO Svc. Co.*, 587 F.Supp.2d 277, 287 (D.D.C. 2008) ("[t]he intentional interference required for the plaintiff's claim is premised entirely on a defamation allegation that is fatally deficient under the *Twombly* pleading standard").

[17] The elements of tortious interference are: "(1) the existence of a valid business relationship or expectancy between plaintiff and [a third party]; (2) knowledge of the relationship or expectancy between plaintiff and [a third party]; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage." *Zelaya*, 587 F.Supp.2d at 286.

[18] Arpaio also vaguely alleges unspecified harm to two unspecified "private business enterprises." Compl. ¶ 88. Such allegations provide nowhere near the level of detail necessary to allege a valid business expectancy. *See Carr*, 395 A.2d at 84.

[19] Arpaio does not directly allege interference with his prospect of winning a future seat in the United States Senate—or any other office—but the hope of winning an election also cannot support a tortious interference claim. *Marin v. McClincy*, 15 F.Supp.3d 602, 616 (W.D. Pa. 2014) (rejecting intentional interference with business relations claim based on future political career,

Court in *Son* found that political support does not equal revenue from goods or services, Arpaio cannot show that the *possibility* of future political donations amounts to a "valid business relationship or expectancy."[20]

Second, even if aspirational campaign contributions could be considered valid business relationships or expectancies, Arpaio failed to articulate the necessary element of the present and plausible "existence" of such relationships or expectancies. *Economic Research Svcs., Inc. v. Resolution Economics, LLC*, 208 F.Supp.3d 219, 229 (D.D.C. 2016) (granting motion to dismiss in part because plaintiff "fail[ed] to plead the existence of valid business relationships with the requisite specificity"). Arpaio names only two specific parties with whom he supposedly lost relationships: the "Republican National Committee ('RNC'), and its National Republican Senate Campaign Committee ('NRSC')." Compl. ¶ 82.[21] Nowhere, however, does Arpaio allege that he has *existing* relationships with the RNC or NRSC whereby he could reasonably expect they would contribute money to a future political campaign. *Twombly*, 550 U.S. at 555 (plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and mere

---

holding, "Plaintiff's claim for interference with his future career in politics falls short … He cannot establish more than a mere expectancy or hope that he would have achieved elected office").

[20] To the extent Arpaio's position is that he would perform acts as an elected official in exchange for money received, that would be bribery, which is clearly not a "valid business relationship." 18 U.S.C. § 201.

[21] Beyond the RNC and NRSC, Arpaio only vaguely alleges that he lost relationships with unspecified "affiliated political action committees and entities and persons, including donors", Compl. ¶ 82; and that he "has two private business enterprises, which have been severely harmed by the Defamatory Publications of the Defendants," *id.* ¶ 88. Such generalized allegations are insufficient. *Xereas*, 933 F.Supp.2d at 11 ("a claim of tortious interference with prospective business relations cannot survive where the plaintiff does not allege any specific future business relations and only provides general references to specific opportunities"). Moreover, Arpaio's allegation regarding his purportedly "severely harmed" private business enterprises refers to his harm stemming from the issue that "Few if any want to do business with a 'convicted felon!'" Compl. ¶ 88. But as Exhibit 1 to Arpaio's Complaint shows, The HuffPost Article does not refer to Arpaio as a convicted felon, and Arpaio's allegations therefore also fail to tie the alleged harm to the HuffPost Article.

"formulaic recitation of the elements of a cause of action will not do").  Setting aside that Arpaio has been convicted of a crime and could not win in his State's primary even before the HuffPost Article was published, the existence of Arpaio's purported relationships with the RNC and NRSC are particularly implausible under *Twombly/Iqbal* because, according to judicially noticeable records from the Federal Election Commission ("FEC"), Arpaio did not receive contributions from the RNC or NRSC in his 2018 run for United States Senate.  RJN Exs. C, D.  And, although Arpaio contends the RNC and NRSC would be a conduit for money from other committees, he received a total of only $5,000 from just one committee (Conservative America Now PAC) in the 2017-2018 cycle.  *Id.*  Furthermore, Arpaio's claim is implausible because political donors can decide to contribute to a candidate's campaign or not at their discretion, and candidates are therefore akin to at-will employees who do not have a sufficiently fixed or assured relationship with which to interfere.  *Zelaya*, 587 F. Supp. 2d at 287 ("District of Columbia law … and elsewhere, has consistently failed to recognize a cause of action for intentional interference with prospective contractual relations where the expectancy is based on at-will employment"); *Economic Research Svcs.*, 208 F. Supp. 3d at 229 ("if there is no fixed or assured employment there is nothing tangible with which to interfere" (internal quotation marks omitted).)

Third, Arpaio's tortious interference claim should also be dismissed because he does not plausibly allege that, at the time the HuffPost Article was published, the HuffPost Defendants knew he would run for office again in 2020 let alone that he had relationships with the RNC, NRSC or affiliated entities.  *See* Compl. ¶ 82.  *Zelaya*, 587 F. Supp. 2d at 286 ("knowledge of the relationship or expectancy on the part of the defendant" is an element of claim).  Arpaio merely alleges that "Defendants are aware of these prospective business relationships[.]"  Compl. ¶ 84. That type of conclusory allegation is not sufficient.  In *Elemary v. Philip Holzmann A.G.*, 533 F.

Supp. 2d 116, 132-33 (D.D.C. 2008), this Court held that a plaintiff alleging tortious interference must "plead *some* facts from which the court may reasonably infer knowledge" of a relationship, and granted a motion to dismiss an interference claim where the plaintiff alleged only "conclusory assertion and unreasonable inferences." (Emphasis in original.) Arpaio's contention is even more implausible because, according to FEC records, he received no contributions from the RNC or NRSC. RJN, Exs. C, D.

Fourth, a plaintiff alleging tortious interference must make a "strong showing of intent" to interfere, and "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Bennett Enterprises, Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1999) (internal quotation marks omitted). Here, Arpaio generally alleges that all of the Defendants have "leftist enmity of Arpaio," and purportedly sought to "influence" political action committees and others not to give campaign money to Arpaio. Compl. ¶¶ 84-86. Such allegations are not sufficient under *Twombly/Iqbal* to support Arpaio's claim that the HuffPost Defendants, with their fleeting statement and almost immediate correction, intended to interfere with Arpaio's as-yet unformed, unannounced and unspecified "2020 political campaign." *Id.* ¶ 86.

## CONCLUSION

The HuffPost Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety and dismiss each of the claims against them with prejudice.

DATED: January 17, 2020                    Respectfully submitted,

                                            /s/ Jean-Paul Jassy
                                            Jean-Paul Jassy (*Pro Hac Vice* Pending)
                                            William T. Um (*Pro Hac Vice* Pending)
                                            Elizabeth H. Baldridge (*Pro Hac Vice* Pending)
                                            **JASSY VICK CAROLAN LLP**

800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants TheHuffingtonPost.com, Inc.*
*and Kevin Robillard*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2020, a copy of the foregoing Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) was electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Larry E. Klayman
**FREEDOM WATCH, INC..**
202 Pennsylvania Avenue, NW
Suite 345
Washington, DC 20006
Telephone: (561) 558-5336
leklayman@gmail.com

*Attorneys for Plaintiff Joseph Michael Arpaio*

Alison Schary
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
Telephone: (202) 973-4248
Facsimile: (202) 973-4499
alisonschary@dwt.com

Elizabeth A. McNamara
Rachel F. Strom
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Telephone: (212) 489-8230

*Attorneys for Defendants*
*Tessa Stuart & Rolling Stone*

/s/ Elizabeth Baldridge
Elizabeth Baldridge
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
ebaldridge@jassyvick.com

*Attorneys for Defendants*
*TheHuffingtonPost.com, Inc. and Kevin Robillard*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH MICHAEL ARPAIO,                             *

        Plaintiff,                                   *

v.                                                *          Civil Action No. 1:19-cv-03366-RCL

KEVIN ROBILLARD                                   *

and                                               *

HUFFINGTON POST                                   *

and                                               *

TESSA STUART                                      *

and                                               *

ROLLING STONE                                     *

        Defendants.                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

**<u>PROPOSED ORDER</u>**

Upon consideration of the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure brought by Defendants TheHuffingtonPost.com, Inc. and Kevin Robillard, it is hereby ORDERED that the motion is GRANTED.  Plaintiff Joseph Michael Arpaio's Complaint against Defendants TheHuffingtonPost.com, Inc. and Kevin Robillard is dismissed with prejudice and without leave to amend.

Dated this _____ day of _____ 2020.

_____

ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE