# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH MICHAEL ARPAIO,                    *

      Plaintiff,                         *

v.                                        *          Civil Action No. 1:19-cv-03366-RCL

KEVIN ROBILLARD                           *

and                                       *

HUFFINGTON POST                           *

and                                       *

TESSA STUART                              *

and                                       *

ROLLING STONE                             *

      Defendants.                        *


*      *      *      *      *      *      *      *      *      *      *      *      *      *

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Federal Rule of Evidence 201(b), and the law of the courts of this District, Defendants TheHuffingtonPost.com, Inc. and Kevin Robillard (the "HuffPost Defendants") respectfully request that the Court take judicial notice of the following documents, attached hereto, in connection with the HuffPost Defendants' concurrently-filed Motion to Dismiss:

1.    **Exhibit A** is a true and correct copy of the November 5, 2018, Huffington Post article titled "Kyrsten Sinema Wants You to Know She's Not a Progressive," prior to correction, that is the subject of Plaintiff Arpaio's suit against the HuffPost Defendants ("the HuffPost Article"). The article was downloaded from

1

the Internet Archive located at archive.org.  *See* attached Declaration of Elizabeth

Baldridge ("Baldridge Decl."), ¶ 2; Complaint ("Compl."), ¶ 18; ECF No. 1-1

(Complaint displaying a hand-annotated portion of the same HuffPost Article).

2.     **Exhibit B** is a true and correct copy of a New York state trial court decision titled

*Pearlman v. NYP Holdings, Inc.*, Case No. 157546/14, dated May 11, 2015.  *See*

Baldridge Decl., ¶ 4.

3.     **Exhibit C** is a true and correct copy of an online summary from the Federal

Election Commission's ("FEC") website of the overall campaign contributions to

the Sheriff Joe Arpaio for U.S. Senate campaign for the 2017-2018 election cycle,

retrieved on March 1, 2019.  *See* Baldridge Decl., ¶ 5.

4.     **Exhibit D** is a true and correct copy of an online summary from the FEC's

website of contributions from committees to the Sheriff Joe Arpaio for U.S.

Senate campaign for the 2017-2018 election cycle, retrieved on March 1, 2019.

*See* Baldridge Decl., ¶ 6.

For the reasons set forth more fully in the accompanying Memorandum of Law, the

HuffPost Article is subject to judicial notice because they it is part of the "facts alleged in the

complaint [and] documents attached thereto or incorporated therein." *Farah v. Esquire

Magazine*, 736 F.3d 528, 534 (D.D.C. 2013).  The copy of the New York state trial decision in

*Pearlman v. NYP* is properly subject to judicial notice because courts may take judicial notice of

statutes and judicial decisions.  *See*, *e.g.*, *Awan v. U.S. Dep't of Justice*, No. 10-1100, 2011 WL

2836541, at *1 (D.D.C. July 13, 2011).  And courts may take judicial notice of information

posted on public agencies' websites, and do so regularly in the context of Federal Election

Commission information.  *See*, *e.g.*, *Campaign Legal Ctr. v. Fed. Election Comm'n*, 245 F.

Supp. 3d 119, 124 (D.D.C. 2017); *Pharm. Research & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).  Accordingly, the Huffington Post Defendants respectfully request that the Court take judicial notice of these documents in its consideration of the HuffPost Defendants' Motion to Dismiss.

DATED:  January 17, 2020

Respectfully submitted,

/s/ Jean-Paul Jassy
Jean-Paul Jassy (*Pro Hac Vice* Pending)
William T. Um (*Pro Hac Vice* Pending)
Elizabeth H. Baldridge (*Pro Hac Vice* Pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Huffington Post and Kevin Robillard*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO, | * |
| Plaintiff, | * |
| v. | *    Civil Action No. 1:19-cv-03366-RCL |
| KEVIN ROBILLARD | * |
| and | * |
| HUFFINGTON POST | * |
| and | * |
| TESSA STUART | * |
| and | * |
| ROLLING STONE | * |
| Defendants. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OF LAW</u>

Jean-Paul Jassy (*Pro Hac Vice* Pending)
William T. Um (*Pro Hac Vice* Pending)
Elizabeth H. Baldridge (*Pro Hac Vice* Pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036

Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Huffington Post and Kevin Robillard*

For the reasons set forth below, this Court should take judicial notice of Exhibits A through D to this request.

### A.  Original Version Of The HuffPost Article

In ruling on the HuffPost Defendants' Motion to Dismiss, this Court may consider any document incorporated by reference or integral to the complaint.  *Farah*, 726 F.3d at 534.  The HuffPost Article is referenced throughout the Complaint, and a portion is attached as Exhibit 1 (ECF No. 1-1) to the Complaint.  Compl. ¶ 18, Ex. 1.

The HuffPost Article is the proper subject of judicial notice because the Complaint refers to, relies on, quotes from, attaches and is based in large part on the pertinent portion of the HuffPost Article.  *See*, *e.g.*, *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (holding that documents referred to in or integral to a complaint are subject to judicial notice specifically in the context of determining whether that complaint states a claim).  The HuffPost Article was captured through the Internet Archive, located at archive.org, which courts have accepted as an appropriate source for judicially noticeable online documents.  Baldridge Decl., ¶¶ 2-3; *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 1:00-1898, 2013 WL 6869410 (S.D.N.Y. Dec. 30, 2013) (taking judicial notice of reports by way of an internet archive); *Martins v. 3PD, Inc.*, No. 11-11313-DPW, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013) (taking judicial notice of "the various historical versions of a website available on the Internet Archive at Archive.org as facts readily determinable by resort to a source whose

accuracy cannot reasonably be questioned"); *Juniper Networks, Inc. v. Shipley*, 394 Fed. App'x 713, at *1 (Fed. Cir. 2010) (indicating that the Internet Archive may be an appropriate source for judicial notice); *Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("As a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for the taking of judicial notice").

### B.  New York State Trial Decision in *Pearlman v. NYP Holdings, Inc.*

Taking judicial notice of statutes and judicial decisions is proper.  As this District Court has observed, "Courts take judicial notice of law every time they cite a statute or judicial decision." *Awan v. U.S. Dep't of Justice*, No. 10-1100, 2011 WL 2836541, at *1 (D.D.C. July 13, 2011) (citing *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312, 324 (1st Cir. 2001)).  The *Pearlman v. NYP Holdings, Inc.* decision is the opinion of New York state's trial court, a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  This Court can and should take notice of the decision attached as Exhibit C to this request.

### C.  FEC Campaign Contribution Summaries

Lastly, the two Federal Election Commission ("FEC") summaries of contributions to the Sheriff Joe Arpaio for US Senate campaign are also subject to judicial notice.  Exhibit D summarizes overall contributions to the Arpaio campaign, and Exhibit E summarizes the contributions from committees – which was just one $5,000 contribution from Conservative America Now PAC – to the campaign.  *See* Baldridge Decl., ¶¶ 5-6.  Courts may take notice of information posted on official public websites of government agencies.  *Pharm. Research & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

Specifically with respect to information supplied by the FEC, this District Court has properly taken judicial notice in the past.  *See*, *e.g.*, *Campaign Legal Ctr. v. Fed. Election Comm'n*, 245 F. Supp. 3d 119, 124 (D.D.C. 2017).  It should do so again here.

### D.  Conclusion

Defendants respectfully request that this Court take judicial notice of Exhibits A through D to this request in considering Defendants' Motion to Dismiss.

Dated:  January 17, 2020

/s/ Jean-Paul Jassy

Jean-Paul Jassy (*Pro Hac Vice* Pending)
William T. Um (*Pro Hac Vice* Pending)
Elizabeth H. Baldridge (*Pro Hac Vice* Pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Huffington Post and Kevin Robillard*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH MICHAEL ARPAIO,          *

       Plaintiff,          *

v.          *          Civil Action No. 1:19-cv-03366-RCL

KEVIN ROBILLARD          *

and          *

HUFFINGTON POST          *

and          *

TESSA STUART          *

and          *

ROLLING STONE          *

       Defendants.          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DECLARATION OF ELIZABETH BALDRIDGE

I, Elizabeth Baldridge, declare as follows:

1.    I am over eighteen years of age, and not a party to this case.  I have applied to be admitted to practice before this court *pro hac vice* and am admitted to practice before all courts of the State of California.  I am an associate in the law firm of Jassy Vick Carolan LLP and counsel for Defendants TheHuffingtonPost.com, Inc. and Kevin Robillard in this action.  The facts stated below are true of my own personal knowledge.

2.    **Exhibit A** to this Request for Judicial Notice is a true and correct copy of the November 5, 2018, Huffington Post article titled "Kyrsten Sinema Wants You to Know She's Not a

Progressive" (the "HuffPost Article") as published on TheHuffingtonPost.com, Inc.'s website on or about November 5, 2018, prior to any correction of the reference to Plaintiff Joe Arpaio. This article was downloaded from archive.org on March 6, 2019. The portion relating to Arpaio is substantively the same as the page attached to the Complaint at ECF No. 1-1, page 2 (with a handwritten note that it is the "Initial Report").

3.      **Exhibit B** to this Request for Judicial Notice is a true and correct copy of a New York state trial court decision titled *Pearlman v. NYP Holdings, Inc.*, Case No. 157546/14, dated May 11, 2015.

4.      **Exhibit C** to this Request for Judicial Notice is a true and correct copy of an online summary from the Federal Election Commission's ("FEC") website of the overall campaign contributions to the Sheriff Joe Arpaio for U.S. Senate campaign for the 2017-2018 election cycle. On March 1, 2019, I retrieved this summary by using the FEC website's search function for campaign contributions to candidates, located at https://www.fec.gov/data/browse-data/?tab=candidates.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

5.      **Exhibit D** to this Request for Judicial Notice is a true and correct copy of an online summary from the Federal Election Commission's website of contributions from committees to the Sheriff Joe Arpaio for U.S. Senate campaign for the 2017-2018 election cycle.  On March 1, 2019, I retrieved this summary also by using the FEC website's search function for campaign contributions to candidates, located at https://www.fec.gov/data/browse-data/?tab=candidates.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.


January 17, 2020


_/s/ Elizabeth Baldridge_
Elizabeth Baldridge

# EXHIBIT A

# Kyrsten Sinema Wants You To Know She's Not A Progressive

Republicans are highlighting her leftist past. But progressives have their own grumbles, even as they line up behind her Senate run in Arizona.

**By Kevin Robillard** 11/05/2018 03:42 pm ET **Updated** 3 hours ago

AdChoices [>]

PHOENIX — Democratic Rep. Kyrsten Sinema didn't have to think about her answer. She was holding a press conference focused on health care at the Crescent Ballroom, a music venue on the outskirts of this city's downtown, when an unsurprising question came.

"Do you support 'Medicare for all'?"

"I do not," Sinema responded quickly to the reporter, later giving the same answer to a question about whether she supported adding a public health insurance option to Obamacare.

"I've been laser-focused on supporting realistic proposals that help Arizonans get access to affordable coverage," she said. She went on to talk about her work with Republicans to delay a tax hike included in the Affordable Care Act and to increase the number of employees a small business must employ to 100 (instead of 15) before it is subject to the act.

Sinema is her party's nominee for U.S. Senate in this state. It's a former Republican bastion — home to Barry Goldwater, the founder of the modern conservative movement — that is slowly turning into a swing state. She's in a tight race with GOP Rep. Martha McSally, one of the first American women to fly in combat, in a race Democrats must win to have a chance of taking back the U.S. Senate.

If the contest here has been about one thing, it's health care. More than 1 million Arizonans have a pre-existing health condition, and Sinema and Democratic groups have relentlessly hammered McSally for her votes to repeal those protections in the Affordable Care Act. (McSally has responded by claiming to have "led the fight" to protect people with pre-existing conditions. She actually profanely encouraged other GOP members to vote for Obamacare repeal.)

But if the race has been about two things, the second thing is Sinema's past and ideology. National and state Republicans have relentlessly portrayed her as a far-left extremist, typically citing her work as an anti-war activist in the 2000s and early parts of her time in the Arizona State Legislature. They've noted she danced with witches (yes, witches) and wore a pink tutu at an anti-war rally. They've circulated videos of her calling Arizona's GOP-led legislature "crazy." The attacks culminated when McSally ignored a question about climate change at a debate and instead accused Sinema of "treason."

There's no doubt Sinema once identified as a progressive. She began her political career as a spokeswoman for the Green Party. She told a radio host back in 2006 that she was the most liberal member of the Arizona State Legislature. She called herself a "former socialist" at the Netroots Nation conference in 2006. In a 2002 letter to the editor of the Arizona Republic, she wrote that "capitalism damages [the] livelihood" of the "average American" and railed against the World Trade Organization and NAFTA. Even on health care, Sinema's website for her 2002 run for Phoenix City Council promised she would "work towards a system of universal health care" and wanted to remove "the profit-making element" from health care.

McSally has relentlessly used this record to portray Sinema as a radical. "She's extreme and out of touch and out of the mainstream," McSally said Friday night on Fox News' "The Ingraham Angle." "She is in the liberal witness protection program right now."

But that's not who Sinema is anymore. Or if it is, she's been hiding it for more than half of her career in elected office. She's now the type of moderate more likely to punch a hippie, metaphorically speaking, than to dance with them. A look at her record, combined with interviews with Democrats and progressives in the state — many of whom didn't want to go on the record criticizing their party's best chance to win statewide office since Janet Napolitano's gubernatorial victory in 2006 — show a politician who is willing to buck progressive wishes and sometimes seems to go out of her way to aggravate the left.

While other Democrats in heavily diverse Sun Belt states — Stacey Abrams in Georgia, Andrew Gillum in Florida and David Garcia in Arizona — are trying to juice up minority turnout and expand the electorate, Sinema is equally focused on wooing independents and Republicans, while hoping progressives stay in line.

Her allies argue this approach reflects what the majority of Arizonans want in a senator. "They've called everybody a liberal, and it doesn't work. Voters trust Sinema more than these Republicans who are calling wolf all the time," said Rep. Ruben Gallego, a progressive Democrat who represents a district adjacent to Sinema's. "She's the one who's passing legislation and is working across the aisle." They just might be right.

So far, Democrats feel confident the strategy is working. Democrats believe Sinema, who has aired multiple ads on Spanish-language televisions and speaks the language fluently, is turning out the Hispanic voters she needs to win. And while Republicans still lead in early ballot returns, their margin is down to just under 8 percentage points. The GOP usually has about a 12-point edge in midterm elections, according to the Arizona Republic.

## A Shift In Focus

AdChoices ▷

Figuring out exactly how and why Sinema went from left to center isn't easy. Her campaign turned down a request for an interview. A 170-page book she wrote in 2009, titled *Unite and Conquer*, explains her embrace of deal-making, if not quite her embrace of centrism.

In the book, Sinema writes she entered the state legislature in 2004 as a "bomb-thrower" and spent her first two years in office frustrated, accomplishing little. She opted instead to start working with Republicans, even hard-line ones, to pass legislation.



Sinema answers questions at a campaign event in Phoenix on Oct. 24.
CAITLIN O'HARA FOR HUFFPOST

"I'd spent all my time being a crusader for justice, a patron saint for lost causes, and I'd missed out on the opportunity to form meaningful relationships with fellow members in the legislature, lobbyists, and other state actors," she wrote. "I hadn't gotten any of my great policies enacted into law, and I'd seen lots of stuff I didn't like become law. It was just plain sad."

Gallego, who served in the legislature with Sinema, said the future congresswoman was just finding a way to get things done. "You have to work with Republicans to pass anything in Arizona, and that's what her constituents demanded of her," he said in a phone interview.

And that's what happened. She notes she was able to pass legislation protecting breastfeeding mothers from indecent exposure charges — something Democrats in the state had sought to do for years — by teaming up with a Republican legislator and by framing the bill in a conservative-friendly way.

Subscribe to the Politics email.

How will Trump's administration impact you?

address@email.com                    SUBSCRIBE

"The framing was perfect," she wrote. "Rather than talk about breast-feeding as a 'woman's rights' issue (which Democrats had done for years), they talked about a mother's need to take care of her baby (which Republicans can understand and connect with.)"

The experience, she writes, made her realize she enjoyed passing legislation more than she enjoyed attacking her political opponents.

"I do love to give fiery speeches," she wrote. "But I also love people. I love talking with people, working together, and making friends."

## Syrian Refugees, A Letter And A T-shirt

By the time Sinema was elected to Congress in 2012, she was a full-fledged moderate. She became a favorite of House Minority Whip Steny Hoyer (D-Md.) and an annoyance to his more liberal boss, House Minority Leader Nancy Pelosi (D-Calif.). She joined the Blue Dog Caucus, a shrinking group of conservative Democrats, and the New Democrats, a group of pro-business members who mostly hail from suburban areas. She earned the endorsement of the U.S. Chamber of Commerce in 2014. Since the beginning of President Donald Trump's administration, she has voted with him nearly two-thirds of the time.

A few weeks before launching her Senate bid, rumors began to swirl that Trump was going to pardon the state's notorious former Maricopa County sheriff, Joe Arpaio, who had been sent to prison for contempt of court. In August, a letter asking the president not to pardon Arpaio was signed by every Democratic member of the Arizona congressional delegation — except Sinema. Despite this, multiple progressives in the state noted Sinema's campaign has sent out dozens of online fundraising missives invoking Arpaio. (As recently as last week, a Sinema email noted Vice President Mike Pence was visiting Arizona. "The last time he was here, he attacked Kyrsten and praised convicted criminal Joe Arpaio!" the email read.)

RELATED COVERAGE

  

| GOP Senate Candidate | The Arizona GOP Is Trying To | An Establishment Republican |
| Accuses Arizona Rival Of | Persuade Democrats To Vote | Hugs Trump, And Wins In |
| 'Treason' In Debate | Green | Arizona Primary |

A number of Democratic eyebrows also shot up after Sinema released the first digital ad of her campaign. In the spot, meant to highlight her independence, as well as her support for law enforcement and veterans, her brother Paul is clearly wearing a T-shirt with a "Blue Lives Matter" logo. The Blue Lives Matter movement, which aims to make attacks on police a hate crime, is seen as a countervailing force to the progressive Black Lives Matter movement.

The biggest issue, though, is her voting record: Sinema, like many other moderate Democrats, voted for the rollback of some Dodd-Frank banking regulations. In 2015, she voted for a tougher screening process for Syrian and Iraqi refugees. In September, she was just one of three Democrats who voted to make parts of the Republican tax cut permanent. She was just one of 12 Democrats to vote to expand access to health savings accounts, which the GOP has pushed as an alternative to Obamacare. And she's voted for Trump-backed legislation that increased penalties for people who re-enter the country illegally.

## A Notable Non-endorsement

AdChoices [▷]

The evening before Sinema's health care press conference, Vermont Sen. Bernie Sanders held a rally at Arizona State University for David Garcia, the Democratic candidate in the gubernatorial race. A who's who of Arizona Democratic activists and officials took the stage, but they never mentioned Sinema.

And there's good reason for that: She hasn't endorsed Garcia, who has run as an electorate-expanding progressive in favor of increasing education spending, abolishing Immigration and Customs Enforcement and enacting "Medicare for all." In many states, this would cause no shortage of political howling. For Sinema, it's standard operating procedure — Democrats noted she never endorsed Democratic Rep. Ann Kirkpatrick's 2016 Senate bid against Republican Sen. John McCain.

Democrats have downplayed the dispute. "It only comes up when folks like you ask about it," Garcia told HuffPost. But the lack of outcry also shows how progressives are mostly swallowing their medicine and supporting Sinema, despite their grumbles.

"We'd rather stand with someone who stands with 50 percent of our values than none of our values," said Brianna Westbrook, a former Democratic congressional candidate in the state who's working with the Working Families Party of Arizona to turn out voters for Garcia. But she added: "She's really alienated a lot of voters, especially in our black and brown communities."

Before Garcia won the primary in August, both he and his opponent, state Sen. Steve Farley, predicted they wouldn't have any difficulty running alongside a more centrist candidate like Sinema.

"She's doing what she thinks is important for her strategy, and I've got to respect that, because I've never met anybody more ambitious," Farley said.

A few hours after her Phoenix press conference, Sinema was at a coffee shop, where she was launching a "Teachers for Sinema" canvass. Educators in Arizona have exploded in activism this year, storming the state Capitol as part of a movement dubbed #RedForEd.



Supporters of #RedForEd hold signs touting Sinema on Oct. 24 in Phoenix.
CAITLIN O'HARA FOR HUFFPOST

The top goal of the #RedForEd movement? Ousting GOP Gov. Doug Ducey. But in a radio interview earlier this month, Sinema declined to reveal whether she voted for Ducey or Garcia. (Asked if she was proud to be a Democrat, Sinema responded: "I'm not sure that people are even proud of parties anymore, because I feel like the parties are not doing a good job. So I would say that I'm a proud Arizonan.")

But despite her disagreement on their main goal, the teachers in attendance raved about Sinema, noting her life story — she grew up in poverty and graduated from high school at age 16 — matched that of so many of their students. While some allowed they would prefer a more liberal candidate, they would take what they could get.

"We're so lucky to have somebody on the ballot who will fight for us on health care and education," Marisol Garcia said to a round of applause from the gathered teachers. (Sinema, who started her career as a school social worker, was once a member of the union. She's since earned a law degree, a Ph.D. in justice studies and an MBA.)

Republicans have tried to exploit the gaps between Sinema and the left wing of her party. Over the last weekend of the election, they sent out mailers tying Sanders to Angela Green, the aptly named Green Party nominee in the Senate contest. The mailers, which noted Green's support for "Medicare for all" and legalized marijuana, looked like a clear attempt to draw progressive support away from the Democratic nominee.

A Sanders spokesman never addressed whether the Vermont senator supported Sinema. "Bernie Sanders has been traveling the country visiting 13 states to try and end one party rule in Washington by electing Democrats up and down the ballot," spokesman Josh Miller-Lewis wrote in an email.

Democrats in the state say there's no evidence of mass liberal defections during the state's extensive early voting period, and Sinema hasn't made any adjustments to her strategy, continuing to portray herself as above petty partisan squabbles.

"I know together we will elect an Arizona senator who will be a voice for all Arizonans, not just one political party," Sinema told the teachers.

AdChoices ▷

And in the end, Arizona progressives will take a post-partisan over a staunch Trump ally like McSally.

"It frustrates a lot of people," Westbrook said of Sinema's moderate politics. Still, she held out some hope Sinema could be persuaded: "Once she's in office, we'll be able to push her."

*This story has been updated with information on Hispanic voters and early ballot returns.*

*Do you have information you want to share with HuffPost? Here's how.*

# EXHIBIT B

**Pearlman v NYP Holdings, Inc.**

2015 NY Slip Op 32797(U)

May 11, 2015

Supreme Court, New York County

Docket Number: 157546/14

Judge: Donna M. Mills

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

## SUPREME COURT OF THE STATE OF NEW YORK— NEW YORK COUNTY

**PRESENT :** __DONNA M. MILLS__             **PART** __58__

                              *Justice*

---

*JAMI PEARLMAN,*                          Index No. 157546/14

                Plaintiff,             MOTION DATE_____

          -v-                             MOTION SEQ. NO. 001

NYP HOLDINGS, INC.,

               Defendant.            MOTION CAL NO._____

---

The following papers, numbered 1 to _____ were read on this motion for _____.

                                                PAPERS NUMBERED

Notice of Motion/Order to Show Cause-Affidavits– Exhibits....   1, 3

Answering Affidavits– Exhibits_____    2

Replying Affidavits_____     4

CROSS-MOTION: _____ YES ✓ NO

Upon the foregoing papers, it is ordered that this motion

IS DECIDED IN ACCORDANCE WITH ATTACHED MEMORANDUM DECISION.

**Dated:**      5-11-15

                                            *J.S.C.*
                                    **DONNA M. MILLS, J.S.C.**

Check one:      ✓ FINAL DISPOSITION      ____ NON-FINAL DISPOSITION

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------
JAMI PEARLMAN,

Plaintiff,

- against -

NYP HOLDINGS, INC.,

Defendant.
-------------------------------------------------------------------

**INDEX NO.**
**157546/14**

**DECISION/ORDER**

DONNA M. MILLS, J:

Pursuant to CPLR §§ 3211(a)(1), and (a)(7), defendant NYP Holdings, Inc., ("defendant or NYP"), moves to dismiss the verified complaint of plaintiff, Jami Pearlman in its entirety on the grounds that the libel claim alleged is barred by the substantial truth doctrine, by the fair report privilege of N.Y. Civil Rights Law § 74, and by the incremental harm doctrine.

BACKGROUND

On February 10, 2011, plaintiff and her co-conspirators Donald Hellinger, Ronald Hellinger, Michael Weisberg, Randy Trost, and Michele Quigley, were charged in a federal court indictment with, among other things, conducting a money laundering business. In the course of the criminal case, Donald Hellinger, Ronald Hellinger, and Michael Weisberg each pled guilty and were sentenced to 36 months imprisonment, 27 months imprisonment, and 22 months imprisonment, respectively.

On July 1, 2013, plaintiff, like her co-defendants, entered a guilty plea to Count Two of the indictment. While the sentencing judge noted that the crime that plaintiff committed was a very serious offense, he imposed a $30,000 fine on plaintiff and sentenced her to a term of probation.

On June 27, 2014, NYP published in the New York Post a column discussing the sale of Nylon Magazine, which stated that "Ex-CEO Donald Hellinger and ex-Chief

Financial Officer Jami Pearlman both now reside in a federal prison for laundering others' offshore gambling winnings unrelated to their nine-year stewardship of the magazine.

Plaintiff commenced this libel action against NYP and alleged that because the June 27, 2014 article erroneously stated that plaintiff was imprisoned, it exposed her to hatred, contempt and aversion and induced an unsavory opinion of her in the minds of persons in the community. NYP admits that the plaintiff was not imprisoned, but contends that plaintiff cannot sustain her defamation claim on the basis of the substantial truth doctrine, New York Civil Rights Law § 74, and the incremental harm doctrine.

## APPLICABLE LAW AND DISCUSSION

Upon the consideration of the parties' respected submissions, the court notes that on a motion to dismiss for failure to state a cause of action, the court must accept the allegations of the complaint as true and accord the plaintiff the benefit of every possible favorable inference (see *Leon v Martinez*, 84 NY2d 83, 87 [1994]). The court then must determine whether the facts as alleged by the plaintiff fit within any theory cognizable at law (see *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 570-571 [2005]). In opposing such a motion, the plaintiff may rest upon the allegations made in the complaint, in which case the issue for the court is whether, within its four corners, the complaint sets forth the elements of a viable cause of action. Alternatively, the plaintiff may submit affidavits and other materials to remedy defects in the complaint and preserve unartfully pleaded but potentially meritorious claims (see *Arrington v New York Times Co.*, 55 NY2d 433, 442 [1982], rearg denied and dismissed 57 NY2d 669, 674 [1982], cert denied 459 US 1146 [1983]). In that case, the plaintiff's additional submissions are likewise to "be given their most favorable intendment" (see *Arrington*, 55 NY2d at 442), and the court is to focus on whether the pleader has a cause of action rather than on merely whether he has properly stated one (see *Leon*, 84 NY2d at 88). In that analysis, "unless it has ben shown that a

2

material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]).

On the other hand, the complaint should be dismissed where documentary evidence authoritatively contradicts some critical allegation of the complaint or resolves all factual issues in the case, thereby conclusively disposing of the claim (see *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).

Applying this standard here, this Court concludes that plaintiff's cause of action for libel should not survive defendant's motion to dismiss. "The essence of the tort of libel is the publication of a statement about an individual that is both false and defamatory" (*Brian v. Richardson,* 87 N.Y.2d 46, 50–51, 637 N.Y.S.2d 347, 660 N.E.2d 1126). A defamatory statement is libelous per se if the statement "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society" (*Rinaldi v. Holt, Rinehart & Winston,* 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 366 N.E.2d 1299, *cert. denied* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456). Additionally, a defamatory statement is libelous per se if it imputes fraud, dishonesty, misconduct, or unfitness in conducting one's profession ( *see Kotowski v. Hadley,* 38 A.D.3d 499, 500, 833 N.Y.S.2d 103; *Gjonlekaj v. Sot,* 308 A.D.2d 471, 473–474, 764 N.Y.S.2d 278; *Wasserman v. Haller,* 216 A.D.2d 289, 627 N.Y.S.2d 456).

NYP alleges that the particular article which stated that plaintiff now resides in a federal prison for laundering others' offshore gambling winnings is substantially true and/or privileged pursuant to Civil Rights Law § 74. NYP additionally argues that the libel cause of action should be dismissed on the basis of the incremental harm doctrine.

Truth is a complete defense to an action for libel, regardless of the harm done by

3

the statements ( *see, Bingham v. Gaynor,* 203 N.Y. 27, 96 N.E. 84; *De Gregorio v. CBS, Inc.,* 123 Misc.2d 491, 473 N.Y.S.2d 922). Provided that the defamatory material on which the action is based is substantially true, as is the case here, the claim to recover damages for libel must fail ( *see, Rinaldi v. Holt, Rinehart & Winston,* 42 N.Y.2d 369, 383, 397 N.Y.S.2d 943, 366 N.E.2d 1299, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456).

With respect to the substantial truth defense, the test is whether the statement "as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced. When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done' " ( *Fleckenstein v. Friedman,* 266 N.Y.19, 23 [1934] [internal citation omitted]; *see also Love v. Morrow & Co.,* 193 A.D.2d 586, 587–88 [2d Dept 1993] ).

Civil Rights Law § 74 provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding." The Court of Appeals has noted that "[f]or a report to be characterized as fair and true within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in [defamation], it is enough that the substance of the article be substantially accurate" ( *Holy Spirit Assn. For Unification of World Christianity v. New York Times Co.,* 49 N.Y.2d 63, 67 [1979] ). Moreover, "a fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated" ( *Briarcliff Lodge Hotel v. Citizen–Sentinel Publishers, Inc.,* 260 N.Y. 106 [1932] ). *McDonald v. East Hampton Star,* 10 AD3d 639, 639–40 [2d Dept 2004] ).

Under New York law, "it is not necessary to demonstrate complete accuracy to defeat a charge of libel. It is only necessary that the gist or substance of the challenged

4

statements be true" ( *Jewell v. NYP Holdings, Inc.,* 23 FSupp2d 348 [SDNY 1998], *citing Printers II, Inc. v. Professionals Publishing, Inc.,* 784 F 2d 141, 146 [2d Cir1986]; *see also Korkala v. W.W. Norton & Co.,* 618 FSupp 152, 155 [SDNY1985] ).

Whereas the NYP mistakenly stated that plaintiff went to prison for her crime, she in fact received a $30,000 fine and was able to avoid incarceration by receiving a sentence of probation. This Court, however, finds that the statement that plaintiff engaged in criminal behavior by laundering money and was currently residing in a federal prison was substantially true because she did plead guilty to a crime related to the laundering of money. The inaccurate assertion that she was imprisoned, as opposed to being on probation for her criminality, could not have had a different or worse effect on the mind of a reasonable reader than the truth ( *Fulani v New York Times Co.,* 260 AD2d 215, 216 [1st Dept 1999]). The challenged statement that plaintiff went to prison cannot conceivably cause any meaningful harm beyond the admitted truth that she is guilty of committing a serious felony.

Accordingly, defendant's motion to dismiss the action is granted and the complaint is dismissed in its entirety as against the defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant.

Dated: 5 - 11 - 15

So Ordered

*[signature]*

Donna M. Mills,   J.S.C.
**DONNA M. MILLS, J.S.C.**

5

# EXHIBIT C





! The Commission's FTP server is moving to a new location, https://www.fec.gov/files/bulk-downloads/index.html »

About the FEC    Press Office    Quick Answers    Contact Us    Site Map

**Committee ID : C00666206**

Two-Year Summary    Report Summaries    Filings

Two-Year Period  2018 ▼                                    New Search

Export Options:                        Metadata    XML    CSV    JSON

**2018 COMMITTEE INFORMATION**                 C00666206

**CANDIDATE INFORMATION**                          ID:

Name: SHERIFF JOE ARPAIO FOR US SENATE        ARPAIO, JOE

Address: 16743 E PALISADES BLVD SUITE 102,       Office:                                    S8AZ00247
FOUNTAIN HILLS, AZ 85268

State: AZ,  District: 00

Treasurer Name: ARPAIO, AVA

Type: S - SENATE

Designation: P - PRINCIPAL CAMPAIGN COMMITTEE OF A CANDIDATE

Party: REPUBLICAN PARTY

**FINANCIAL SUMMARY - SHERIFF JOE ARPAIO FOR US SENATE**

From: 01/01/2018   To: 12/31/2018   ?

## I. RECEIPTS

| | |
|---|---|
| Itemized Individual Contributions | $295,464 |
| Unitemized Individual Contributions | $1,149,128 |
| Total Individual Contributions | $1,444,593 |
| Party Committees Contributions | $0 |
| Other Committees Contributions | $5,000 |
| Candidate Contributions | $0 |
| **TOTAL CONTRIBUTIONS** | $1,449,593 |
| Transfers from Authorized Committees | $0 |
| Candidate Loans | $0 |
| Other Loans | $0 |
| **TOTAL LOANS** | $0 |
| Offsets to Operating Expenditures | $6,275 |
| Other Receipts | $48 |
| **TOTAL RECEIPTS** | $1,455,917 |

**Receipts**

- Itemized Individual Contributions
- Offsets to Operating Expenditures
- Unitemized Individual Contributions
- Other Committees Contributions
- Other

20.3%

78.9%

## II. DISBURSEMENTS

| | |
|---|---|
| Operating Expenditures | $1,407,251 |
| Transfers To Authorized Committees | $0 |
| Candidate Loan Repayments | $0 |
| Other Loan Repayments | $0 |
| **TOTAL LOAN REPAYMENTS** | $0 |
| Individual Refunds | $7,272 |
| Political Party Refunds | $0 |
| Other Committee Refunds | $0 |
| **TOTAL CONTRIBUTION REFUNDS** | $7,272 |
| Other Disbursements | $0 |

**Disbursements**

- Individual Refunds
- Operating Expenditures

99.5%

| **TOTAL DISBURSEMENTS** | $1,414,523 |

## III. CASH SUMMARY

| | |
|---|---|
| Beginning Cash On Hand | $0 |
| Ending Cash On Hand | $41,394 |
| Net Contributions | $1,442,321 |
| Net Operating Expenditures | $1,400,975 |
| Debts/Loans Owed By | $2,744 |
| Debts/Loans Owed To | $0 |

# EXHIBIT D

The Commission's FTP server is moving to a new location, https://www.fec.gov/files/bulk-downloads/index.html »

About the FEC    Press Office    Quick Answers    Contact Us    Site Map

# Committee ID : C00666206

## mmittees Contributions - SHERIFF JOE ARPAIO FOR
## TE

| Export Options: | | | | | | Metadata  XML  CSV  JSON |

| Prev | 1 | Next | | | | | | Total Result(s):1 |

| Contributor Name | Description | City | State | Zip | Receipt Date | Amount | Memo Code |
|---|---|---|---|---|---|---|---|
| CONSERVATIVE AMERICA NOW PAC | | DENVER | CO | 80202 | 08/28/2018 | $5,000 | |

| Prev | 1 | Next | | | | | | Total Result(s):1 |

| Export Options: | | | | | | Metadata  XML  CSV  JSON |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSEPH MICHAEL ARPAIO, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 1:19-cv-03366-RCL |
| KEVIN ROBILLARD | * |
| and | * |
| HUFFINGTON POST | * |
| and | * |
| TESSA STUART | * |
| and | * |
| ROLLING STONE | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>PROPOSED ORDER</u>**

Upon consideration of the HuffPost Defendants' Request for Judicial Notice, it is hereby

ORDERED that the request is GRANTED.


Dated _____


_____

ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2020, copies of the foregoing Request for

Judicial Notice and Proposed Order were electronically filed through the CM/ECF

system, which caused the following parties or counsel to be served by electronic means,

as more fully reflected on the Notice of Electronic Filing:

Larry E. Klayman
**FREEDOM WATCH, INC..**
202 Pennsylvania Avenue, NW
Suite 345
Washington, DC 20006
Telephone: (561) 558-5336
leklayman@gmail.com

*Attorneys for Plaintiff Joseph Michael Arpaio*

Alison Schary
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
Telephone: (202) 973-4248
Facsimile: (202) 973-4499
alisonschary@dwt.com

Elizabeth A. McNamara
Rachel F. Strom
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Telephone: (212) 489-8230

*Attorneys for Defendants*
*Tessa Stuart & Rolling Stone*

/s/ Elizabeth Baldridge

Elizabeth Baldridge
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
ebaldridge@jassyvick.com

*Attorneys for Defendants*
*TheHuffingtonPost.com, Inc. and Kevin Robillard*