## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
----------------------------------------------------------x
JOSEPH MICHAEL ARPAIO,                      :
                                            :        Civil Action No. 1:19-cv-03366-RCL
                    Plaintiff,              :
                                            :
         v.                                 :
                                            :
KEVIN ROBILLARD, HUFFINGTON POST,           :
TESSA STUART, and ROLLING STONE             :
                                            :
                    Defendants.             :
                                            :
----------------------------------------------------------x
```

### MOTION TO DISMISS BY ROLLING STONE DEFENDANTS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Tessa Stuart and Rolling Stone LLC

(incorrectly sued as "Rolling Stone") (collectively, the "Rolling Stone Defendants") respectfully

move the Court to dismiss the complaint with prejudice because it is barred by the doctrine of *res*

*judicata* and fails to state a claim, as set forth in the accompanying Memorandum of Points and

Authorities.

Oral argument is requested.

Dated: January 21, 2020                 Respectfully submitted,

                                        /s/ Alison Schary
                                        Alison Schary
                                        DAVIS WRIGHT TREMAINE LLP
                                        1919 Pennsylvania Avenue NW, Suite 800
                                        Washington, DC 20006
                                        Telephone:    (202) 973-4248
                                        Facsimile:    (202) 973-4499
                                        Email:        alisonschary@dwt.com

                                        Elizabeth A. McNamara (*pro hac vice* pending)
                                        DAVIS WRIGHT TREMAINE LLP
                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY 10020

Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340
Email:       lizmcnamara@dwt.com

*Counsel for Defendants Rolling Stone LLC and Tessa Stuart*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------x

JOSEPH MICHAEL ARPAIO,           :

            Plaintiff,       :

      v.                   :

KEVIN ROBILLARD, HUFFINGTON POST,  :
TESSA STUART, and ROLLING STONE   :

          Defendants.     :

-------------------------------------------------------------x

Civil Action No. 1:19-cv-03366-RCL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**ROLLING STONE DEFENDANTS' MOTION TO DISMISS**

DAVIS WRIGHT TREMAINE LLP
Alison Schary
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
Telephone:    (202) 973-4248
Facsimile:    (202) 973-4499
Email:        alisonschary@dwt.com

Elizabeth A. McNamara (*pro hac vice* pending)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340
Email:        lizmcnamara@dwt.com

*Counsel for Defendants Rolling Stone LLC and*
*Tessa Stuart*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................. 1

III.  ARGUMENT ......................................................................................................... 4

   A.   Plaintiff's Claims Are Barred by *Res Judicata* ............................................... 4

   B.   Plaintiff Fails to State a Claim for the Same Reasons as *Arpaio I* .................. 5

     1.   Plaintiff Fails to Plausibly Allege Actual Malice ...................................... 6

     2.   The Reference to Plaintiff as an "Ex-Felon" Is Substantially True............ 9

     3.   Plaintiff Fails to State Claims for Tortious Interference and False Light ......... 13

IV.  CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980).................................................................................................................5

*Apotex, Inc. v. FDA*,
    393 F.3d 210 (D.C. Cir. 2004) ............................................................................................4

*Arpaio v. Zucker et al.*,
    Case No. 1:18-cv-02894 ............................................................................................ *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................6

*Barnett v. Denver Publ'g Co.*,
    36 P.3d 145 (Colo. Ct. App. 2001) ...................................................................................11

*Becher v. Troy Publ'g Co.*,
    183 A.D.2d 230 (N.Y. App. Div. 1992) ...........................................................................11

*Brewer v. Dungan*,
    No. 92-CVS-456, 1993 WL 441306 (N.C. Super. Ct. June 30, 1993) ...............................11

*Brown v. Amtrak Corp.*,
    No. 03-7033, 2003 WL 22433755 (D.C. Cir. Oct. 27, 2003) ..............................................5

*Carr v. Forbes, Inc.*,
    259 F.3d 273 (4th Cir. 2001) ..............................................................................................9

*Carr v. Sessions*,
    No. CV 18-356 (RC), 2019 WL 917651 (D.D.C. Feb. 25, 2019), *aff'd sub*
    *nom. Carr v. Barr*, No. 19-5077, 2019 WL 5394634 (D.C. Cir. Oct. 3, 2019),
    *petition for cert. docketed*, No. 19-818 (U.S. Dec. 30, 2019).............................................5

*Davis v. Costa-Gavras*,
    654 F. Supp. 653 (S.D.N.Y. 1987) .....................................................................................8

*Dostert v. Wash. Post Co.*,
    531 F. Supp. 165 (N.D. W. Va. 1982) ..............................................................................10

*Drake v. FAA*,
    291 F.3d 59 (D.C. Cir. 2002) ..............................................................................................5

*Drury v. Feeney*,
   505 So. 2d 111 (La. Ct. App. 1987).......................................................................................10

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) .........................................................................................7

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ..........................................................................................3, 13

*Fendler v. Phoenix Newspapers, Inc.*,
   636 P.2d 1257 (Ariz. Ct. App. 1981) ...................................................................................10

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) ...............................................................................................5

*Hahn v. City of Kenner*,
   984 F. Supp. 436 (E.D. La. 1997) ........................................................................................11

*Harte-Hanks Comm., Inc. v. Connaughton*,
   491 U.S. 657 (1989)................................................................................................................7

*Hatfill v. N.Y. Times Co.*,
   532 F.3d 312 (4th Cir. 2008) .................................................................................................8

*Hoffman v. Wash. Post Co.*,
   433 F. Supp. 600 (D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978)..................................9

*Hovey v. Iowa State Daily Publ'n Bd., Inc.*,
   372 N.W.2d 253 (Iowa 1985) ...............................................................................................10

*Hunt v. Liberty Lobby, Inc.*,
   707 F.2d 1493 (D.C. Cir. 1983) ..............................................................................................5

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) ...............................................................................................9

*Jennings v. Telegram-Tribune Co.*,
   164 Cal. App. 3d 119 (1985) ................................................................................................11

*Liberty Lobby, Inc. v. Rees*,
   852 D.2d 595 (D.C. Cir. 1988) ...............................................................................................7

*Logan v. District of Columbia*,
   447 F. Supp. 1328 (D.D.C. 1978) ...........................................................................................9

*Lohrenz v. Donnelly*,
   223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003)..........................7, 9

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991)..........................................................................................10

*Medure v. Vindicator Printing Co.*,
   273 F. Supp. 2d 588 (W.D. Pa. 2002).................................................................9

*Melendres v. Arpaio*,
   No. CV-07-2513-PHX-GMS, 2016 WL 4414755 (D. Ariz. Aug. 19, 2016) ........................12

*Moldea v. N.Y. Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994).............................................................................13

*Montana v. United States*,
   440 U.S. 147 (1979)............................................................................................4

*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).............................13

*Nanji v. Nat'l Geographic Soc'y*,
   403 F. Supp. 2d 425 (D. Md. 2005).....................................................................10

*Nichols v. Moore*,
   396 F. Supp. 2d 783 (E.D. Mich. 2005), *aff'd*, 477 F.3d 396 (6th Cir. 2007).........................10

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................................................8

*O'Keefe v. WDC Media, LLC*,
   No. 13-6530, 2015 WL 1472410 (D.N.J. Mar. 30, 2015) ......................................13

*Orr v. Argus-Press Co.*,
   586 F.2d 1108 (6th Cir. 1978) ...........................................................................10

*Parsi v. Daioleslam*,
   890 F. Supp. 2d 77 (D.D.C. 2012) ......................................................................8

*Secord v. Cockburn*,
   747 F. Supp. 779 (D.D.C. 1990) .........................................................................8

*Seymour v. A.S. Abell Co.*,
   557 F. Supp. 951 (D. Md. 1983) .........................................................................10

*Simonson v. United Press Int'l, Inc.*,
   654 F.2d 478 (7th Cir. 1981) .............................................................................10

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)............................................................................................8

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) .................................................................................7

*Tiwari v. NBC Universal, Inc.*,
  No. C-08-3988, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) ...............................10

*United States v. Arpaio*,
  No. 2:16-cr-01012-SRB (D. Ariz.) ..........................................................................12

*United States v. Arpaio*,
  No. CR-16-01012-001-PHX-SRB, 2017 WL 3268180 (D. Ariz. July 31, 2017)...................12

*United States v. Arpaio*,
  No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072 (D. Ariz. Oct. 19,
  2017) .........................................................................................................................13

*United States v. Battle*,
  No. 17-cr-67, 2017 WL 2983891 (W.D. Pa. July 12, 2017)...................................12

*United States v. Cohn*,
  586 F.3d 844 (11th Cir. 2009) (per curiam)...........................................................12

*United States v. Wright*,
  812 F.3d 27 (1st Cir. 2016) ....................................................................................12

**Statutes**

18 U.S.C. § 3559(a) ....................................................................................................12

# I.      INTRODUCTION

Plaintiff Joseph Arpaio's claims against Rolling Stone and Tessa Stuart (the "Rolling Stone Defendants") are identical to his previous suit against the same defendants, *Arpaio v. Zucker et al.*, Case No. 1:18-cv-02894 ("*Arpaio I*"), which was dismissed **with prejudice** by this Court on October 31, 2019.  *Arpaio I*, ECF No. 56, at 9-10 (hereinafter "*Arpaio I* Opinion").[1] Arpaio acknowledges that his prior suit was dismissed with prejudice, notwithstanding his request at oral argument that the Court permit him to amend his complaint.  Compl. ¶ 53.  Arpaio never moved to alter or amend the judgment in *Arpaio I*, nor did he notice an appeal from that decision – and the time to do so has long elapsed.  Accordingly, this new complaint is plainly barred by *res judicata*.

Moreover, Arpaio's new complaint still fails to state a claim, for the same reasons as his previous one: Arpaio fails to plausibly allege that the Rolling Stone Defendants acted with actual malice, and the reference to him as an "ex-felon" is substantially true.[2]  For all of these reasons, his complaint should be dismissed with prejudice once again.

# II.     FACTUAL BACKGROUND

Arpaio's new complaint brings the same claims (defamation, false light, and tortious interference) over the same phrase ("ex-felon") in the same Rolling Stone article (the "Article") as *Arpaio I*.  In the interest of judicial efficiency, the Rolling Stone Defendants will assume the Court's familiarity with the underlying facts regarding Arpaio's conviction for criminal contempt, his pardon by President Trump, his unsuccessful run for the Republican nomination

---

[1] Arpaio attached a copy of the *Arpaio I* Opinion as Exhibit 4 to his Complaint.

[2] The Rolling Stone Defendants acknowledge that the Court previously rejected their argument that the statement at issue is substantially true; however, they are raising the same argument in this motion to preserve it for the record.

for U.S. Senate in Arizona, and Rolling Stone's publication – and prompt correction – of its article, as set forth in *Arpaio I*. *See Arpaio I*, ECF No. 36 (Rolling Stone Motion to Dismiss), at 3-6; ECF No. 34 (CNN Motion to Dismiss), at 4-8.

Rolling Stone and the other defendants in *Arpaio I* filed motions to dismiss Arpaio's claims in their entirety. Those motions were fully briefed and argued, and on October 31, 2019, the Court issued an order dismissing the complaint **with prejudice**. *Arpaio I*, ECF No. 55.[3] Arpaio never took any action to alter, amend, or appeal the dismissal with prejudice of his claims in *Arpaio I*, and the time to do so has long since expired. Arpaio's time to file a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment in *Arpaio I* elapsed on November 29, 2019. His deadline to file a notice of appeal of that decision under Fed. R. App. P. 4(a)(1) was December 2, 2019, and his time to move for an extension of that deadline for "excusable neglect or good cause" under Fed. R. App. P. 4(a)(5) expired on January 2, 2020. Accordingly, the dismissal with prejudice in *Arpaio I* is a final judgment that Arpaio can neither reopen nor collaterally attack through a new action.

Nevertheless, Arpaio filed this new action on November 7, 2019, asserting the same claims against the Rolling Stone and Huffington Post defendants as in *Arpaio I*, while dropping his claims against the CNN defendants. Arpaio fully admits in his new complaint that the Court dismissed his identical previous claims **with prejudice**, notwithstanding his counsel's offer at oral argument to "amend the complaint should the Court have believed that more specificity was needed to plead actual malice." Compl. ¶ 53.

---

[3] A true and correct copy of the October 31, 2019 Order (*Arpaio I*, ECF No. 55) is attached hereto as **Exhibit 1**.

Arpaio's new complaint is nearly identical to his previous one.  Indeed, he once again repeats the ***patently false*** allegation that "as of today, there is no indication on the Rolling Stone Article that a mistake had previously been made in referring to Plaintiff Arpaio as an 'ex-felon.'" Compl. ¶ 25.  As the Rolling Stone Defendants noted in their previous motion to dismiss, the Article was corrected within hours of publication, and an "editor's note" was added to the end of the article stating: "Editor's note: This post has been updated to reflect the fact that Joe Arpaio's criminal conviction for contempt of court was a misdemeanor, not a felony.  He received a presidential pardon in 2017.  We regret the error."  The Court's opinion in *Arpaio I* cited to that correction and editor's note (*Arpaio I* Opinion at 4), which can be seen in Exhibits A and B to the Rolling Stone Defendants' previous motion.[4]  It still appears on the Article to this day.

In an attempt to bolster the deficient allegations that resulted in the dismissal with prejudice in *Arpaio I,* Arpaio's new complaint includes a section titled "Defendants Acted with Actual Malice."  Arpaio now claims that actual malice exists because the Rolling Stone Defendants were "part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Arpaio's personal and professional reputation," and that they harbored "hostility, anger and retaliation" toward Arpaio "because of his conservative stance of immigration and outward support for President Trump," thereby demonstrating a "preconceived plan to discredit or destroy Plaintiff Arpaio because of his conservative views before the 2020 election" in service of their "left-leaning, open-borders agenda."  *See* Compl.

---

[4] *See* **Exhibit 2** (March 13, 2019 printout of the Rolling Stone Article dated November 13, 2018, attached as Exhibit A to the Rolling Stone Defendants' Motion to Dismiss in *Arpaio I*); **Exhibit 3** (printout from the Wayback Machine showing the article as of 11:54 p.m. on November 13, 2018, attached as Exhibit B to the Rolling Stone Defendants' Motion to Dismiss in *Arpaio I*). Court may consider documents attached to a motion to dismiss if they are incorporated by reference or integral to the complaint.  *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013).  As noted above, the Court previously considered these documents in *Arpaio I*.

¶¶ 37, 40, 42.  Arpaio also alleges that actual malice can be inferred because the Rolling Stone

Defendants did not seek comment from him, and because a previous Rolling Stone article

correctly identified Arpaio's conviction as a misdemeanor more than a year earlier.  *Id.* ¶¶ 35,

43-45.

## III.    ARGUMENT

### A.    Plaintiff's Claims Are Barred by *Res Judicata*

The Court need not reach the merits of Arpaio's new complaint because this action is

plainly barred by the doctrine of *res judicata*, which holds that "a judgment on the merits in a

prior suit bars a second suit involving identical parties or their privies based on the same cause of

action."  *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).  As the Supreme Court has

explained, *res judicata* protects a core interest of the civil court system: by preventing parties

"from contesting matters that they have had a full and fair opportunity to litigate," it "protects

their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial

resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent

decisions."  *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

Here, there is no question that this case involves "identical parties" as well as the "same

cause of action."  As in *Arpaio I*, Arpaio is now suing the same parties, Rolling Stone and Tessa

Stuart, over the same November 13, 2018 Rolling Stone article, and asserting the same claims for

defamation, false light and tortious interference with prospective business relations, arising out

of the same alleged error, the Article's initial use of the phrase "ex-felon" to describe him –

before it was promptly updated to clarify that his conviction was for a misdemeanor.  Indeed,

Arpaio **concedes** that his claims are the same, relying on the Court's rulings in *Arpaio I*, and

claiming that this "new Complaint and new action" is intended to "cure[] any perceived and

alleged deficiencies" in his *Arpaio I* complaint that resulted in its dismissal with prejudice.

Compl. ¶ 53.  *Res judicata* is intended to preclude precisely this type of "do-over," since it bars

the relitigation of all "issues that were or *could have been raised* in [the prior] action." *Drake v.*

*FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

Nor is there any question that the Court's decision in *Arpaio I* was a final judgment on

the merits.  "[I]t is well-established that dismissal with prejudice pursuant to a 12(b)(6) motion

constitutes a final judgment" for *res judicata* purposes.  *Carr v. Sessions*, No. CV 18-356 (RC),

2019 WL 917651, at *4 (D.D.C. Feb. 25, 2019), *aff'd sub nom. Carr v. Barr*, No. 19-5077, 2019

WL 5394634 (D.C. Cir. Oct. 3, 2019), *petition for cert. docketed*, No. 19-818 (U.S. Dec. 30,

2019).  *See also, e.g.*, *Brown v. Amtrak Corp.*, No. 03-7033, 2003 WL 22433755, at *1 (D.C.

Cir. Oct. 27, 2003) ("A dismissal 'with prejudice' is a final judgment on the merits which bars

further litigation between the same parties."); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.

1987) (dismissal pursuant to Rule 12(b)(6) "presents a ruling on the merits with res judicata

effect").  Arpaio did not move to alter or amend the judgment to be without prejudice, nor did he

notice an appeal – and the time has long expired for him to take any of these actions.  *See* Fed. R.

Civ. P. 59(e); Fed. R. App. 4(a)(1), (5).[5]  Accordingly, this action is clearly and unequivocally

barred by the doctrine of *res judicata*.

### B.      Plaintiff Fails to State a Claim for the Same Reasons as *Arpaio I*

Even if this Court were to consider the merits of Arpaio's new complaint – which it need

not and should not do – he still fails to state a claim under Rule 12(b)(6), for the same reasons set

forth in the Rolling Stone Defendants' motion to dismiss in *Arpaio I*.  *First*, as the Court

---

[5] Even if Arpaio *had* appealed from the dismissal with prejudice in *Arpaio I*, it would not change
the preclusive effect of that decision on this new action.  *See Hunt v. Liberty Lobby, Inc.*, 707
F.2d 1493, 1497 (D.C. Cir. 1983) ("Under well-settled federal law, the pendency of an appeal
does not diminish the *res judicata* effect of a judgment rendered by a federal court.").

correctly found in *Arpaio I*, Arpaio did not and cannot plausibly allege that the Rolling Stone

Defendants acted with actual malice when they made a fleeting and promptly corrected technical

error in describing Arpaio's conviction.  Arpaio's new complaint does not change that result, as

he still fails to plausibly allege actual malice by the Rolling Stone Defendants.  *Second*, as the

Rolling Stone Defendants argued in *Arpaio I* (and preserve again for the record here), the

Article's reference to Arpaio as an "ex-felon" when he was pardoned for the federal crime of

criminal contempt (classified in his case as a misdemeanor) was a technical error in legal

nomenclature that is substantially true and therefore not actionable.  *Finally*, Plaintiff's tag-along

claims for false light and tortious interference fail for the same reason as his defamation claim.

### 1.     Plaintiff Fails to Plausibly Allege Actual Malice

Arpaio does not dispute that he is a public figure and that the actual malice standard

applies to this case.  Instead, his new complaint attempts to bolster his actual malice pleading

from *Arpaio I*, which the Court found "d[id] not come close to adequately pleading facts of

actual malice" that would be "sufficient to withstand a Rule 12(b)(6) motion to dismiss."  *Arpaio*

*I* Opinion at 9.  His new complaint fares no better.  In numerous paragraphs, Arpaio offers

various formulations of the same conclusory recitation of the legal standard for actual malice that

the Court "easily" rejected in *Arpaio I*.  *Id.* at 9.  *See, e.g.*, Compl. ¶¶ 30, 33, 42, 47, 48.  Such

"[t]hreadbare recitals of the elements of a cause of action" do not satisfy Rule 12(b)(6).  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, Arpaio's expanded assertions that each of the

defendants was out to "get" him and "muckrake" him because of his "conservative" political

views and the defendants' alleged "leftist/Democrat political partisanship" and "left-leaning,

open borders agenda" are nothing more than florid variations on his previous allegation in

*Arpaio I* that the defendants held "leftist enmity" toward him.  As the Court explained in *Arpaio*

*I*, allegations of political ill will do not satisfy the pleading standard for actual malice as a matter of law:

> Even assuming the alleged "leftist enmity" is real, the motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law. *See Harte-Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("[A defendant's] motive in publishing a story … cannot provide a sufficient basis for finding actual malice."). Furthermore, "a media defendant's 'adversarial stance' may be 'fully consistent with professional, investigative reporting' and is not 'indicative of actual malice.'" *Lohrenz*, 223 F. Supp. 2d at 46 (quoting *Liberty Lobby, Inc. v. Rees*, 852 D.2d 595, 601 (D.C. Cir. 1988)).
>
> The Court will not pry open the gates of discovery just because Mr. Arpaio believes the erroneous communications were motivated by differences in political opinions. Doing so would run afoul of the Supreme Court's landmark ruling in *New York Times Co. v. Sullivan. See* 376 U.S. at 271-72 (noting that errors are inevitable when there is free debate and that they too must be protected to give breathing room to those exercising their freedom of expression). Allegations of "leftist enmity" cannot trump the guarantees of the First Amendment.

*Arpaio I* Opinion at 9-10. *See also, e.g.*, *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) ("It is settled that ill will toward the plaintiff or bad motives are not elements of actual malice and that such evidence is insufficient by itself to support a finding of actual malice."); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 92 (D.D.C. 2018) (dismissing complaint for failure to plausibly plead actual malice, holding that allegation that defendant journalist had a "motive to smear [plaintiff]'s reputation" did not "come[] close to satisfying the First Amendment's demanding standard for public figures bringing defamation actions"). Accordingly, Arpaio's claims of a "leftist/Democrat" conspiracy against him – even when expanded into multiple paragraphs – still do not support actual malice.

Nor do Arpaio's allegations that the Rolling Stone Defendants failed to "investigate" or seek "comment" from him (*e.g.*, Compl. ¶¶ 40, 43-47) provide any affirmative evidence of actual malice. For decades, it has been established that actual malice "is not measured by whether a

reasonably prudent man would have published, or would have investigated before publishing."
*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  *See also, e.g.*, *Parsi v. Daioleslam*, 890 F.
Supp. 2d 77, 90 (D.D.C. 2012) ("failure to contact one of the subjects of an article does not
establish actual malice"); *Secord v. Cockburn*, 747 F. Supp. 779, 788 (D.D.C. 1990) (author has
"no duty" to contact subject of publication or provide an "opportunity to reply," and failure to do
so does not demonstrate actual malice); *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir.
2008) (in an actual malice case, "it is not enough for a plaintiff to prove simply that the
defendant failed to investigate or to check the accuracy" of a particular statement); *Davis v.
Costa-Gavras*, 654 F. Supp. 653, 657 (S.D.N.Y. 1987) ("plaintiff cannot prove actual malice
merely by asserting that a publisher failed to contact the subject of his work").[6]

     Finally, the mere fact that another Rolling Stone article previously referred to Arpaio's
conviction as a "misdemeanor" does not support a plausible claim of actual malice.  Indeed, the
seminal *New York Times* court considered – and rejected – this same argument:

> Finally, there is evidence that the Times published the advertisement without
> checking its accuracy against the news stories *in the Times' own files*.  The mere
> presence of the stories in the files does not, of course, establish that the Times
> 'knew' the advertisement was false, since the state of mind required for actual
> malice would have to be brought home to the persons in the Times' organization
> having responsibility for the publication of the advertisement.…  We think the
> evidence against the Times supports at most a finding of negligence in failing to
> discover the misstatements, and is constitutionally insufficient to show the
> recklessness that is required for a finding of actual malice.

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287-88 (1964) (emphasis added).  If anything, the fact
that Rolling Stone has previously described his conviction correctly as a "misdemeanor" cuts

---

[6] Nor is it clear what in the story would have merited "comment" from Arpaio, since the Article
was not even about him; the only reference to Arpaio was simply to say that he had lost the GOP
primary to Martha McSally, in the course of which the Rolling Stone Defendants made a
technical error describing his conviction.

*against* Arpaio's entire theory of a politically-motivated campaign against him – and only underscores that this was simply a mistake.  *See, e.g.*, *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594 (D.C. Cir. 2016) ("An honest misinterpretation does not amount to actual malice even if the publisher was negligent in failing to read the document carefully."); *Medure v. Vindicator Printing Co.*, 273 F. Supp. 2d 588, 598 (W.D. Pa. 2002) ("A mistake is clearly insufficient to support a finding of actual malice.").  Moreover, the fact that Rolling Stone promptly corrected that error is "significant and tends to negate any inference of actual malice."  *Hoffman v. Wash. Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978).  *See also Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978) (newspaper's correction published the next day "tends to negate any inference of actual malice") (quoting *Hoffman*).

In sum, "the First Amendment does not require perfection from the news media," *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001), and courts "will not impose liability for mere factual error – an everyday occurrence in journalism – unless those errors rise to the level of circumstantial evidence of 'actual malice.'"  *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 55 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).  Here, Arpaio presents a textbook case of inadvertent error about a public figure, promptly corrected by a publisher.  That is precisely what the actual malice standard is intended to shield from liability: as the Supreme Court recognized in *New York Times*, "erroneous statement is inevitable in free debate, and … it must be protected if the freedoms of expression are to have the breathing space that they need to survive."  376 U.S. at 271-72 (citation and internal quotation marks omitted).  Accordingly, Arpaio still fails to state a claim in this new complaint, which should be dismissed again with prejudice.

## 2.    The Reference to Plaintiff as an "Ex-Felon" Is Substantially True

Arpaio's new complaint should also be dismissed as a matter of law for the independent reason that, as the Rolling Stone Defendants argued in *Arpaio I*, the phrase "ex-felon" is

substantially true given the true facts of Arpaio's conviction for criminal contempt, for which he was subsequently pardoned by President Trump prior to his sentencing.  It is well established that "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Masson v. New Yorker  Magazine, Inc.*, 501 U.S. 496, 517 (1991) (citation omitted).  Thus, a "statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *Id.* (citation omitted).

As courts repeatedly have held, "technical errors in legal nomenclature in reports on matters involving violation of the law" do not rise to the level of "falsity" that warrants imposing liability on speech.  *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) (citation omitted) (collecting cases).[7]  Indeed, courts routinely have rejected defamation claims that purport to arise from precisely the same circumstances as Arpaio's claim here:  the mistaken

---

[7] *See, e.g.*, *Dostert v. Wash. Post Co.*, 531 F. Supp. 165, 167-68 (N.D. W. Va. 1982) (holding that newspaper headline describing plaintiff as "guilty on one count" was substantially true even though the plaintiff had entered a plea of nolo contendere, rather than pleading or being found guilty); *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 482 (7th Cir. 1981) (use of word "rape" instead of technically correct term "sexual assault" was substantially accurate); *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1112 (6th Cir. 1978) ("swindle" substituted for "defraud"); *Hovey v. Iowa State Daily Publ'n Bd., Inc.*, 372 N.W.2d 253, 255-56 (Iowa 1985) (report that plaintiff was charged with "rape" was substantially true when, in fact, he was charged with second degree sexual assault); *Nichols v. Moore*, 396 F. Supp. 2d 783, 791-92 (E.D. Mich. 2005) (statement that plaintiff was "arrested in connection with" bombing of federal building was substantially true even though his arrest was not for the bombing itself), *aff'd*, 477 F.3d 396 (6th Cir. 2007); *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983) ("theft" was substantially accurate "shorthand" for administrative charges of misappropriation); *Fendler v. Phoenix Newspapers, Inc.*, 636 P.2d 1257, 1261-62 (Ariz. Ct. App. 1981) (finding substantial truth where newspaper editorial accurately reflected that plaintiff had been found guilty of a crime and sentenced to prison, but incorrectly stated that he had commenced serving his sentence); *Drury v. Feeney*, 505 So. 2d 111, 112-13 (La. Ct. App. 1987) (where plaintiff had not been convicted of "21 counts of mail fraud" but only failure to disclose a fee-splitting arrangement, discrepancy was "an infinitesimal aberrant grain of sand hidden in an entire seashore of reprehensible conducts and truths").

description of his offense as a "felony" rather than a "misdemeanor."  *See, e.g.*, *Tiwari v. NBC Universal, Inc.*, No. C-08-3988, 2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011) (broadcast was substantially true where it erroneously reported that plaintiff had been convicted of a felony rather than a misdemeanor); *Brewer v. Dungan*, No. 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993) (newspaper's reporting that plaintiff had been convicted of a felony was "substantially true" even though the crime "was, technically, a misdemeanor"); *Hahn v. City of Kenner*, 984 F. Supp. 436, 441 (E.D. La. 1997) ("Hahn's arrest on misdemeanor charges could arguably make a statement about felony arrests substantially true."); *Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 147-48 (Colo. Ct. App. 2001) (newspaper's statement that plaintiff was "convicted in a stalking incident" was substantially true even though plaintiff technically pled guilty to "misdemeanor harassment," and "stalking" was classified as a felony); *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (N.Y. App. Div. 1992) (finding news articles to be fair and true reports even though they allegedly stated or implied that plaintiff was "indicted on felony bribery charges, whereas in fact he had only been charged with the misdemeanors of making an apparently false statement … and conspiracy to commit that crime"); *Jennings v. Telegram-Tribune Co.*, 164 Cal. App. 3d 119, 127 (1985) (newspaper articles reporting that architect was convicted of felony "tax fraud" and "tax evasion," where he had pleaded no contest to misdemeanor charges for filing tax returns two years late, was not actionable because the "gist or sting" of the articles was that he pleaded to "several serious tax crimes").

Arpaio's conviction was not for a traffic violation or similarly minor charge.  It was for a serious offense: deliberately violating the ruling of a federal judge.  The court held a five-day bench trial on Arpaio's charges and issued a lengthy decision with extensive findings of fact and legal conclusions, finding, *inter alia*, that Arpaio "flagrant[ly] disregard[ed]" and "willfully

violated an order of the court," and in doing so "announced to the world and to his subordinates that he was going to continue business as usual no matter who said otherwise." *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 WL 3268180, at *7 (D. Ariz. July 31, 2017).

Moreover, because it has no statutory maximum sentence, the offense of "criminal contempt" has no clear classification under federal law, whether as a misdemeanor or felony. As a result, some courts have held that under a literal reading of the federal classification statute, 18 U.S.C. § 3559(a), criminal contempt should "always be classified as a Class A felony." *United States v. Wright*, 812 F.3d 27, 32 (1st Cir. 2016); *see also United States v. Battle*, No. 17-cr-67, 2017 WL 2983891, at *8 (W.D. Pa. July 12, 2017) (Hon. Reggie B. Walton) (adopting First Circuit approach and holding that "the defendants' criminal contempt charges are Class A felony offenses"). Others have held that criminal contempt "cannot be classified" at all under the federal statute. *See United States v. Cohn*, 586 F.3d 844, 849 (11th Cir. 2009) (per curiam). Notably, when Judge Snow referred the matter for criminal prosecution, he made clear that "[t]he Court does not suggest whether this prosecution should be charged as the equivalent of a misdemeanor or a felony offence." *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 4414755, at *2 n.1 (D. Ariz. Aug. 19, 2016). It was only the government's voluntary election to seek a maximum prison sentence of six months for the charge that could lead to its classification as a misdemeanor. *See United States v. Arpaio*, No. 2:16-cr-01012-SRB (D. Ariz.) (ECF No. 83), at 2-3.

Given the lack of clarity around the classification of the underlying offense in the first instance, Rolling Stone's use of the word "felon" was not substantially false. Moreover, the Article's initial description of Arpaio as an "ex-felon" accurately indicates that his conviction is no longer operative. Accordingly, although the phrasing "may have been imprecise or not to

12

Plaintiff's liking," the Article "accurately portrayed Plaintiff's legal standing at the time of the article." *O'Keefe v. WDC Media, LLC*, No. 13-6530, 2015 WL 1472410, at *5 (D.N.J. Mar. 30, 2015).[8]  Arpaio's claims should therefore be dismissed with prejudice because the phrase "ex-felon" was substantially true as a matter of law.

### 3.  Plaintiff Fails to State Claims for Tortious Interference and False Light

Arpaio's claims for tortious interference with prospective business relations (Count 4) and false light invasion of privacy (Count 5) based on the same "ex-felon" phrase in the Article fail for the same reasons set forth in the Rolling Stone Defendants' motion to dismiss in *Arpaio I*. *See Arpaio I*, ECF No. 36 at 9-10, ECF No. 45 at 7-8.  As set forth in those motions, Arpaio's false light and tortious interference claims are duplicative of his defamation claims and subject to dismissal for the same reasons.  "[A] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319-20 (D.C. Cir. 1994).  Accordingly, "[w]here a plaintiff's 'defamation claim[s] fail[ ], so do [his] other tort claims based upon the same allegedly defamatory speech.'" *Montgomery v. Risen*, 197 F. Supp. 3d 219, 267 (D.D.C. 2016) (dismissing claims for tortious interference and intentional infliction of emotional distress) (citation omitted), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).  *See also, e.g.*, *Farah*, 736 F.3d at 540 (affirming dismissal of false light and tortious interference claims); *Moldea*, 22 F.3d at 319-20 (dismissing false light claim).  For the same reasons that his

---

[8] The fact that Arpaio was pardoned by President Trump prior to sentencing does not expunge his conviction. *See United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072, at *1-2 (D. Ariz. Oct. 19, 2017) (rejecting Arpaio's motion to vacate and dismiss the court's finding of criminal contempt based on his presidential pardon, explaining that a pardon "does not erase a judgment of conviction, or its underlying legal and factual findings").

defamation claims fail as a matter of law, his tag-along claims for tortious interference and false light should also be dismissed with prejudice.

### IV.     CONCLUSION

For the reasons set forth above, the Rolling Stone Defendants respectfully request that the Court dismiss Plaintiff's complaint with prejudice.

Dated: January 21, 2020                              Respectfully submitted,

/s/ Alison Schary
Alison Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone:     (202) 973-4248
Facsimile:      (202) 973-4499
Email:          alisonschary@dwt.com

Elizabeth A. McNamara (*pro hac vice* pending)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:     (212) 489-8230
Facsimile:      (212) 489-8340
Email:          lizmcnamara@dwt.com

*Counsel for Defendants Rolling Stone LLC and Tessa Stuart*

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2020, I caused a true and correct copy of the foregoing to be served via CM/ECF on all counsel of record.

/s/ Alison Schary
Alison Schary