## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH MICHAEL ARPAIO**,

      **Plaintiff**,

      v.

**KEVIN ROBILLARD**,

and

**HUFFINGTON POST,**

and

**TESSA STUART,**

and

**ROLLING STONE**,

      **Defendants**.

**ORAL ARGUMENT REQUESTED**

**Civil Action No. 1:19-cv-03366-RCL**

---

### PLAINTIFF SHERIFF ARPAIO'S OPPOSITION TO THE ROLLING STONE DEFENDANTS' MOTION TO DISMISS

Dated: February 18, 2020

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
Chairman and General Counsel
FREEDOM WATCH, INC.
2020 Pennsylvania Ave. N.W.
Suite 345
Washington, DC 20006
Tel: (561) 558-5336
Email: leklayman@gmail.com

*Attorney for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

THE ARTICLE AT ISSUE.................................................................................................... 3

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ........................................................................................................................ 4

This Court Erroneously and Inexplicably Dismissed *Arpaio I* With Prejudice When
Amending the Complaint Would Have Cured Any Alleged Deficiencies.............................. 4

Plaintiff Sheriff Arpaio Sufficiently States Claims for Defamation Per Se, Defamation,
and Defamation by Implication Because Defendants Acted With Actual Malice and Their
False Statements Concerning Plaintiff Sheriff Arpaio Are Not Substantially True ................ 5

Defamation Per Se ..................................................................................................... 5

Defamation by Implication......................................................................................... 7

Plaintiff Sheriff Arpaio Sufficiently Pleads that the Rolling Stone Defendants
Acted With Actual Malice........................................................................................... 6

The Rolling Stone Defendants' False Statements Are Not Substantially True and
this Court Already Ruled that the Rolling Stone Defendants Are Not Shielded by
the Substantial Truth Doctrine ................................................................................. 20

Plaintiff Sheriff Arpaio Sufficiently States Claims for Tortious Interference With
Prospective Business Relations and False Light Because His Defamation Claims Survive
and He Pleads the Requisite Elements ................................................................................ 21

The Tortious Interference Claim Survives a Motion to Dismiss ............................... 21

The False Light Claim Survives a Motion to Dismiss .............................................. 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Afro-American Publ'g Co. v. Jaffe*,
  366 F.2d 649 (D.C. Cir. 1966)…………………………………………………...   6

*Am. Postal Workers Union v. U.S. Postal Servs.*,
  265 U.S. App. D.C. 146, 830 F.2d 294 (1987)…………………………………………   18

*Armstrong v. Simon & Schuster*,
  649 N.E. 825 (N.Y. 1995) ………………………………………………………   8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)……………………………………………………………   13

*Arpaio v. Zucker, et al.*,
  18-cv-02894………………………………………………………………………   2, 3, 4

*Ball v. E.W. Scripps Co.*,
  801 S.W.2d 684 (Ky. 1990)……………………………………………………..   14

*Bean v. Gutierrez*,
  980 A.2d 1090 (D.C. 2009)……………………………………………………..   24

*Behrendt v. Times-Mirror Co.*,
  30 Cal. App. 2d 77 (1938)………………………………………………………   19

*Benic v. Reuters America, Inc.*,
  357 F. Supp. 2d 216 (D.D.C. 2004)………………………………………………   20, 21

*Benz v. Wash. Newspaper Publ'g Co., LLC*,
  2006 U.S. Dist. LEXIS 71827 (D.D.C. Sept. 29, 2006)………………………………   24, 25

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002)……………………………………………………   22

*Cottell v. Smith*,
  299 Ga. 517 (2016)……………………………………………………………...   7

*Davis v. Marxhausen*,
  103 Mich. 315, 61 N.W. 504 (Mich. 1894)………………………………………   18

*Di Lorenzo v. New York News, Inc.*,
  81 A.D.2d 844 (App. Div. 2d Dept. 1981)…………………………………………..17, 18

*Doe v. Bernabei & Wachtel, PLLC.*,
    116 A.3d 1262 (D.C. 2015)…………………………………………………………… 24

*Dixie Fire Ins. Co. v. Betty*,
    101 Miss. 880, 58 So. 705 (Miss. 1912)…………………………………………….. 18

*Edmond v. Am. Ed. Servs.*,
    823 F. Supp. 2d 28 (D.D.C. 2011)……………………………………………………. 6

*Ellis v. Brockton Publishing Co.*,
    198 Mass. 538 (1908)………………………………………………………………… 19

*Fiber Sys. In'l v. Roehrs*,
    470 F.3d 1150 (5th Cir. 2006)………………………………………………………... 13

*Fleming v. AT&T Information Services, Inc.*,
    878 F.2d 1472 (D.C. Cir. 1989) …………………………………………………… 7

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002)………………………………………………………... 9

*Foman v. Davis*,
    371 U.S. 178 (1962)………………………………………………….................... 4

*Gertz v. Robert Welch*,
    418 U.S. 323 (1974)………………………………………………………………… 19

*Harte-Hanks Commc'ns., Inc. v. Connaughton*,
    491 U.S. 657 (1989)………………………………………………………………… 14, 15, 17

*Herbert v. Lando*,
    441 U.S. 153 (1979)………………………………………………………………… 11, 14, 16

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012)………………………………………………………... 4

*Howard University v. Best*,
    84 A.2d 958 (D.C. 1984)……………………………………………………………... 5

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979)………………………………………………………………… 9

*Kerwick v. Orange County Publication Division of Ottaway Newspapers, Inc.*,
    52 N.Y.2d 625 (1981)………………………………………………………………... 17

*Kimmel v. Gallaudet Univ.*,

      639 F. Supp. 2d 34 (D.D.C. 2009)………………………………………………… 22

*Koontz v. Weide*,
      111 Kan. 709, 208 P. 651 (Kan. 1922) …………………………………………… 18

*Levy v. American Mut. Ins. Co.*,
      196 A.2d 475 (D.C. 1964)……………………………………………………… 15

*Lohrenz v. Donnelly*,
      223 F. Supp. 25 (D.D.C. 2002)……………………………………………… 11, 17, 20

*Mazur v. Szporer*,
      2004 U.S. Dist. LEXIS 13176 (D.D.C. June 1, 2004) ………………………… 5-6

*McBride v. Merrell Dow & Pharmaceuticals*,
      717 F.2d 1460 (D.C. Cir. 1983)……………………………………………… 16

*Moldea v. New York Times Co.*,
      15 F.3d 1137 (D.C. Cir. 1994)…………………………………………… 6, 7, 25

*Moss v. Stockard*,
      580 A.2d 1011 (D.C. 1990)……………………………………………… 5, 20

*Nanko Shipping, USA v. Alcoa, Inc.*,
      107 F. Supp. 3d 174 (D.D.C. 2015)…………………………………………… 22, 23

*Newton v. National Broadcasting Co.*,
      930 F.2d 662 (9th Cir. 1990)…………………………………………… 15

*New York Times v. Sullivan*,
      376 U.S. 254 (1964)……………………………………………………… 12, 16

*Nichols v. Greater Se. Cmty. Hosp.*,
      No. 03-cv-2081 (JDB), 2005 WL 975643 (D.D.C. Apr. 22, 2005)……………………… 4

*Post Publishing Co. v. Butler*,
      137 Fed. 723 (6th Cir. 1906)……………………………………………… 19

*Rogers v. Florence Printing Co.*,
      106 S.E.2d (S.C. 1958) …………………………………………………… 18

*Rosenbloom v. Metromedia, Inc.*,
      403 U.S. 29 (1971) ………………………………………………………... 20

*St. Amant v. Thompson*,
      390 U.S. 727 (1968)……………………………………………………... 12-13

*Storey v. Wallace,*
　　60 Ill. 51, 56 (1871)…………………………………………………………… 17

*Taylor v. Hearst,*
　　107 Cal. 262, 40 P. 392 (1895)……………………………………............... 19

*Tresca v. Maddox,*
　　11 La. Ann. 206 (1856), …………………………………….......................... 19

*Wallace v. Skadden, Arps, Slate, Meagher and Flom,*
　　715 A.2d 873 (D.C. 1988)……………………………………………….. 5

*Wasserman v. Times, Inc.,*
　　424 F.2d 920 (D.C. Cir. 1970)……………………………………………… 8

*Weyrich v. New Republic, Inc.,*
　　235 F.3d 617 (D.C. Cir. 2001)……………………………………………..7, 15

*Whitcomb v. Hearst Corp,*
　　329 Mass. 193, 107 N.E.2d 295 (Mass. 1952)…………………………………18, 19

*White v. Fraternal Order of Police,*
　　909 F.2d 512 (D.C. Cir. 1990)……………………………………………..7, 15, 24, 25

*White v. Sun Publishing Co.,*
　　164 Ind. 426, 73 N.E. 890 (1905)…………………………………………… 19

*Wildearth Guardians v. Kempthorne,*
　　592 F. Supp. 2d 18 (D.D.C. 2008)…………………………………………… 4

## Rules

Fed. R. Civ. P. 8(a)(2)……………………………………………………………… 13

Fed. R. Civ. P. 9(b)………………………………………………………………… 13

Fed. R. Civ. P. 12(b)(6)…………………………………………………………… 4

Fed. R. Civ. P. 15(a)(2)…………………………………………………………… 4

Fed. R. Civ. P. 56……………………………………………………………….... 16

**<u>Other Authorities</u>**

David A. Elder, Defamation: A Lawyer's Guide § 7:3 (1993)…………………………………….  12

David A. Elder, Neville L. Johnson, and Brian A. Rishwain, *Establishing Constitutional Malice for Defamation and Privacy/False Light Claims When Hidden Cameras and Deception Are Used by the Newsgatherer*, 22 Loy. L.A. Ent. L. Rev. 327, 383 (2002)………………………………  15

Restatement (Second) of Torts § 580A, cmt. D (1977)……………………………………………  12

W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 116A (5th ed. 1984)
…………………………………………………………………………………………………………  18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH MICHAEL ARPAIO**,

      **Plaintiff**,

      v.

**KEVIN ROBILLARD**,

**and**

**HUFFINGTON POST**,

**and**

**TESSA STUART**,

**and**

**ROLLING STONE**,

      **Defendants**.

**ORAL ARGUMENT REQUESTED**

**Civil Action No. 1:19-cv-03366-RCL**

### PLAINTIFF SHERIFF ARPAIO'S OPPOSITION TO THE ROLLING STONE DEFENDANTS' MOTION TO DISMISS[1]

    Plaintiff Joseph Michael Arpaio ("Plaintiff Arpaio") respectfully submits this memorandum of law in opposition to the Rolling Stone's ("Defendant Rolling Stone") and Tessa Stuart's ("Defendant Stuart") (hereinafter referred to as "the Rolling Stone Defendants") motion to dismiss the Complaint and hereby submits as follows:

### INTRODUCTION

    On December 18, 2018, Plaintiff Sheriff Arpaio filed suit against Jeff Zucker, Chris Cuomo, Cable News Network ("CNN"), Kevin Robillard, Huffington Post, Tessa Stuart and Rolling Stone for defamation per se, tortious interference with prospective business relations and

---

[1] Plaintiff Sheriff Arpaio's opposition should be read in conjunction with Plaintiff Sheriff Arpaio's Opposition to the HuffPo Defendants' Motion to Dismiss [Dkt. # 27] since both sets of Defendants raise the same arguments.

false light. *See Arpaio v. Zucker, et al.*, 18-cv-2894 (*Arpaio I*). During oral argument on July 25, 2019, the Court raised the issue of whether Plaintiff Sheriff Arpaio sufficiently pled that Defendants acted with actual malice. In this regard, the Court also raised an important issue *sua sponte*:

> I have a lot of problems with figuring out how a plaintiff ever makes factual allegations about actual malice . . . [b]ut how does a plaintiff ever get in the head of someone to show intent? How does a plaintiff make factual allegations about actual malice that can withstand a motion to dismiss? I don't know how the Court can fashion a way that plaintiff can ever win a case like this with a public official.

July 25, 2019 Tr. at 16:1-3, 7-12. [Dkt. #27, Exhibit 1].

Recognizing the Court's dilemma, counsel for Plaintiff Sheriff Arpaio sought to fix the alleged deficiency. Counsel declared:

> In this case, on the facts, he clearly is not a felon. They had reason to know he is not a felon. They had reason to know he didn't go to prison. They had reason to know what else we allege. We have said that specifically in the complaint. But if Your Honor does not feel it is specific enough, **I will move to amend it with your leave in that regard.**

*Id*. at 49:17-23 (emphasis added). But, on October 31, 2019, the Court inexplicably dismissed *Arpaio I* with prejudice while acknowledging that what Defendants published about Plaintiff Sheriff Arpaio was not substantially true and that the false statements in fact damaged him.

> Nothing in this opinion should be understood to be an endorsement of defendants' errors. The Court is especially bothered by the conduct of the Rolling Stone and HuffPost defendants, whose errors were not even substantially true. The media is entrusted with the important responsibility of reporting on issues of great public importance so that the American people can make informed decisions at the ballot box and elsewhere. Mistakes, honest ones or otherwise, often cause much harm to public figures like Mr. Arpaio and diminish voters' abilities to impartially weigh the issues that affect them. **Later corrections or even apologies of untruths rarely correct the original harm caused.**

Compl. at ¶ 52 (emphasis added). Consequently, the Court created a conundrum. Plaintiff Sheriff Arpaio respectfully submits that this Court should not have dismissed the case in the first instance but at worst, should have dismissed it with leave to amend or without prejudice. It is not

enough to write an opinion condemning the Defendants' conduct without holding them accountable. Indeed, the Court left the door open to file a new case with more specificity concerning actual malice.

Within seven days of the dismissal Order, twenty-three days before an appeal would have been due, Plaintiff Sheriff Arpaio filed a new case, curing any alleged deficiencies by pleading actual malice not only with specificity but also with specific examples of how and why the Defendants knew that their statements were false or at least acted recklessly with regard to their truth. The instant case should be considered on the merits.

Plaintiff Sheriff Arpaio submits that the doctrine of res judicata does not apply here because (1) Plaintiff Sheriff Arpaio dropped three prior defendants, (2) he added two causes of action including general defamation and defamation by implication, (3) and the nucleus of facts concerning actual malice are not the same as in *Arpaio I*. In any event, this Court could simply grant leave to amend in *Arpaio I*, thereby resolving any potential res judicata issue. Plaintiff opted not to take an appeal to the U.S. Court of Appeals for the District of Columbia Circuit, as it, a very liberal forum, is likely not favorably disposed towards Plaintiff Sheriff Arpaio, who the Defendants have made "radioactive" with their false smears. An appeal would also have been costly and delayed adjudication on the merits.

## THE ARTICLE AT ISSUE

On or about November 13, 2018, Defendant Rolling Stone published an article by Defendant Stuart titled *How Trump Accidentally Helped Krysten Sinema Flip Jeff Flake's Arizona Senate Seat*. In the article, the Rolling Stone Defendants falsely referred to Plaintiff Sheriff Arpaio as an "ex-felon." But, Plaintiff Sheriff Arpaio has never been convicted of a felony and has never been a "felon." Therefore, the Rolling Stone Defendants published a false

statement of fact concerning Plaintiff Sheriff Arpaio. Once the defamatory publication is released, it proliferates all over the Internet and lives on in infamy, regardless of whether a correction was made.

## LEGAL STANDARD

When evaluating a motion under Fed. R. Civ. P. 12(b)(6), the court "construe[s] the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1978)).

## ARGUMENT

**I.    THIS HONORABLE COURT ERRONEOUSLY AND INEXPLICABLY DISMISSED *ARPAIO I* WITH PREJUDICE WHEN AMENDING THE COMPLAINT WOULD HAVE CURED ANY ALLEGED DEFICIENCIES.**

Federal Rule of Civil Procedure 15(a)(2) provides that the "court should freely give leave [to amend or supplement] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008). Absent a "sufficient reason," "it is an abuse of . . . discretion to deny a motion to amend." *Nichols v. Greater Se. Cmty. Hosp.*, No. 03-cv-2081 (JDB), 2005 WL 975643, at *1 (D.D.C. Apr. 22, 2005). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

II.    **PLAINTIFF SHERIFF ARPAIO SUFFICIENTLY STATES CLAIMS FOR DEFAMATION PER SE, DEFAMATION, AND DEFAMATION BY IMPLICATION BECAUSE DEFENDANTS ACTED WITH ACTUAL MALICE AND THEIR FALSE STATEMENTS CONCERNING PLAINTIFF SHERIFF ARPAIO ARE NOT SUBSTANTIALLY TRUE.**

It is well established that a statement is defamatory if the statement tends to injure the plaintiff in his trade or profession, or if the statement lowers him in the estimation of the community. *See Wallace v. Skadden, Arps, Slate, Meagher and Flom*, 715 A.2d 873, 877 (D.C. 1988); *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). Moreover, where false representations concern the plaintiff's professional character in his office, trade, occupation, or business, such representations are defamatory per se. *Wallace*, 715 A.2d at 877-878 ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect [her] fitness for the proper conduct of [her] lawful business, trade or profession . . . is subject to liability without proof of special harm") (citing Restatement (Second) of Torts § 573 (1977)). Moreover, "[t]he publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Howard University v. Best*, 484 A.2d 958, 989 (D.C. 1984).

A.    **Defamation Per Se**

A statement is considered defamatory per se when its defamatory character is apparent on its face, such that it imputes (1) the commission of a criminal offense; (2) infection with a loathsome communicable disease; (3) malfeasance or misfeasance in the discharge of duties of employment; or (4) unfitness for one's trade, profession or business. "In determining whether a statement is defamatory, the court must focus on the predictable effect the statement has on those who received the publication. An accusation of a criminal act is not a constitutionally protected statement of opinion." *Mazur v. Szporer*, 2004 U.S. Dist. LEXIS 13176, *9 (D.D.C. June 1,

2004). To accuse someone of a crime is libel per se. *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 698 (D.C. 1970); *see also Paul v. Davis*, 424 U.S. 693, 697 (1976) ("imputing criminal behavior to an individual is generally considered defamatory pe se, and actionable without proof of damages").

In *Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994), an author wrote a book about football and connections with organized crime. *Id*. at 1139. The New York Times, a defendant in *Moldea*, wrote a review of the book that was adverse to the author and the author filed suit alleging defamation. *Id*. The district court granted the newspaper's motion for summary judgment but on appeal, the court reversed, holding that the district court erred in ruling that the newspaper's review could not be defamatory as a matter of law. The court further found that: (1) the newspaper attacked the author's competence as a practitioner of his chosen profession; (2) some of the challenged characterizations of the book were sufficiently factual that a jury could meaningfully determine their truth or falsity; and that (3) the accuracy of some of the statements in the review were open to dispute, such that the court could not find that as a matter of law a reasonable jury could find them false. *Id*. at 1140. The court found that an "allegation that a journalist and author is 'sloppy,' or that his book's portrayals of central events are incorrect or misleading' is capable of defamatory meaning in that it "would tend to injure [plaintiff] is his chosen profession, investigative journalism." *Id*. at 1143; *see also Edmond v. Am. Ed. Servs.*, 823 F. Supp. 2d 28, 35 (D.D.C. 2011) (finding that "[a] statement that a person does not pay his debts timely . . . is capable of a defamatory meaning"). Again, the publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir. 1966). If a statement is reasonably capable of any defamatory meaning then the Court cannot rule, as a matter of law,

that it was not defamatory. *Weyrich*, 235 F.3d at 627.

Here, just as in *Moldea*, the Rolling Stone Defendants not only "attacked" Plaintiff Sheriff Arpaio's competence as a practitioner of his chosen profession by calling him an "ex-felon" – an elected law enforcement officer – but also explicitly call him an ex-felon. Indeed, "the false imputation of criminal conduct is inherently defamatory." *Fleming v. AT&T Information Services, Inc.*, 878 F.2d 1472, 1475 (D.C. Cir. 1989). Moreover, the characterization that the Rolling Stone Defendants published is sufficiently factual that a jury could determine its veracity. For example, it is either true or false that Plaintiff Arpaio is an "ex-felon." Finally, the accuracy of the Rolling Stones Defendants' statement is open to dispute such that a court cannot determine as a matter of law that a jury could not determine it is capable of a defamatory meaning.

## B.    Defamation by Implication

A statement can be defamatory either because of what is expressly stated or because of an implied meaning. Defamation by implication "stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). Indeed, "District of Columbia law clearly contemplates the possibility that a defamatory inference may be derived from a factually accurate news report." *Id*. As a defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. "In doing so, the courts will not hunt for a strained construction in order to hold the words used as being defamatory." *Cottell v. Smith*, 299 Ga. 517, 523 (2016). "[A] defamatory implication [occurs when a defendant] juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts . . . even thought he particular facts are correct." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 116 (Supp. 1988).

In *Wasserman v. Times, Inc.*, 424 F.2d 920 (D.C. Cir. 1970), for example, a plaintiff attorney, the subject of an allegedly defamatory article, brought an action for defamation against a magazine publisher. *Id*. at 921. The magazine published a photograph of seven men sitting at a table in a restaurant. One of the men was the plaintiff attorney. Accompanying the photograph was a brief article which referred to the occasion as a meeting even bigger than the famous Appalachian meeting of top Cosa Nostra hoodlums. *Id*. at 921. The district court mistakenly granted the publisher's motion for summary judgment. On appeal, however, the court found that the picture transformed innocuous professional conduct into conduct capable of being defamatory by failing to disclose that the photo depicting the group of Mafia hoodlums included plaintiff's lawyers, who were acting in a purely representational capacity. *Id*. at 921-22.

Here, the Rolling Stone Defendants not only juxtaposed a series of facts that imply defamatory connotations between them, but they also omit facts. Implied defamation is based on "false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 649 N.E. 825, 829 (N.Y. 1995). When the Rolling Stone Defendants maliciously published that Plaintiff Sheriff Arpaio is an "ex-felon" they are implying that Plaintiff Sheriff Arpaio not only committed a felony but also spent time in prison. Not only is this statement untrue, but the Rolling Stone Defendants omit the facts that the people of Arizona elected and then reelected Plaintiff Sheriff Arpaio six times, from 1992 to 2012. Defendants omit the fact that Plaintiff served his country honorably in the military and elsewhere and has done more to crack down on illegal immigration than most anyone else in the country. Just like in *Wasserman*, when the Rolling Stone Defendants maliciously published these statements, they "transformed innocuous professional conduct into conduct capable of being defamatory" by accusing Plaintiff Sheriff Arpaio of committing a felony and essentially leaving

the impression that Plaintiff Sheriff Arpaio is a bad and loathsome person.

### C.    Plaintiff Sheriff Arpaio Sufficiently Pleads that the Rolling Stone Defendants Acted with Actual Malice.

Whether the Rolling Stone Defendants published the false and defamatory statements with actual knowledge of their falsity, or with reckless disregard for their truth, is a question of fact that cannot properly be resolved on a motion to dismiss. *See e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("actual malice" calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition"); *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (observing that "malice" cannot properly be determined on a motion to dismiss). However, even if whether a plaintiff pled the requisite actual malice standards could be considered at the motion to dismiss stage, Plaintiff Sheriff Arpaio far surpasses this standard.

<u>First</u>, Plaintiff Sheriff Arpaio devotes *four page*s of allegations which directly expose Defendants to liability because of their knowledge of the falsities they maliciously published. The Complaint even demonstrates that these same Rolling Stone Defendants published a prior article about Plaintiff Sheriff Arpaio concerning his *misdemeanor*, not felony. Compl. at ¶ 35. Indeed, without discovery, Plaintiff Sheriff Arpaio respectfully submits that it would be impossible to plead anything more. He expressly alleges:

- Defendants, each and every one of them, jointly and severally, and individually, acted with actual malice when they published the defamatory articles because they knew or had reason to know that what they published was false or entertained serious doubts as to the truth of what they published. Compl. at ¶ 31.

- Defendants are world-renowned, sophisticated journalists and publications and they know what is true or have reason to know what is false and misleading. Defendants HuffPo and Rolling Stone are sophisticated and knowledgeable publications and Defendants had a duty to publish accurately. Compl. at ¶ 32.

- Defendants, each and every one of them, jointly and severally, and

individually, acted with actual malice because they were at a minimum subjectively aware that the articles were fabricated in large part and were not corroborated by anyone. They were intentional hit pieces to harm Plaintiff Arpaio because of his conservative stance on immigration and his support for President Trump, who is hated by these publications. Compl. at ¶ 33.

• Defendants, each and every one of them, jointly and severally, and individually, acted with actual malice because what was published was inherently improbable such that only a reckless person would have put it in circulation. Compl. at ¶ 34.

• Also in this regard, Defendants HuffPo and Robillard published a *prior* article on August 28, 2018 (before the subject Defamatory Publication) which specifically mentions Plaintiff Arpaio's pardon. The article is titled "With Joe Arpaio in Arizona's Senate Race, the ACLU Jumps Into a Federal Election." https://www.huffpost.com/entry/aclu-federal-election-arizona-arpaio_n_5b803444e4b0348586002b73. That article naturally does not mention prison because Plaintiff Arpaio was never "sent to prison" as he was only found liable of a misdemeanor. Moreover, another article published by Defendant HuffPo titled "Joe Arpaio Guilty of Criminal Contempt, Judge Rules" specifically mentions a misdemeanor and even has as a second headline as "[h]e faces a maximum penalty of six months in jail and a fine." https://www.reuters.com/article/us-arizona-arpaio/judge-rules-ex-arizona-sheriff-arpaio-guilty-of-criminal-contempt-idUSKBN1AG288. Therefore, as Defendants HuffPo and Robillard published **before** the Defamatory Publication that Plaintiff Arpaio was found liable of a misdemeanor and that he faces a maximum sentence of six months in jail – ***not prison*** – they acted with actual malice because they knew what they published at the later date was false and misleading. Compl. at ¶ 36.

• Defendants, each and every one of them, jointly and severally, and individually, purposefully avoided the truth because, among other reasons to be disclosed further in discovery, they were part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Arpaio's personal and professional reputation and profession in general. Compl. at ¶ 37.

• The defamatory articles are not an account of two sides of an issue that raise questions in a reader's mind. It is evidence of not only a reckless disregard of the truth but also of common law malice (ill-will or dislike) because Defendants intentionally desired to "get" Plaintiff Arpaio and "muckrake" him. Compl. at ¶ 38.

• Because the actual malice inquiry focuses on Defendants' state of mind at

the time of publication, Plaintiff Arpaio must rely on inferences from circumstantial evidence. Compl. at ¶ 39.

- Circumstantial evidence here that is alleged to indicate actual malice includes but is not limited to: (1) the failure to investigate the seriously false accusation that Plaintiff Arpaio committed a felony or is an "ex-felon"; (2) the failure to seek comment from Plaintiff Arpaio or his lay or legal representatives; (3) the hostility, anger and retaliation to "get" Plaintiff Arpaio because of his conservative stance on immigration and outward support for President Trump; (4) Defendants' sensationalism and "muckraking"; (5) Defendants' preconceived plan to discredit and destroy Plaintiff Arpaio because of his conservative views before the 2020 election; (6) Defendants' preconceived view or slant; (7) other statements and publications that the very same Defendants wrote about Plaintiff Arpaio; and (7) the ill-will or hostility that Defendants' harbor for Plaintiff Arpaio. Compl. at ¶ 40.

- Before any motion to dismiss can be granted, Plaintiff Arpaio is entitled to discovery on Defendants' inner workings in order to prove actual malice. *Herbert v. Lando*, 441 U.S. 153 (1979); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) (permitting discovery before ruling on actual malice). A court should not arrogate until itself what the facts may show without discovery, particularly where a demand for a jury trial has been made. This complaint is more than even plausible. Compl. at ¶ 41.

- Defendants published the Defamatory Publications with actual malice by making a calculated decision not to verify their story because they knew or had reason to know it was false and misleading, but wanted to maliciously publish it anyway as it suited their left-leaning, open borders agenda. This is also proven by Defendants having already published accurately about Plaintiff Arpaio's misdemeanor *prior* to the Defamatory Publications. Compl. at ¶ 42.

- Defendants published the Defamatory Publications with actual malice by purposefully avoiding interviewing anyone who could contradict their story and that would have contradicted Defendants' preconceived storyline because it was false. Compl. at ¶ 43.

- Defendants published the Defamatory Publications with actual malice when they failed to request a comment from Plaintiff Arpaio or his lay or legal representatives even though they knew that they would contradict the defamatory statements. Compl. at ¶ 44.

- Defendants published the Defamatory Publications with actual malice by making a calculated decision not to seek meaningful comment from anyone who could provide a different perspective of their story. Compl. at

11

¶ 45.

- Defendants published the Defamatory Publications with actual malice by failing to interview anyone concerning the articles. Compl. at ¶ 46.

- At a minimum, Defendants had or should have had serious doubts as to the truth of the statements in the Defamatory Publications and a high degree of awareness that they were probably false and therefore were required to investigate their veracity before publishing them. Defendants' failure amounts to actual malice. Defendants purposefully avoided the truth, and purposefully avoided interviewing sources and following fundamental reporting practices intentionally in order to avoid the truth. Compl. at ¶ 47.

- At the time of the defamatory articles, Defendants knew that their statements were false, or recklessly disregarded the truth. Compl. at ¶ 48.

Second, even though constitutional malice, proving that a statement was made with actual malice, has been defined as "with knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times v Sullivan*, 376 U.S. 254 (1964), common law malice – ill will or one of its multiple variants – is a typical, relevant factor in support of a constitutional malice finding.

> [T]he decisions have generally held that almost any evidence of common law malice may be relevant and admissible evidence on the constitutional actual malice issue – anger; hostility; retaliation or threats to "***get***" plaintiff; ***political partisanship***; participation in a scheme to injure plaintiff; personal ill will; coercive purposes or blackmailing attempts; motive to suppress information or intimidate an opponent critical of defendant; economic motivation; sensationalism or "***muckraking***;" publication with full cognizance of the harm to the plaintiff or heedless of the consequences; prior attempts at deliberate falsification or omissions; a preconceived plan to discredit plaintiff; a preconceived view or slant.

David A. Elder Defamation: A Lawyer's Guide § 7:3, at 58-61 (1993) (emphasis added). As the Restatement (Second) of Torts has recognized, such factors "assist in drawing of an inference that the publisher knew that his statement was false or acted in reckless disregard of its falsity." Restatement (Second) of Torts § 580A, cmt. D (1977). "Recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St.*

*Amant v. Thompson*, 390 U.S. 727, 732 (1968).

Plaintiff Sheriff Arpaio plainly pleads that the Rolling Stone Defendants acted with actual malice when they published the false statement of fact because, as just one example, they had written prior articles which directly contradict the false and defamatory statement that Plaintiff Sheriff Arpaio was forced to sue on here. Compl. at ¶ 35. Indeed, the Rolling Stone Defendants have a history of publishing slanderous and injurious articles concerning President Trump and his supporters, like Plaintiff Sheriff Arpaio, in an attempt to "muckrake" and "get" them because of their conservative political ideology. *See Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1170 (5th Cir. 2006) (a "smear campaign involving a calculated and relentless attempt by [one party] that will go to any lengths to destroy [the other]" was evidence of malice.).

Third, "*[m]alice*, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). The standard for notice pleading under Federal Rule of Civil Procedure 8(a)(2) only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is not onerous, and the "heightened" pleading standard that the Rolling Stone Defendants would have this Court apply and which are applicable to some claims – such as fraud – is not applicable to defamation, defamation per se, tortious interference with prospective business relations, or false light actions. A complaint need only contain sufficient factual allegations that, accepted as true, state a claim for relief that is "plausible," i.e., that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 2009). The complaint need not include detailed factual allegations (although Plaintiff Sheriff Arpaio's Complaint does), as long as the alleged facts are sufficient to state a claim to relief above the speculative level and give the defendant fair notice

of what the claim is and the grounds upon which it rests.

In *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657 (1989), the U.S. Supreme Court expressly recognized that motive is "supportive," probative, and admissible evidence. *Id*. at 666-68. Actual malice occurs when a defendant "made the false publication with a 'high degree of awareness of . . . probable falsity,' or [] 'entertained serious doubts as to the truth of his publication.'" *Id*. at 667. Direct evidence of actual malice is not required. Rather, a "plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence[.]" *Id*. at 668. "[A]ll relevant circumstances surrounding the transaction may be shown . . . including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating . . . ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights . . ." *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (recognizing plaintiff will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself").

An example of the importance of evidence of ill will and animosity where the defendant's motive played a part is explained in *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684 (Ky. 1990). There, the defendant-newspaper's pattern of "bias [and] hostility toward the plaintiff attorney-prosecutor led the reporter to engage in a series of unethical practices reflecting a calculated attempt to build a case of prosecutorial incompetence." *Id*. at 686-88. When he found court records supporting his slant, the reporter noted "good cause" on them. *Id*. at 687. Among other derelictions, he interviewed only parties hostile to the plaintiff, deliberately avoiding those who could contradict the sources selected. *Id*. Undoubtedly and justifiably, "a preconceived story line and/or a preconceived slant with an intent to discredit, disparage, and inculpate a plaintiff is clear

evidence of constitutional malice."[2] The Rolling Stone Defendants published the false article to "discredit, disparage and inculpate" Plaintiff Sheriff Arpaio because of his outward support of President Trump and his strong stance on illegal immigration.

Moreover, when a plaintiff requests a jury trial, "[i]t is only when the court can say that the publication is not reasonably capable of *any* defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Levy v. American Mut. Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964) (emphasis added); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). "[I]f the language is capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two meaning would be attributed to it by persons of ordinary understanding under the circumstances." *Levy*, 196 A.2d at 476. "[A] jury must determine whether these impressions were actually conveyed, whether they were false, and whether the letters were motivated by actual malice." *White v. Fraternal Order of Police*, 909 F.2d 512, 525 (D.C. Cir. 1990).

Indeed, recognizing the role of the jury in determining actual malice, the U.S. Court of Appeals for the Ninth Circuit held:

> We must attempt to discharge our constitutional responsibility to protect First Amendment values without unduly trenching on the fact- finding role of the jury and trial judge. We are mindful that in *New York Times*, *Bose*, and *Harte-Hands*, the Supreme Court was fashioning a process for reviewing the evidence which permits judicial protection of First Amendment values while still paying due deference to the fact-finding role of juries, and particularly the jury's opportunity to observe the demeanor of the witnesses.

*Newton v. National Broadcasting Co.*, 930 F.2d 662, 672 (9th Cir. 1990). To these points, Plaintiff Sheriff Arpaio requests and is entitled to discovery concerning the Rolling Stone

---

[2] David A. Elder, Neville L. Johnson, and Brian A. Rishwain, *Establishing Constitutional Malice for Defamation and Privacy/False Light Claims When Hidden Cameras and Deception Are Used by the Newsgatherer*, 22 Loy. L.A. Ent. L. Rev. 327, 383 (2002).

Defendants' knowledge, internal processes, and intentions, as these are exclusively within the Rolling Stone Defendants' control and material to Plaintiff's actual malice claim. In *Herbert v. Lando, et al.*, the U.S. Supreme Court held that defamation plaintiffs burdened with proof of actual malice are entitled to discovery on a media defendant's editorial process as a constitutional matter. *Herbert*, 441 U.S. at 169, 175. Accordingly, dismissal prior to the completion of discovery on this point is premature and inconsistent with Federal Rule of Civil Procedure 56. As in *Herbert*, discovery concerning the internal mental processes of Defendants is warranted where "there is a specific claim of injury arising from a publication that is alleged to have been knowingly or recklessly false." *Id.* at 174.

Fourth, the Rolling Stone Defendants' proclamation that because they made a correction, they could not possibly have acted with actual malice, is a false recitation of law. A retraction in and of itself does not negate a showing of actual malice. In fact, according to U.S. Supreme Court precedent, "[g]ood motives and belief in truth do not [even] negate an inference of malice, but are relevant only in mitigation of punitive damages if the jury chooses to accord them weight." *New York Times Co. v. Sullivan*, 376 U.S. 254, 267 (1964).

In *McBride v. Merrell Dow & Pharmaceuticals*, 717 F.2d 1460, 1465 (D.C. Cir. 1983), a teratologist claimed that a pharmaceutical company disseminated defamatory articles as part of a scheme to silence him and to stall access to the courts for maimed babies. *Id.* at 1462. The defendants there issued a correction in a subsequent article. Concerning the alleged correction, the U.S. Court of Appeals for the District of Columbia Circuit held that they [the panel] "do [not] indicate any view whether other parts of the articles or the retraction made sufficiently remove any defamatory implication from the statement . . ." *Id.* at 1465. By ruling that the retraction did **not** remove any defamatory implication from the statement, the Court confirmed that a

correction or retraction does not negate a showing of actual malice.

Moreover, it is the common law view that a retraction or correction may rebut a presumption of actual malice **only** in the totality of the circumstances, and thus in order to find an absence of actual malice because of an alleged retraction or correction, questions of malice requires a finding of fact to be submitted to a jury. *See Kerwick v. Orange County Publication Division of Ottaway Newspapers, Inc*., 52 N.Y.2d 625, 626, 420 N.E.2d 970 (1981) (finding that while retraction might be considered evidence of lack of malice in certain instances, it "would not be sufficient as a matter of law for that purpose"); *see also Di Lorenzo v. New York News, Inc.*, 81 A.D.2d 844, 848 (App. Div. 2d Dept. 1981).

In *Lohrenz v. Donnelly*, 223 F. Supp. 25 (D.D.C. 2002), this Court recognized that "defendants are not likely to willingly confess [] their ill intentions[,]" *id*. at 45-46, and cited the U.S. Supreme Court case of *Harte-Hanks*, which stands for the proposition that motive is "supportive," probative and admissible evidence, *Harte-Hanks*, 491 U.S. at 668-69, and that a "plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence[.]" *Id*. at 668. Here, there is no doubt that the Rolling Stone Defendants despise Plaintiff Sheriff Arpaio and the president who he supports, and fundamentally disagree with his anti-illegal immigration views and actions. Again, common law malice is a typical factor in a constitutional malice finding.

<u>Fifth</u>, a subsequent correction of a defamatory article or publication, no matter how quickly executed, goes to a mitigation of damages. It does not preclude the suit from moving forward. "[A] retraction in any case is but poor atonement" and corrections and retractions may be used to mitigate damages in a defamation case such as this but do not absolve a defendant of liability. *Storey v. Wallace*, 60 Ill. 51, 56 (1871). A correction or retraction cannot erase the

injury sustained by a plaintiff.

Pursuant to District of Columbia law, "[a] retraction may affect the measure of damages[.] These are matters of the mitigation of the harm caused . . ." *Am. Postal Workers Union v. U.S. Postal Servs.*, 265 U.S. App. D.C. 146, 830 F.2d 294, 324-325 (1987). "There are partial defenses open to the defendant, which will not avoid his liability, but will go to reduce the damages recovered by the plaintiff. Perhaps the most important of these is a retraction of the defamatory statement." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 116A, at 845 (5th ed. 1984). "In neither a defamation nor an employee discipline case does a retraction suddenly and retrospectively bring the full protection of the first amendment to bear upon a statement actionable or punishable when first made." *Am. Postal Workers Union*, 830 F.2d at 325.

Many courts have held that retractions may only be used to mitigate damages. *See, e.g.*, *Koontz v. Weide*, 111 Kan. 709, 208 P. 651 (Kan. 1922) (a retraction does not bar the recovery of damages but may mitigate damages); *Whitcomb v. Hearst Corp.*, 329 Mass. 193, 107 N.E.2d 295, 300 (Mass. 1952) (a retraction is an affirmative defense to damages "with the burden of proof upon the defendants to convince the jury of the extent to which the damages had been mitigated"); *Davis v. Marxhausen*, 103 Mich. 315, 61 N.W. 504 (Mich. 1894) (a retraction is admissible to mitigate damages but may not be used to explain the circumstances under which the original publication was made); *Dixie Fire Ins. Co. v. Betty*, 101 Miss. 880, 58 So. 705 (Miss. 1912) (a retraction cannot bar a defamation claim but may be considered by a jury in mitigating damages); *Di Lorenzo v. N.Y. News, Inc.*, 78 A.D.2d 669, 432 N.Y.S.2d 483, 487 (N.Y. App. Div. 1980) (holding a retraction can be used to mitigate damages); *Rogers v. Florence Printing Co.*, 106 S.E.2d 258, 263 (S.C. 1958) ("[r]etraction of a libel is matter to be considered in mitigation,

but does not bar punitive damages in the absence of a statute so providing."). District of Columbia law has no such statute.

Importantly, mitigation by reason of retraction is strictly an issue for the jury. *Taylor v. Hearst*, 107 Cal. 262, 272, 40 P. 392 (1895); *Behrendt v. Times-Mirror Co*. 30 Cal. App. 2d 77, 88-89 (1938); *Storey v. Wallace*, 60 Ill. at 56; *White v. Sun Publishing Co.*, 164 Ind. 426, 428, 73 N.E. 890 (1905); *Tresca v. ox*, 11 La. Ann. 206, 208 (1856); *Post Publishing Co. v. Butler*, 137 Fed. 723, 728 (6th Cir. 1905); *Ellis v. Brockton Publishing Co*., 198 Mass. 538, 542 (1908) ("The publication of a retraction, complete in character and conspicuous in position, *might be found* to have a material effect in diminishing the mischief caused by the libel . . .") (emphasis added).

In *Whitcomb v. Hearst Corp*., 329 Mass. 193, 107 N.E.2d 295 (Mass. 1952), for example, newspapers printed articles that misidentified an officer as the defendant in a military prosecution for theft in Germany when in fact another officer was tried and convicted of the crime. The publishers printed conspicuous, full and complete retractions. *Id*. at 198. The innocent officer filed libel actions against the publishers. The Supreme Court of Massachusetts overruled exceptions taken by the publishers and ruled that the retractions and that the degree to which the damages were mitigated by the retractions was a question for the jury. *Id*. at 203. "Retractions are affirmative defenses as to damages, with the burden of proof upon defendants to convince the jury of the extent to which damages had been mitigated." *Id*. at 202.

The common law's insistence that retraction can mitigate, rather than eliminate, damages appears rooted in a consistent belief that "the truth rarely catches up with a lie." *Gertz v. Robert Welch*, 418 U.S. 323 (1974). Naturally, retraction ceases to reliably indicate an absence of malice because, for example, a retraction may be motivated not by regret for past error, but by a desire

to reap the benefits of a favorable dismissal or a reduced defamation judgment. As the U.S. Supreme Court recognized, "[r]etractions are rarely 'hot' news and thus will rarely reach the same audience as the initial publication." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 46 (1971). The damage in this case had already been done, despite any alleged correction.

### D.    The Rolling Stone Defendants' False Statements Are Not Substantially True and This Court Already Ruled that the Rolling Stone Defendants Are Not Shielded By the Substantial Truth Doctrine.

Despite the Honorable Royce C. Lamberth's opinion in *Arpaio v. Zucker, et al.*, 18-cv-2894 (RCL), where he ruled that the Rolling Stone Defendants' false statements concerning Plaintiff Sheriff Arpaio are not substantially true, the Rolling Stone Defendants still present this futile argument to the Court. Again, the Defendants' argument is fatally flawed because the malicious publication is provably false. "To successfully assert th[e truth] defense, a defendant in a defamation action must prove that the statements made were substantially true, and that any minor misstatements of fact or inaccuracies of expression were immaterial." *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 60 (D.D.C. 2002) (emphasis added). "Substantially true means that the 'gist' of the statement is true or that the statement is substantially true, as it would be understood by its intended audience." *See Benic v. Reuters America, Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990)). However, "[i]f it appears that the statements are at least capable of a defamatory meaning, whether they were defamatory and false are questions of fact to be resolved by the jury." *See Moss*, 580 A.2d at 1023. Therefore, if "both sides offered evidence to support their positions on falsity, [then] the issue [must be] properly submitted to the jury." *Id.*

In this matter, there is a difference between an unintentional "minor misstatement" that was "immaterial" and the maliciously published false statement by the Rolling Stone

Defendants, publishing to the world that he is an "ex-felon." Compl. at ¶ 23. The statement accusing Plaintiff Sheriff Arpaio of committing a crime serious enough to be a felony – when in fact he never spent any time in prison or jail – does not in any way justify granting the Rolling Stone Defendants' motion to dismiss based on the truth defense. *See Benic*, 357 F. Supp. 2d 221-22 (ruling that even summary judgment would have been inappropriate under the truth defense had plaintiff produced any evidence that the statements at issue gave the "implication that Plaintiff had engaged in criminal or unethical activity"); *id*. at 223 (noting that if the statements at issue could have been "interpreted" by the "average reasonable reader" that plaintiff acted in a manner that was "odious, infamous or ridiculous" then summary judgment should not be granted). Therefore, the statement at issue is not substantially true nor is it a "minor misstatement[] of fact or inaccurate[] expression" that is "immaterial" because the Rolling Stone Defendants accuse Plaintiff Sheriff Arpaio of being a felon. **As this Court ruled "[t]o someone reading the original article without context, the sting or gist of the erroneous publication was the 'ex-felon' label itself, which, on its own, carries some serious implications of criminality.**" Compl. at ¶ 49 (emphasis added).

In short, Plaintiff Sheriff Arpaio has pled more than sufficient facts to demonstrate that, at a minimum, the truth of material facts are in dispute. These facts would even survive a motion for summary judgment. The "gist" of the Rolling Stone Defendants' statements is not true and their motion to dismiss must be denied as a matter of law.

### III.   PLAINTIFF SHERIFF ARPAIO SUFFICIENTLY STATES CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AND FALSE LIGHT BECAUSE HIS DEFAMATION CLAIMS SURVIVE AND HE PLEADS THE REQUISITE ELEMENTS.

#### A.   The Tortious Interference Claim Survives a Motion to Dismiss.

To establish a claim for tortious interference with prospective business relations under

District of Columbia law, a plaintiff need only show: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resulting damage. *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 45 (D.D.C. 2009).

In *Kimmel*, 639 F. Supp. 2d at 34, a dean and tenured professor sued her university for, *inter alia*, tortious interference with prospective business relations. *Id*. at 39. The court denied the defendants' motion to dismiss because the plaintiff sufficiently alleged that the defendants' tortuously interfered with her "valid business expectancy that she would be able to teach, and possibly also serve as an administrator." She also contended that "agents and employees . . . interfered . . . by spreading false and defamatory lies" and that "[a]t least three potential sources of prospective employment have disappeared." *Id*. at 45. "Although Kimmel has not specifically named each alleged potential source of prospective employment or expressly asserted that [the defendants] had knowledge of these expectancies, reasonable inferences can be drawn from Kimmel's factual assertions that [the defendants] acted intentionally, and notice pleading does not require the complaint to specify the entities with whom she had an expectancy. *Id*.; *see also Browning v. Clinton*, 292 F.3d 235, 243 (D.C. Cir. 2002).

The facts here are even more compelling than in *Kimmel*. Here, Plaintiff Sheriff Arpaio has alleged "affirmative, intentional acts of interference" with his contracts, *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 183 (D.D.C. 2015), and actually *named* those contracts. Plaintiff alleged he "has a prospective business relationship with the Republican National Committee ("RNC"), and its National Republican Senate Campaign Committee ("NRSC") which is headquartered in Washington, D.C., as well as their affiliated political action

committees and entities and persons, including donors." Compl. at ¶ 82. Plaintiff continued,

"The RNC and NRSC, in conjunction with affiliated political action committees and entities and

donors routinely provide funding to Republican political candidates for their campaigns. Plaintiff

Arpaio ran for U.S. Senate in 2018 as a Republican, and intends to run again for the U.S. Senate

seat or other public office in 2020 as a Republican and ardent supporter of President Donald J.

Trump and his administration." *Id*. at ¶ 83. "Defendants are aware of these prospective business

relations and thus, given their malice and lefts enmity of Arpaio[,] intentionally, unlawfully, and

maliciously sought to destroy these relationships with the publications of the defamatory

publications and intentionally interfered with Plaintiff Arpaio's business relationships in order to

harm him." *Id*. at ¶ 84.

Consequently, Plaintiff Sheriff Arpaio's tortious interference claim does not "rest[] on

alleged inaction." *Nanko Shipping, USA*, 107 F. Supp. 3d at 183. To the contrary, Plaintiff

expressly alleged that "Defendants published the Defamatory Publications to influence the RNC,

the NRSC and affiliated political action committees, political donors, supporters and persons,

and other donors, to cause the withholding of funding for Plaintiff Arpaio's 2020 political

campaign by smearing and destroying his reputation and standing in his law enforcement,

government and political community." Compl. at ¶ 86. Furthermore, Plaintiff Sheriff Arpaio

pleads that the "Defendants' egregious misconduct in publishing the defamatory articles has and

will continue to severely impede Plaintiff Arpaio's ability to capitalize on his U.S. Senate and/or

other endeavors to run for public office [] and the goodwill associated with it, and to gainfully,

efficiently and legitimately utilize the business concept of the RNC and the NRSC to generate

business and economic advantage." *Id*. at ¶ 87.

Plaintiff Sheriff Arpaio sufficiently pled tortious interference with prospective business

relations and the Rolling Stone Defendants' motion to dismiss must be denied.

      **B.**    **The False Light Claim Survives a Motion to Dismiss.**

"A 'false light claim . . . requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'" *Doe v. Bernabei & Wachtel*, PLLC, 116 A.3d 1262, 1267 (D.C. 2015) (quoting *Bean v. Gutierrez*, 980 A.2d 1090, 1094 (D.C. 2009)).

In *Benz v. Wash. Newspaper Publ'g Co., LLC*, 2006 U.S. Dist. LEXIS 71827 (D.D.C. Sept. 29, 2006), a producer from CNN claimed that defendant Washington Enquirer had stated that she had been "linked romantically with power players" and that she had "hooked up" with a "porn king." *Id*. at n. 5. The court found that plaintiff could proceed on her claim for false light because, *inter alia*, the published statements would be highly offensive to a reasonable person. *Id*. at 20. "Those articles, which implied that plaintiff, a professional, single woman in her 30s, used her job in the media to obtain romantic and sexual relationships with 'power players' for personal gain . . . would be highly offensive to a reasonable person." *Id*.

Similarly, in *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990), the defendant published articles that stated the true facts that the plaintiff, a police captain, tested positive for marijuana, and that a second drug test, which was "transported under irregular circumstances," produced negative results. *Id*. at 514. The plaintiff asserted that these statements falsely suggested that he used drugs. *Id*. at 516. The court held that if a communication, read in context, is "materially true" and "supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference," then it will rise to the level of actionable defamation. *Id*. at 520. Indeed, "[p]ublicity that is actionable in a false light claim

24

generally will be actionable in defamation as well." *Moldea v. New York Times Co.*, 15 F.3d 1137, 1151 (D.C. Cir. 1994).

Here, just as in *Benz* and *White*, the Rolling Stone Defendants falsely place Plaintiff Sheriff Arpaio in a false light that would be highly offensive to reasonable person and he pled as much: "[the defamatory statements] all falsely accuse Plaintiff Arpaio of having been convicted of a felony . . ." and "[t]hese statements, made with malice, place Plaintiff in a false light that would be offensive to a reasonable person." Comp. at ¶¶ 92, 94. Plaintiff is not an "ex-felon." Plaintiff Sheriff Arpaio spent no time in jail or prison and was not convicted of a felony, which is what the Rolling Stone Defendants intentionally published when they told the world that he is an "ex-felon." Virtually every line in the article dedicated to Plaintiff Sheriff Arpaio is susceptible of placing him in a false light. The Rolling Stone Defendants should be held accountable for their intentional and vicious attacks.

## CONCLUSION

For the foregoing reasons, Plaintiff Sheriff Arpaio respectfully requests that this Court deny the Rolling Stone Defendants' motion to dismiss in its entirety.

In the world we live in today, elements of the media believe that they can get away with anything; destroying lives, families and professions. This Court, one of the few in the nation who has the will to enforce the law as written, without regard to political bias and politics, must now put its foot down and either deny the Defendants' non-meritorious motions to dismiss, or reopen the prior case and allow for the complaint to be amended and the case then proceed to discovery.

Dated: February 18, 2020                    Respectfully submitted,

                                             */s/ Larry Klayman*
                                            Larry Klayman, Esq.
                                            D.C. Bar No. 334581
                                            Chairman and General Counsel
                                            FREEDOM WATCH, INC.
                                            2020 Pennsylvania Ave. N.W.
                                            Suite 345
                                            Washington, DC 20006
                                            Tel: (561) 558-5336
                                            Email: leklayman@gmail.com

                                            *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February 2020, a true and copy of the foregoing was filed and served by electronic filing upon counsel listed on the Notice of Electronic Filing:

Alison Schary
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
Telephone: (202) 973-4248
Facsimile: (202) 973-4499
alisonschary@dwt.com

Elizabeth A. McNamara
Rachel F. Strom
DAVIS WRIGHT TREMAINE, LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Telephone: (212) 489-8230

*Attorneys for Defendants Tessa Stuart & Rolling Stone*

Elizabeth Baldridge
JASSY VICK CAROLAN, LLP
800 Wilshire Boulevard
Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
ebaldridge@jassyvick.com

*Attorneys for Defendants TheHuffingtonPost.com, Inc. and Kevin Robillard*

/s/ Larry Klayman
Larry Klayman