# EXHIBIT 1

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JOSEPH M. ARPAIO, *Defendant-Appellant.* | No. 17-10448 D.C. No. 2:16-cr-01012-SRB-1 OPINION |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted October 23, 2019
San Francisco, California

Filed February 27, 2020

Before:  Jay S. Bybee, N. Randy Smith, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Bybee

2             UNITED STATES V. ARPAIO

## SUMMARY[*]

**Criminal Law**

The panel affirmed the district court's judgment dismissing former Maricopa County Sheriff Joseph Arpaio's criminal proceeding with prejudice, and denying vacatur of the district court's verdict finding Arpaio guilty of criminal contempt, in a case in which Arpaio was granted a pardon by the President before the district court could sentence him.

The panel held that because the verdict can have no future preclusive effect, Arpaio's claimed errors in the verdict are moot; and Arpaio's appeal from the denial of vacatur of the verdict is appealable as a final order over which this court has jurisdiction under 28 U.S.C. § 1291.

Arpaio claimed that the district court abused its discretion by refusing to vacate the district court's verdict under the *Munsingwear* rule, which provides for vacatur in cases mooted while on appeal. The panel held that in this case, vacatur would not further the purposes of *Munsingwear* because the district court's verdict finding Arpaio guilty of criminal contempt has no legal consequences. The panel explained that the verdict did not satisfy either of the two conditions for preclusive effect in a subsequent action because (1) there was no final judgment of conviction, as Arpaio was never sentenced; and (2) the verdict was inconsistent with, and thus not essential to, the final judgment, which dismissed the criminal contempt charge.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

John D. Wilenchik (argued) and Dennis I. Wilenchik,
Wilenchik & Bartness P.C., Phoenix, Arizona; Mark
Goldman and Jeff S. Surdakowski, Goldman & Zwillinger
PLLC, Scottsdale, Arizona; for Defendant-Appellant.

James I. Pearce (argued), Appellate Section, Criminal
Division; Matthew S. Miner, Deputy Assistant Attorney
General; John P. Cronan, Acting Assistant Attorney General;
John Dixon Keller, Deputy Chief; Victor R. Salgado and
Simon Joseph Cataldo, Trial Attorneys, Public Integrity
Section; United States Department of Justice, Washington,
D.C.; for Plaintiff-Appellee.

Christopher G. Caldwell (argued), Boies Schiller Flexner
LLP, Los Angeles, California, Special Prosecutor Plaintiff-
Appellee.

Steven A. Hirsch, Ian Bassin, Justin Florence, Aditi Juneja,
and Anne Tindall, The Protect Democracy Project Inc.,
Washington, D.C.; Jean-Jacques Cabou, Shane R. Swindle,
and Katherine E. May, Perkins Coie LLP, Phoenix, Arizona;
Locke E. Bowman and David M. Shapiro, Roderick and
Solange Macarthur Justice Center, Chicago, Illinois; Ronald
A. Fein and Shanna M. Cleveland, Free Speech for People,
Newton, Massachusetts; Noah Messing, Messing & Spector
LLP, New York, New York; Phil Spector, Messing & Spector
LLP, Baltimore, Maryland; Dennis Aftergut and Louise H.
Renne, Coalition to Preserve, Protect, and Defend, San
Francisco, California; for Amici Curiae Laurence H. Tribe;
Martin H. Redish; Lawrence Friedman; William D. Rich;
Citizens for Responsibility and Ethics in Washington;
Coalition to Preserve, Protect and Defend; Free Speech for

4                      UNITED STATES V. ARPAIO

People; MoveOn; The Protect Democracy Project, Inc.;
Republicans for the Rule of Law; and The Roderick and
Solange Macarthur Justice Center.

Spencer G. Scharff, Scharff PLC, Phoenix, Arizona; R.
Bradley Miller, Guttman Bushner and Brooks PLLC,
Washington, D.C.; for Amicus Curiae Certain Members of
Congress.

Dennis P. Riordan and Donald M. Horgan, Riordan &
Horgan, San Francisco, California; for Amici Curiae Erwin
Chemerinsky, Michael E. Tigar, and Jane B. Tigar.

---

## OPINION

BYBEE, Circuit Judge:

Defendant-Appellant Joseph Arpaio, the former Sheriff of
Maricopa County, Arizona, was found guilty of criminal
contempt in a bench trial for willfully violating a preliminary
injunction prohibiting him from enforcing federal civil
immigration law.  After entry of the verdict, but before the
court could sentence Arpaio, he was granted a pardon by the
President.  Arpaio asked the district court to vacate the
verdict and dismiss the criminal case against him with
prejudice.  The district court granted the motion to dismiss
the case with prejudice, but refused to vacate the verdict.
Arpaio appeals that decision, arguing that vacatur was
required under the Supreme Court's decision in *United States
v. Munsingwear, Inc.*, 340 U.S. 36 (1950).  Because we find
that *Munsingwear* does not apply in this case, we affirm the
judgment of the lower court.

## I. FACTS AND PROCEDURAL HISTORY

Joseph Arpaio was the elected sheriff of Maricopa
County, Arizona, from 1993 through 2016. In 2007, a class
of Hispanic Maricopa County residents sued Arpaio in the
U.S. District Court for the District of Arizona under
42 U.S.C. § 1983. They alleged "illegal, discriminatory and
unauthorized enforcement of federal immigration laws
against Hispanic persons in Maricopa County." According to
the plaintiffs, Arpaio and his officers, "acting under color of
law and in concert with one another, engaged in profiling of"
Hispanic motorists by detaining persons based solely on their
ethnicity. In 2011, Judge Murray Snow preliminarily
enjoined Arpaio and the Maricopa County Sheriff's Office
(MCSO) "from detaining any person based on knowledge,
without more, that the person is unlawfully present within the
United States." *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d
959, 992–93 (D. Ariz. 2011), *aff'd*, 695 F.3d 990 (9th Cir.
2012). In 2013, Judge Snow issued a permanent injunction.
That injunction barred the MCSO from "[d]etaining, holding,
or arresting Latino occupants of vehicles in Maricopa County
based on a reasonable belief, without more, that such persons
were in the country without authorization."

In 2016, following extensive hearings, Judge Snow
concluded that Arpaio and the MCSO had "intentionally
failed to implement the Court's preliminary injunction."
Judge Snow held Arpaio in civil contempt, and Arpaio
conceded his liability for civil contempt. In a separate order,
Judge Snow found that Arpaio had "intentionally disobeyed"
the injunction, and that he "did so based on the notoriety he
received for, and the campaign donations he received because
of, his immigration enforcement activity." On that basis,

6                UNITED STATES V. ARPAIO

Judge Snow referred the matter to another judge to adjudicate
the criminal contempt charges against Arpaio.

The case was randomly assigned to Judge Susan Bolton,
who presided over the prosecution of Arpaio for
"[d]isobedience or resistance to [the court's] lawful writ,
process, order, rule, decree, or command." 18 U.S.C.
§ 401(3). Judge Bolton requested that the U.S. Department
of Justice prosecute the case, which it agreed to do. *See* Fed.
R. Crim. P. 42(a)(2). In July 2017, after a five-day bench
trial, the district court issued "Findings of Fact and
Conclusions of Law," concluding that Arpaio was guilty of
criminal contempt of court. *United States v. Arpaio*, No. CR-
16-01012-001-PHX-SRB, 2017 WL 3268180, at *7 (D. Ariz.
July 31, 2017). Judge Bolton scheduled sentencing for
October 2017.

Arpaio was never sentenced. On August 25, 2017, before
the district court could pronounce sentence, President Trump
granted Arpaio a full and unconditional pardon "[f]or his
conviction of Section 401(3) . . . and for any other offenses
under Chapter 21 of Title 18, United States Code that might
arise, or be charged, in connection with *Melendres v.
Arpaio*."**[1]** Relying on the pardon, Arpaio asked the district

---

**[1]** Although President Trump pardoned Arpaio for his "conviction" for
criminal contempt, Arpaio was never technically "convicted" of anything.
Colloquially, we use the term "convicted" to describe when an individual
has been found guilty of a crime. *See, e.g.*, Richard Perez-Pena, *Former
Arizona Sheriff Joe Arpaio is Convicted of Criminal Contempt*, N.Y.
Times (July 31, 2017); Colin Dwyer, *Ex-Sheriff Joe Arpaio Convicted of
Criminal Contempt*, NPR (July 31, 2017). Legally, though, using the term
in this way is imprecise because there is a technical difference between a
"conviction" and a "judgment of conviction." Arpaio suffered a
"conviction," but not a "judgment of conviction," which does not occur

court to dismiss his criminal case with prejudice and to "vacate the verdict and all other orders." The district court granted Arpaio's motion to dismiss the case with prejudice, but denied vacatur of the verdict. *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072, at *2 (D. Ariz. Oct. 19, 2017). The district court held that "[a] presidential pardon must be accepted to be effective." *Id.* at *1. The court found that Arpaio "accepted the pardon before a judgment of conviction was entered," and accordingly, "[t]he pardon undoubtedly spared [Arpaio] from any punishment that might otherwise have been imposed," but did not "revise the historical facts of this case." *Id.* at *2 (quotation marks omitted).**²**

Arpaio filed a timely appeal from the district court's refusal to grant the vacatur. He urges two points. First, Arpaio argues that because his pardon mooted any challenge

---

until sentence is imposed. *See United States v. Smith*, 623 F.2d 627, 630 (9th Cir. 1980).

Admittedly, we have not always used these terms with precision. But in this case, precision is important. Accordingly, we will not refer to the order for which Arpaio seeks vacatur as a "conviction," but will instead refer to it as the "verdict" or "finding of guilt."

**²** Following the issuance of the pardon, the Department of Justice took the position that the district court should vacate the court's verdict and declined to defend the district court's order. We appointed Christopher G. Caldwell as a special prosecutor to defend the district court's order. *See United States v. Arpaio*, 887 F.3d 979 (9th Cir. 2018), *reh'g en banc denied by* 906 F.3d 800 (9th Cir. 2018); *see also* Fed. R. Crim. P. 42(a)(2) ("If the government declines the request, the court must appoint another attorney to prosecute the contempt.")

The court thanks Mr. Caldwell for accepting the appointment and for faithfully discharging his responsibilities as special prosecutor.

8                    UNITED STATES V. ARPAIO

to the court's verdict, that verdict must be vacated, and it was
an abuse of discretion for the district court to refuse to do so.
At oral argument, however, Arpaio clarified that, if we agree
that his challenges to the findings of guilt are moot because
they will have no future preclusive effects, then he seeks no
further relief beyond that determination. Second, Arpaio
contends that, if the district court's finding of guilt will have
future effects, then his challenges to those findings are not
moot and must be decided by this court on the merits. He
raises six issues that he claims warrant reversal of the district
court's verdict of guilt.[3]

## II. JURISDICTION AND STANDARD OF REVIEW

Ordinarily, we do not acquire jurisdiction over a verdict
of guilt in a criminal case until the sentence has been issued
and the judgment of conviction is final. *See United States v.
Vela*, 624 F.3d 1148, 1151 (9th Cir. 2010); *see also Smith*,
623 F.2d at 630 ("The general rule is that it is the judgment,
not the verdict, that is the 'conviction.'"). We have no
authority here to review the district court's "Findings of Fact
and Conclusions of Law" where the case was dismissed with
prejudice and no sentence was ever imposed, because we do
not have a final judgment of conviction before us and because
that verdict can have no future preclusive effect. Arpaio's

---

[3] Arpaio argues that (1) his prosecution for criminal contempt had to
be prosecuted under 18 U.S.C. § 402, which has a one-year statute of
limitations, which had run and, alternatively, entitled him to a jury trial;
(2) he was not present for the verdict, in violation of the Sixth
Amendment; (3) the finding of guilt for violating the preliminary
injunction was unsupported by the evidence; (4) the preliminary injunction
was not "clear and definite," in violation of the Due Process Clause of the
Fifth Amendment; (5) he relied on the good faith advice of counsel; and
(6) he proffered a meritorious public authority defense.

claimed errors in the district court's verdict are therefore moot, and we will not consider them further.

By contrast, Arpaio's appeal from the denial of vacatur of the district court's verdict is appealable as a final order over which we have jurisdiction under 28 U.S.C. § 1291. *See United States v. Tapia-Marquez*, 361 F.3d 535, 537 (9th Cir. 2004); *see also Munsingwear*, 340 U.S. at 40 ("Denial of a motion to vacate could bring the case here."). The district court's order dismissed the case with prejudice, even as it denied the full vacatur that Arpaio sought. The district court's order concluded the litigation and made the order appealed a final order.

We review a district court's grant or denial of equitable vacatur for abuse of discretion. *See Tapia-Marquez*, 361 F.3d at 537. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *see United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

## III. ANALYSIS

Arpaio's threshold claim is that the district court abused its discretion by refusing to vacate the district court's verdict under *Munsingwear*. Arpaio urges us to correct the district court's legal error and vacate the verdict. *See* 28 U.S.C. § 2106. We disagree with Arpaio, but follow a slightly different path from the district court. We hold that, because the mootness issue here arises from the fact that the district court's findings of guilt can be given no future preclusive effect, the *Munsingwear* rule does not apply, and Arpaio is

not entitled to vacatur. We thus affirm the judgment of the district court.

In *Munsingwear*, the Supreme Court was asked to determine whether a judgment in a proceeding for injunctive relief that was later mooted while on appeal could have preclusive effect on a claim for damages. *See* 340 U.S. at 37–38. In grappling with that question, the Court observed:

> The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.

*Id*. at 39. Though this statement was not *Munsingwear*'s holding[4]—for the petitioner in *Munsingwear* was not even asking for vacatur of the mooted decision—it has since become known as "the *Munsingwear* rule," which provides for vacatur in cases mooted while on appeal. *See, e.g.*, *ACLU of Nev. v. Cortez Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012) (discussing "the *Munsingwear* rule"); *see also Nat'l Union Fire Ins. Co. v. Seafirst Corp.*, 891 F.2d 762, 765–66 (9th Cir. 1989) (same).

The purpose underlying this rule "is to prevent an unreviewable decision from spawning any legal

---

[4] *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) (discussing *Munsingwear* and describing "the portion of . . . *Munsingwear* describing the 'established practice' for vacatur" as "dictum").

consequences, so that no party is harmed by what we have called a 'preliminary' adjudication." *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (internal quotation marks omitted) (quoting *Munsingwear*, 340 U.S. at 40–41); *see also Munsingwear*, 340 U.S. at 40 (explaining that vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance"). In this case, vacatur would not further the purposes of *Munsingwear* because the district court's verdict finding Arpaio guilty of criminal contempt has no legal consequences.

The "general rule" for issue preclusion provides that a "'determination [in a prior case] is conclusive in a subsequent action between the parties'" only "'[w]hen an issue of fact or law is actually litigated and determined by *a valid and final judgment*, and *the determination is essential to the judgment*.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (emphasis added) (quoting Restatement (Second) of Judgments § 27, at 250 (Am. Law Inst. 1980)).[5] The verdict Arpaio seeks to vacate satisfies neither of these conditions. First, although the verdict would have been essential to any final judgment of conviction, there was no final judgment of conviction here, because Arpaio was never sentenced. Second, for the final judgment that was entered in this case—a dismissal of the criminal contempt charge—the verdict was not only not essential to the judgment, but was inconsistent with it. Because Arpaio cannot be "harmed by . . . a 'preliminary' adjudication,"

---

[5] The preclusive effect of a federal court judgment is governed by federal law. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001).

12          UNITED STATES V. ARPAIO

*Camreta*, 563 U.S. at 713, we decline to apply the *Munsingwear* rule to this case.

We will explain both points in turn.

A

Though colloquially we refer to the district court's finding of guilt as a "conviction," in reality, Arpaio never suffered a final judgment of conviction for criminal contempt. "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937); *see Corey v. United States*, 375 U.S. 169, 172 (1963) ("An appeal may not be taken until after the pronouncement of sentence."). Here, the issuing of a presidential pardon, and Arpaio's acceptance of the pardon, preempted his sentencing. Thus, there is no final judgment of *conviction* in this case; instead, there was a final judgment of dismissal with prejudice. This lack of a final judgment of conviction precludes the attachment of "legal consequences," *Camreta*, 563 U.S. at 713, such as a sentencing enhancement in a subsequent criminal case or claim or issue preclusion in a civil case.[6] For this reason, vacating the verdict here would not serve the purposes of *Munsingwear*.

---

[6] We note that even if it were disposed to, the United States is barred by the Double Jeopardy Clause from bringing a second criminal action against Arpaio, as jeopardy in Arpaio's trial attached when Judge Bolton began hearing evidence, *see Serfass v. United States*, 420 U.S. 377, 388 (1975), and "[t]here can be little doubt that a dismissal with prejudice bars any further action between the parties on the issues subtended by the case," *Classic Auto Refinishing, Inc. v. Marino (In re Marino)*, 181 F.3d 1142, 1144 (9th Cir. 1999); *see also Currier v. Virginia*, 138 S. Ct. 2144, 2152–53 (2018); *United States v. Castiglione*, 876 F.2d 73, 75–76 & n.1 (9th Cir. 1989).

The lack of a judgment of conviction and the dismissal of the charges with prejudice means that Arpaio is not subject to an enhanced sentence in any subsequent case based on the district court's finding that Arpaio committed criminal contempt. Although the U.S. Sentencing Guidelines contemplate an enhanced sentence after a guilty verdict and *pending sentencing*, U.S.S.G. § 4A1.2(a)(1), no such enhancement can be imposed where no sentence was ultimately imposed and the case was dismissed.[7] The rule is similar in Arpaio's home state of Arizona, which only prescribes sentence enhancements for final convictions, *see* Ariz. Rev. Stat. § 13-707 (enhancing sentences for prior "conviction[s]"); *id*. § 4-248(B) (defining "conviction" as "a final conviction"), a term which the Arizona courts have defined to mean "a judgment of conviction from which [a defendant] has exhausted his right to appeal," *Campbell v. Superior Court*, 462 P.2d 801, 804 (Ariz. 1969).

For similar reasons, Arpaio will not be subject to issue preclusion or claim preclusion in any subsequent civil litigation. As we noted above, the "general rule" for issue preclusion provides that a "'determination [in a prior case] is conclusive in a subsequent action between the parties'" only "'[w]hen an issue of fact or law is actually litigated and determined by *a valid and final judgment*.'" *B&B Hardware, Inc.*, 575 U.S. at 148 (emphasis added) (quoting Restatement (Second) of Judgments § 27, at 250 (Am. Law Inst. 1980)). In civil cases, "the availability of appellate review is a key factor" in determining the preclusive effect of a judgment.

---

[7] Section 4A1.2(a)(3) counts a conviction where "the imposition or execution of sentence was totally suspended or stayed." This provision does not apply to Arpaio, because his sentence was neither stayed nor suspended.

*Bravo-Fernandez v. United States*, 137 S. Ct. 352, 358 (2016).  Similarly, claim preclusion requires proof of "(1) an identity of claims, (2) *a final judgment on the merits*, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Comm'n*, 322 F.3d 1064, 1077 (9th Cir. 2003) (emphasis added) (quoting *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n.3 (9th Cir. 2002)).  The Restatement (Second) of Judgments has addressed directly the "requirement of finality."  In general, for claim preclusion, "a judgment will ordinarily be considered final in respect to a claim . . . if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement . . . ." Restatement (Second) of Judgments § 13 cmt. b (Am. Law Inst. 1982); *see also id*. cmt. g (noting that we should not read "finality less strictly when the question is one of issue preclusion").  The "factors supporting the conclusion that the decision is final for the purpose of preclusion" are "that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that *the decision was subject to appeal or was in fact reviewed on appeal*."  *Id.* cmt. g (emphasis added).

Where the district court dismissed with prejudice Arpaio's criminal case before sentencing, there was no final judgment of conviction, and the verdict was not subject to appeal.  There is no preclusion and no reason for us to apply *Munsingwear* to this case.

## B

The preclusion rules will not apply in any future litigation for a second reason: The verdict was not a determination

essential to the actual, final judgment entered in this case. The final judgment entered in this case was a dismissal with prejudice, and the district court's findings of fact and conclusions of law played no role in that dismissal. In fact, "[f]ar from being necessary to the judgment, [the findings underlying the guilty verdict] *cut against it*—making them quintessentially the kinds of rulings not eligible for issue-preclusion treatment." *Bobby v. Bies*, 556 U.S. 825, 835 (2009) (emphasis added) (citation and internal quotation marks omitted); *see also id*. ("A determination ranks as necessary or essential only when the final outcome hinges on it.") (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 (2d ed. 2002)). Again, the rationale for *Munsingwear* does not apply. *See Camreta*, 563 U.S. at 713.

## IV. CONCLUSION

The district court's judgment dismissing Arpaio's criminal proceeding with prejudice and denying vacatur of the finding of guilt is affirmed. Because Arpaio's challenges to the district court's finding of guilt are moot, we do not address them.

**AFFIRMED.**