**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOSEPH MICHAEL ARPAIO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:19-cv-03366-RCL |
| KEVIN ROBILLARD | * | |
| and | * | |
| HUFFINGTON POST | * | |
| and | * | |
| TESSA STUART | * | |
| and | * | |
| ROLLING STONE | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>REPLY IN SUPPORT OF THE HUFFPOST DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)</u>

Defendants TheHuffingtonPost.com, Inc. ("HuffPost" erroneously sued as "Huffington Post") and Kevin Robillard (collectively, the "HuffPost Defendants") respectfully submit this reply memorandum in support of their motion to dismiss pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6).

Respectfully submitted,

/s/ Jean-Paul Jassy
Jean-Paul Jassy (Admitted *Pro Hac Vice*)
William T. Um (Admitted *Pro Hac Vice*)
Elizabeth H. Baldridge (Admitted *Pro Hac Vice*)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800

1

Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com


Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants*
*TheHuffingtonPost.com, Inc. and Kevin Robillard*

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.    ARPAIO'S ADMITTED STRATEGY OF PURPOSFULLY DEFYING THIS
      COURT'S PRIOR ORDER AND *TAKING* HIS OWN, UNAUTHORIZED
      SECOND OPPORTUNITY TO ASSERT CLAIMS IS PROCEDURALLY
      IMPROPER AND MUST BE STOPPED ..................................................................... 2

II.   THE DOCTRINES OF *RES JUDICATA* AND ISSUE PRECLUSION MANDATE
      THE DISMISSAL OF ARPAIO'S COMPLAINT ........................................................ 3

      A.    Arpaio's Unauthorized Second Complaint Presents a Crystal-Clear
            Application of *Res Judicata* and Issue Preclusion .............................................. 3

      B.    Arpaio Provides No Basis for Why this Court Should Not Dismiss Based
            on an Application of Either *Res Judicata* or Issue Preclusion ........................... 6

            i.    Arpaio Dropping Three Defendants from the Prior Suit Makes No
                  Difference for Purposes of *Res Judicata* ................................................. 6

            ii.   The New Causes of Action Do Not Affect the Conclusion that
                  Arpaio's Second Suit Is Based on The Same Common Nucleus
                  as *Arpaio I* ............................................................................................... 7

            iii.  The "Nucleus of Common Fact" Inquiry Looks to The Overall
                  Event or Transaction Giving Rise to the Case, Which Is the Same
                  Here as in *Arpaio I* .................................................................................. 8

III.  THE STATUTE OF LIMITATIONS APPLIES TO ARPAIO'S SECOND-BITE-
      AT-THE-APPLE CLAIMS .......................................................................................... 9

IV.   EVEN THOUGH THE COURT NEED NOT REACH THE SUBSTANCE OF
      ARPAIO'S COMPLAINT, ARPAIO FAILS TO STATE A CLAIM ........................ 11

      A.    Arpaio's Complaint Still Fails to Plead Actual Malice ................................... 11

            i.    Arpaio Admits that It "Would Be Impossible to Plead Anything
                  More," and Should Be Denied Leave to Amend ................................. 13

      B.    The HuffPost Article was Substantially True .................................................. 15

V.   ARPAIO'S CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE
     BUSINESS RELATIONS AND FALSE LIGHT NECESSARILY FAIL................... 17

CONCLUSION...................................................................................................................... 20

CERTIFICATE OF SERVICE ............................................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

CASES

*American Postal Workers Union, AFL-CIO v. U.S. Postal Service*,
   830 F.2d 294 (D.C. Cir. 1987) .................................................................................14

*Apotex, Inc. v. Food & Drug Admin.*,
   393 F.3d 210 (D.C. Cir. 2004) ...................................................................................3

*Ashbourne v. Hansberry*,
   245 F. Supp. 3d 99 (D.D.C. 2017) ....................................................................4, 5, 8

*Benz v. Washington Newspaper Publishing Co., LLC*,
   No. 05-1760, 2006 WL 2844896 (D.D.C. Sept. 29, 2006) ..........................................19

*Bose Corp. v. Consumer Union*,
   466 U.S. 485 (1984) .................................................................................................16

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ...................................................................................9

*Campbell v. District of Columbia*,
   894 F.3d 281 (D.C. Cir. 2018) .................................................................................16

*Carr v. Brown*,
   395 A.2d 79 (D.C. 1978) ..........................................................................................18

*Davis v. Marxhausen*,
   103 Mich. 315 (1894) ...............................................................................................15

*Davis v. Transportation Security Admin.*,
   264 F. Supp. 3d 6 (D.D.C. 2017) .........................................................................5, 10

*Di Lorenzo v. New York News*,
   432 N.Y.S.2d 483 (1980) ..........................................................................................15

*Dixie Fire Ins. Co. v. Betty*,
   101 Miss. 880 (1912) ................................................................................................15

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) .................................................................................18

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)..................................................................................................12

*Gresham v. District of Columbia*,
   66 F. Supp. 3d 178 (D.D.C. 2014) .............................................................................8

*Harte-Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989)..................................................................................................11

*Hoffman v. Washington Post Co.*,
   433 F. Supp. 600 (D.D.C. 1977) .........................................................................13, 14

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016) .......................................................................12

*Jin v. Ministry of State Security*,
    254 F. Supp. 2d 61 (D.D.C. 2003) ...............................................................10

*Jovanovic v. US-Algeria Bus. Council*,
    561 F. Supp. 2d 103 (D.D.C. 2008) ...................................................9, 10, 17

*Kerwick v. Orange County Publication Division of Ottoway Newspapers, Inc.*,
    53 N.Y.2d 625 (1981) ...................................................................................14

*Kimmel v. Gallaudet University*,
    639 F. Supp. 2d 34 (D.D.C. 2009) ................................................................18

*Koontz v. Weide*,
    111 Kan. 709 (1922) .....................................................................................15

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ......................................................................6

*Liberty Lobby, Inc. v. Rees*,
    852 F.2d 595 (D.C. Cir. 1988) ......................................................................13

*Logan v. District of Columbia*,
    447 F. Supp. 1328 (D.D.C. 1978) .................................................................13

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002) ("*Lohrenz I*") .........................................13

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003) ("*Lohrenz II*") ...........................................15

*Martin v. Dep't of Justice*,
    488 F.3d 446 (D.C. Cir. 2007) ........................................................................4

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ......................................................................................17

*McBride v. Merrell Dow & Pharmaceuticals Inc.*,
    717 F.2d 1460 (D.C. Cir. 1983) ....................................................................14

*Minebea Co., Ltd. v. Papst*,
    444 F. Supp. 2d 68 (D.D.C. 2006) ................................................................11

*Montgomery v. Risen*,
    197 F. Supp. 3d 219 (D.D.C. 2016) .................................................................7

*Morgan v. United States Parole Comm'n*,
    304 F. Supp. 3d 240 (D.D.C. 2016) ...........................................................3, 17

*Nanko Shipping, USA v. Alcoa, Inc.*,
    850 F.3d 461 (D.C. Cir. 2017) ......................................................................18

*Nanko Shipping, USA v. Alcoa, Inc.*,
    107 F. Supp. 3d 174 (D.D.C. 2015) ..............................................................18

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ........................................................................16

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) ................................................................12

*Peek v. SunTrust Bank, Inc.*,
    313 F. Supp. 3d 201 (D.D.C. 2018) ................................................................10

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ........................................................................................12

*Smalls v. U.S.*,
    471 F.3d 186 (D.C. Cir. 2006) ......................................................................3, 8

*Stith v. Chadbourne & Parke, L.L.P.*,
    160 F. Supp. 2d 1 (D.D.C. 2001) .....................................................................9

*Storey v. Wallace*,
    60 Ill. 51 (1871) ..............................................................................................15

*Stovell v. James*,
    965 F. Supp. 2d 97 (D.D.C. 2013) ...................................................................9

*United States v. Arpaio*,
    Case No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072
    (D. Ariz. Oct. 19, 2017) .................................................................................16

*United States v. Arpaio*, --- F.3d ---,
    No. 17-10448 (9th Cir. Feb. 27, 2020) ...........................................................15

*U.S. ex rel Folliard v. Synnex Corp.*,
    798 F. Supp. 2d 66 (D.D.C. 2011) ...................................................................7

*Whitcomb v. Hearst Corp.*,
    329 Mass. 193 (1952) ......................................................................................15

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ........................................................................19

*Yamaha Corp. of Am. v. U.S.*,
    961 F.2d 245 (D.C. Cir. 1992) ......................................................................4, 5

## FEDERAL STATUTES

D.C. Code Ann. § 12-301(4) (2002) ...........................................................................9

## FEDERAL RULES

Federal Rule of Appellate Procedure 3(a) ...................................................................2

Federal Rule of Civil Procedure 60 ............................................................................3

Federal Rule of Civil Procedure 12(b)(6) .............................................3, 8, 9, 10, 21

## <u>INTRODUCTION</u>

Plaintiff Joseph Michael Arpaio's inappropriately re-filed Complaint must be dismissed because it violates the doctrines of *res judicata* and issue preclusion, because it is time-barred, and because the substance of the Complaint fails to state a claim upon which relief can be granted. Arpaio's Opposition to the HuffPost Defendants' Motion to Dismiss underscores that Arpaio apparently believes the Federal Rules of Civil and Appellate Procedure do not apply to him.[1] Arpaio admits to avoiding the procedurally proper route of an appeal following dismissal with prejudice of his Complaint in *Arpaio I* because of his perception that the D.C. Circuit is too liberal a forum for his tastes. Opp. at 3. Instead of filing this second action, Arpaio should have appealed his case or moved for reconsideration in *Arpaio I*. Instead, he ignored this Court's order and judgment in the HuffPost Defendants' favor, and took the procedurally unsupportable position of filing a new Complaint against the *same* HuffPost Defendants asserting the *same* claims based on the *same line* in the *same* article. *Res judicata* and issue preclusion—the latter of which Arpaio does not even address—*require* that the only acceptable result is to dismiss the case with prejudice. If the Court were to permit Arpaio's strategy, it would undercut all litigants' ability to rely on the finality of this Court's orders and final judgments.

The Court can and should dismiss this case on *res judicata* or issue preclusion grounds alone. There is no need for the Court to evaluate this matter any further than that. Alternatively, the Court can dismiss the case on statute of limitations grounds alone. In the unlikely event that the Court reaches the substance of Arpaio's claims on this motion to dismiss—which it need not do—

---

[1] Further confirming that Arpaio and his counsel do not believe that the rules and the Court's orders apply to them, they violated the Court's order requiring them to file their Opposition brief on February 14, 2020 (ECF No. 23), and instead filed their Opposition three days late on February 17, without getting permission from the Court. This also shortened the HuffPost Defendants' time in which to prepare and file this Reply brief.

Arpaio still fails to state a claim on which relief can be granted for any of his purported causes of action.

## ARGUMENT

### I. ARPAIO'S ADMITTED STRATEGY OF PURPOSFULLY DEFYING THIS COURT'S PRIOR ORDER AND *TAKING* HIS OWN, UNAUTHORIZED SECOND OPPORTUNITY TO ASSERT CLAIMS IS PROCEDURALLY IMPROPER AND MUST BE STOPPED.

In his Opposition, Arpaio admits that:

- This Court denied him leave to amend in *Arpaio I*, despite him requesting it—leaving no mistake that the Court foreclosed Arpaio's ability to bring further claims on these facts (*see* Opp. at 2);

- He decided—in flagrant defiance of this Court's order—to *grant himself* a second opportunity by filing a new complaint, in an entirely new action without authorization after the Court explicitly denied it (*see* Opp. at 2-3); and

- He deliberately avoided taking an appeal from this Court's order and judgment in *Arpaio I*—which was the procedurally proper route following this Court's dismissal with prejudice—based on his belief that the United States Court of Appeals for the District of Columbia Circuit is "very liberal" and "likely not favorably disposed toward towards Plaintiff" (*see* Opp. at 3).

Arpaio's litigation tactic of filing a new complaint rather than appealing the Court's decision in *Arpaio I* or seeking reconsideration of the Court's decision threatens the basic order and justice of the court system.

By filing a new complaint asserting claims previously dismissed with prejudice, Arpaio ignores and therefore violates the Federal Rules of Appellate and Civil Procedure. Federal Rule of Appellate Procedure 3(a) provides that a party may appeal a district court's decision to a court

of appeals by filing a notice of appeal with the district court.  Arpaio failed to do so here.

Federal Rule of Civil Procedure 60 sets forth the avenue of moving for relief from a judgment or

order in the district court.  Arpaio likewise rejected this option.  In his Opposition, he provides

no support for his strategy of filing a *new complaint* repeating claims already dismissed with

prejudice, nor can he.  This tactic violates the most basic rules of civil procedure, and it cannot

be condoned.  If it were condoned, then a dismissal with prejudice would mean nothing at all and

litigants could bring suits *ad infinitum* without consequence, which would also deprive litigants

the ability to rely on the finality of the Court's orders.

The only justifiable result in the face of this procedurally unsupportable action is to

dismiss this action with prejudice and without leave to amend.

## II.    THE DOCTRINES OF *RES JUDICATA* AND ISSUE PRECLUSION MANDATE THE DISMISSAL OF ARPAIO'S COMPLAINT.

### A.    Arpaio's Unauthorized Second Complaint Presents a Crystal-Clear Application of *Res Judicata* and Issue Preclusion.

A party cannot reassert claims based on the same nucleus of facts and theories previously

dismissed with prejudice; to do so would violate the doctrine of *res judicata*.  *Smalls v. U.S.*, 471

F.3d 186, 193 (D.C. Cir. 2006) (affirming Rule 12(b)(6) dismissal and denial of reconsideration

where "[i]n accordance with the doctrine of *res judicata*, the record shows that both the []

lawsuits arise from the same underlying transaction").  *Res judicata* applies where there is: (1) a

judgment on the merits in a prior suit; (2) involving the same parties; and (3) based on the same

nucleus of facts.  *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004).

When these factors are present, the duplicative case "***must*** be dismissed under Rule 12(b)(6)."

*Morgan v. United States Parole Comm'n*, 304 F. Supp. 3d 240, 251 (D.D.C. 2016) (emphasis

added).

Similarly, the doctrine of issue preclusion bars relitigation where: "(1) the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case; (2) the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007).

Each of the factors for application of *res judicata* and issue preclusion apply to Arpaio's reasserted claims. There was a judgment on the merits in *Arpaio I*, the HuffPost Defendants are the same parties Arpaio sued in that action, and Arpaio bases his causes of action on the same allegedly defamatory line from the same article as in *Arpaio I*. *See* Compl. ¶ 19. There could not be a clearer instance of a second-filed suit containing the same nucleus of facts.

Additionally, for purposes of issue preclusion, the issues decided in *Arpaio I* are repeated precisely in this action—*i.e.*, whether the allegedly actionable line from the HuffPost Article can give rise to defamation, false light and/or tortious interference claims. *Compare Arpaio I* Compl. ¶¶ 35-56 *with Arpaio II* Compl. ¶¶ 54-95. Dismissal based on issue preclusion would not impose any unfairness on Arpaio. Instead, allowing Arpaio to continue this second suit would work a fundamental unfairness on the HuffPost Defendants. *See Yamaha Corp. of Am. v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("An example of such unfairness [on application of issue preclusion] would be when the losing party clearly lacked any incentive to litigate the point in the first trial"). Accordingly, the Court should not even reach the substance of Arpaio's Complaint, and instead should dismiss for violation of the doctrines of *res judicata* and/or issue preclusion.

Courts in this district frequently dismiss complaints on this basis. In *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 106 (D.D.C. 2017), a former federal employee attempted to

pursue claims relating to her termination from the Treasury Department in two separate actions, maintaining the second one after her first had already resulted in a final judgment on the merits. The court found that *res judicata* applied and dismissed the case, holding that "[t]his matter and *Ashbourne I* plainly implicate the same cause of action. Although Plaintiff has pursued different legal claims in this matter than *Ashbourne I*, both matters arise out of Plaintiff's termination from the Treasury Department[.]" *Id.* at 104. In *Yamaha Corp.*, 961 F.2d at 254-255, the court applied issue preclusion to dismiss the case where the question of whether Yamaha had certain rights against a gray-market goods importer had already been determined in a previous action. The court explained that "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Id.* at 254 (emphasis in original). Moreover, "[p]reclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." *Id.* at 254-255.

Arpaio's Opposition brief makes no attempt to distinguish these cases cited in the HuffPost Defendants' Motion to Dismiss, nor does he address *any* of the HuffPost Defendants' authorities on *res judicata* and issue preclusion. In fact, Arpaio ignores the HuffPost Defendants' arguments entirely on issue preclusion, and as such the issue preclusion argument should be treated as conceded. *See Davis v. Transportation Security Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C. 2017) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded" (internal quotation marks and brackets omitted)). The Court can dismiss the entire action based on this concession alone.

Arpaio spends only five lines out of twenty-four pages of argument addressing the HuffPost Defendants' *res judicata* argument, but he cannot ignore its clear application mandating dismissal of this case.

### B.   Arpaio Provides No Basis for Why this Court Should Not Dismiss Based on an Application of Either *Res Judicata* or Issue Preclusion.

Arpaio's Opposition utterly fails to rebut the HuffPost Defendants' *res judicata* and issue preclusion arguments.  In attempting to address *res judicata*, Arpaio's only counterarguments are that (1) he dropped certain defendants from *Arpaio I* (but he did not drop the HuffPost Defendants); (2) he added variants of his defamation claim in his second lawsuit (but the law is clear that this Circuit treats even differently styled defamation claims as defamation); and (3) the nucleus of facts concerning actual malice is not the same as in *Arpaio I* (but that is patently wrong since the second suit, like the first, is based entirely on the same line in the same HuffPost Article).  Opp. at 3.  Arpaio's positions each fail.

### i.   Arpaio Dropping Three Defendants from the Prior Suit Makes No Difference for Purposes of *Res Judicata*.

Arpaio provides no support or authority for his one-line argument that by dropping from his second lawsuit certain defendants appearing in *Arpaio I*, he can somehow defeat *res judicata*. He cannot.  While *res judicata* generally does not apply where a plaintiff files a second suit against an entirely new party—*see Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017)—there is no rule allowing a plaintiff to proceed in violation of *res judicata* just because it drops a *different* defendant in the second suit.  There is still congruity of the party asserting *res judicata* (here, the HuffPost Defendants) against the party attempting to relitigate (Arpaio).

The fact that Arpaio dropped *other* defendants from *Arpaio I* is inconsequential in the *res judicata* analysis—which is likely why he cites no authority whatsoever in support of this argument.

> **ii.    The New Causes of Action Do Not Affect the Conclusion that Arpaio's Second Suit Is Based on The Same Common Nucleus as *Arpaio I*.**

Like all of his arguments against *res judicata*, Arpaio also provides no authority for his argument that ostensibly adding causes of action to a second suit can avoid application of the doctrine.  The court in *U.S. ex rel Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 77-78 (D.D.C. 2011), explained that where a plaintiff attempts to assert new causes of action in a second lawsuit based on the same nucleus of facts previously asserted and decided, "he fundamentally misunderstands how the doctrine of *res judicata* functions."  In *U.S. ex rel Folliard*, the Court explained that, "[a]lthough [plaintiff's] first suit did not include [the same] claims . . . those claims arose from the same nucleus of facts . . . and it is obvious that he could have easily included them in his first suit."  *Id.* at 77.  In this scenario, as in Arpaio's second-filed suit, the addition of new claims cannot avoid *res judicata*.

In any event, Arpaio's ostensibly "new" causes of action are superfluous in light of the case law cited in the HuffPost Defendants' Motion to Dismiss treating defamation by implication, general defamation, and defamation per se simply as "defamation."  *See*, *e.g.*, *Montgomery v. Risen*, 197 F. Supp. 3d 219, 266 (D.D.C. 2016) (entering summary judgment on defamation claim for lack of actual malice where plaintiff asserted claims for defamation, defamation per se, and defamation by implication).  Arpaio's Opposition makes no attempt to distinguish this case or provide a counterpoint.  Arpaio's false light and tortious interference

claims from *Arpaio I* are also repeated in this case, again regarding the same line in the same article.  *Compare Arpaio I* Compl. ¶ 24 *with Arpaio II* Compl. ¶ 19.

Courts in this Circuit have squarely rejected Arpaio's argument that adding new causes of action avoids the effects of *res judicata*.  As the court in *Gresham v. District of Columbia*, 66 F. Supp. 3d 178, 189 (D.D.C. 2014), explained in dismissing a case due to application of *res judicata*, "[b]ecause [p]laintiff does not identify any reason that prevent[ed] him from asserting [his new] claims . . . in [the first] suit, he is not entitled to another bite of the same factual apple now."  The same "factual apple" is certainly at issue in *Arpaio I* as in the instant case, and Arpaio's addition of purportedly new causes of action makes no difference in the *res judicata* analysis.  Arpaio's Complaint still alleges reputational harm from the *same line* in the *same article* as in *Arpaio I*.  He asserts the same reputational harm claims no matter how he styles them.

> **iii.     The "Nucleus of Common Fact" Inquiry Looks to The Overall Event or Transaction Giving Rise to the Case, Which Is the Same Here as in *Arpaio I*.**

Arpaio's last one-line argument regarding *res judicata*—that his new allegations do not have the same nucleus of common fact as *Arpaio I*—is plainly incorrect.  Like his other arguments, Arpaio cites no authority supporting his position.

And authority in this Circuit sharply contradicts his argument.  The question in a *res judicata* inquiry is whether the cases involve the same ***underlying transaction***, which here is the same line in the same HuffPost Article in both *Arpaio I* and *II*.  *See Smalls*, 471 F.3d at 193 (affirming Rule 12(b)(6) dismissal and denial of reconsideration where "[i]n accordance with the doctrine of *res judicata*, the record shows that both the [] lawsuits arise from *the same underlying transaction*" (emphasis added)).  As in *Ashbourne*, 245 F. Supp. 3d at 106, where the

common nucleus of fact was the former employee's termination, here, the common nucleus is the allegedly defamatory line in the HuffPost Article. That factual center of Arpaio's claims is identical in this case to *Arpaio I*. *Res judicata* clearly requires dismissal with prejudice of Arpaio's second case based on the same facts as his first.

## III. THE STATUTE OF LIMITATIONS APPLIES TO ARPAIO'S SECOND-BITE-AT-THE-APPLE CLAIMS.

The District of Columbia's one-year statute of limitations for defamation and intertwined claims[2] also plainly bars Arpaio's claims. *See*, *e.g.*, *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002) (affirming dismissal of defamation and other intertwined causes of action on statute of limitation grounds on a 12(b)(6) motion to dismiss). Arpaio spends three total lines of his brief on this unavoidable bar to his Complaint. *See* Opp. at 3. He argues that the statute of limitations was "tolled" during the time in which he filed his second lawsuit, because he filed it during the period in which he could have appealed *Arpaio I*. *Id.* He does not, and cannot, provide any legal support for this argument.

On one hand, Arpaio wants this Court to believe that this is a new case, with a new nucleus of facts and theories, in order to defeat *res judicata*. But on the other hand, Arpaio asserts that this case is essentially the *exact same* as *Arpaio I* such that he should be able to get a tolling benefit from *Arpaio I* applied to his claims in *Arpaio II*. But even on that argument,

---

[2] The District of Columbia has a one-year statute of limitations for defamation claims. *See* D.C. Code Ann. § 12-301(4) (2002); *Stith v. Chadbourne & Parke, L.L.P.*, 160 F. Supp. 2d 1, 6 (D.D.C. 2001). The same one-year statute of limitations applies to other claims, such as false light and tortious interference with prospective business relations, that are "intertwined with a defamation claim." *See Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 114 (D.D.C. 2008) (finding that tortious interference with prospective business relations claim was intertwined with defamation claim and subject to one-year statute of limitations); *Stovell v. James*, 965 F. Supp. 2d 97, 102 (D.D.C. 2013) (finding that false light claim was intertwined with defamation claim and subject to one-year statute of limitations).

Arpaio does not identify any tolling rule that would actually apply to his situation in *Arpaio I*. There, the case had already been adjudicated on the merits and dismissed with prejudice when he filed *Arpaio II* within the appeal window for *Arpaio I*.  *See*, *e.g.*, *Peek v. SunTrust Bank, Inc.*, 313 F. Supp. 3d 201, 206 (D.D.C. 2018) ("when a district court grants a Rule 12(b)(6) motion to dismiss for failure to state a claim, that dismissal operates as an adjudication on the merits" (internal quotation marks omitted)).  Moreover, this case is ***not*** an amendment of *Arpaio I* but plainly a new case, with a new case number and initiating documents, making it subject to all potential defenses, including the statute of limitations.  Arpaio cites no rule permitting a tolling of the statute of limitations for bringing related claims during the window in which a party may appeal a first action.  There is no such rule.

Thus, the Court can dismiss Arpaio's Complaint in this action on the alternative basis that it is time-barred.  Arpaio does not dispute that "District of Columbia courts adhere strictly to the one-year limitation" in defamation actions, *Jin v. Ministry of State Security*, 254 F. Supp. 3d 61, 68 (D.D.C. 2003), or that the statute of limitations runs from the date of first publication, *id.*  Nor does he argue against the HuffPost Defendants' point that the one-year statute of limitations also applies to other claims, such as false light and tortious interference with prospective business relations, that are, as here, "intertwined with a defamation claim."  *Jovanovic*, 561 F. Supp. 2d at 114.  These issues can be treated as conceded by Arpaio.  *See Davis*, 264 F. Supp. 3d at 10.

Arpaio's Complaint makes clear that the HuffPost Article at issue was published on November 5, 2018.  Compl. ¶ 18 (citing the date of publication); ECF No. 1-1 at p. 1 (indicating publication date of "11/05/2018").  Arpaio filed his Complaint in the current action more than one year later on November 7, 2019.  The one-year statute of limitations unmistakably bars Arpaio's second lawsuit, and each of its claims, based on the HuffPost Article.  While a party

10

moving to dismiss on statute of limitations grounds bears the initial burden of showing the claims are expired, "if the [moving party] meets this requirement then the burden shifts to the [non-moving party] to establish an exception to the statute of limitations." *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 175 (D.D.C. 2006).  The HuffPost Defendants demonstrated in their Motion to Dismiss that the statute of limitations has expired on Arpaio's claims, and his Opposition fails to rebut that argument with any legal authorities.  The Court should dismiss the case on statute of limitations grounds and need not address the substance of Arpaio's Complaint.  However, if the Court proceeds to the substance, Arpaio's Complaint should also be dismissed with prejudice and without leave to amend because he has failed to state a claim.

## IV.   EVEN THOUGH THE COURT NEED NOT REACH THE SUBSTANCE OF ARPAIO'S COMPLAINT, ARPAIO FAILS TO STATE A CLAIM.

### A.  Arpaio's Complaint Still Fails to Plead Actual Malice.

This Court already held in *Arpaio I* that Arpaio "does not come close to adequately pleading facts of actual malice." *Arpaio I* Order at 9.  The Court also recognized that allegations of actual malice based on political differences and "leftist enmity" are invalid, as "the motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law." *Id.* (citing *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 665 (1989)).

Arpaio adds to his second lawsuit various inconsequential allegations regarding the HuffPost Article in a failed attempt to adequately plead actual malice.  But his Opposition mistakenly tries to equate the length and repetitiveness of those allegations with the substance needed to properly allege knowledge of falsity or reckless disregard for the truth.  Arpaio's Complaint's paragraphs 31 and 32 repeat bare allegations that the HuffPost Defendants knew or had reason to know the allegedly defamatory statements were false.  Those kinds of allegations

11

of actual malice do not suffice.  *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012)

(dismissing claim where "plaintiffs merely allege in a conclusory fashion that the defamatory

statements were made and published by defendants with knowledge of their falsity or with

reckless disregard for their truth").

Paragraphs 33 through 47 of the Complaint, alleging that the HuffPost Defendants failed

to investigate the subject of the HuffPost Article, are also insufficient because a failure to

investigate, even if true, *does not* "indicate[] an awareness by [defendant] of the probable falsity

of . . . [the] statement" at issue.  *St. Amant v. Thompson*, 390 U.S. 727, 732-733 (1968).  The

Supreme Court has confirmed that "failure to investigate . . . cannot establish reckless disregard

for the truth.  Rather, the publisher must act with a high degree of awareness of . . . probable

falsity."  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 331 (1974) (internal quotations omitted).

Arpaio's allegation about the HuffPost's prior publication of an article—by a different

author—referencing Arpaio without mentioning one way or the other if he went to prison also

cannot serve as an adequate allegation of actual malice.  *See Jankovic v. Int'l Crisis Grp.*, 822

F.3d 576, 589 (D.C. Cir. 2016) ("[I]t is not enough to show that defendant *should have* known

better; instead, the plaintiff must offer evidence that the defendant *in fact* harbored subjective

doubt" (emphasis added)).  Arpaio does not link any statement in the alleged prior publication to

the necessary showing for actual malice; he simply makes conclusory allegations as if the

connections between them were self-evident.  *See* Compl. ¶ 36.  They are not.  Arpaio has not

provided any authority supporting the idea that a defamation defendant's previous *mention* of a

defamation plaintiff in a different context is sufficient to support a finding of actual malice, nor

can he.

The balance of Arpaio's other trumped-up allegations purportedly asserting actual malice amount to repetitions of his "leftist enmity" argument that the Court unambiguously rejected in *Arpaio I*.  *See Arpaio I* Order at 9; Compl. ¶¶ 40, 42.  The Court should again disregard these arguments and again find that Arpaio has not pleaded, and cannot plead, actual malice.  *See Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 46 (D.D.C. 2002) ("*Lohrenz I*") ("a media defendant's 'adversarial stance' may be 'fully consistent with professional, investigative reporting' and is not 'indicative of actual malice'") (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)).

### i.  Arpaio Admits that It "Would Be Impossible to Plead Anything More," and Should Be Denied Leave to Amend.

If it were not already evident that Arpaio cannot plead any further plausible allegations that the HuffPost Defendants acted with knowledge of falsity or reckless disregard for the truth, Arpaio himself admits that "it would be impossible to plead anything more."  Opp. at 7.  He should be denied leave to amend here, just as he was denied leave in *Arpaio I*.  Moreover, the undisputed facts actually show a *lack* of actual malice.  For instance, Arpaio does not dispute that the HuffPost Defendants promptly corrected the statement about Arpaio.  *Compare* Compl. ECF No. 1-1 at 2 (HuffPost Article with handwritten note reading "Initial Report") *with id.* at 3 (Article with handwritten note reading "Updated Report" and circling "*CORRECTION*" at the bottom of the corrected Article).  Such a correction "is significant and tends to negate any inference of actual malice."  *Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 605 (D.D.C. 1977); *see also Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978) ("the

correction published the next day by [defendant]" tends to negate "any inference of actual malice," quoting *Hoffman*).

Arpaio makes no effort to distinguish the HuffPost Defendants' in-Circuit case law holding that a retraction/correction evidences a lack of actual malice, and instead he cites various distinguishable cases, many of which are from other states and jurisdictions and are over a century old. *See* Opp. at 14-16. In *McBride v. Merrell Dow & Pharmaceuticals Inc.*, 717 F.2d 1460 (D.C. Cir. 1983), one of only two in-circuit cases Arpaio cites in arguing that a retraction does not tend to negate any inference of actual malice, the court simply stated that it did not "indicate any view" as to the effect of a retraction on actual malice, because the court found the plaintiff was not "actually . . . defamed." *Id.* at 1465. *McBride*, therefore, offers no support for Arpaio's argument as to the effect of a retraction. In the other case, *American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 830 F.2d 294, 325-326 (D.C. Cir. 1987), Arpaio cites the ***dissent*** without alerting the Court in his citation (*see Am. Postal Workers*, 830 F.2d at 315, Bork, J., dissenting), and disingenuously calls it a statement "[p]ursuant to District of Columbia law." Opp. at 15. Moreover, *American Postal Workers* is not a defamation case, but an employee First Amendment speech case and has no application to this action.

Further, *Kerwick v. Orange County Publication Division of Ottoway Newspapers, Inc.*, 53 N.Y.2d 625, 626 (1981), which Arpaio cites, is a one-paragraph-long opinion that does not provide the support Arpaio suggests it does. Specifically, the court in *Kerwick* first confirmed that a retraction that was promptly published might be considered evidence of lack of actual malice, but in the instant action, where the publisher's editor admitted that his conduct did not meet the standards for information gathering and dissemination, the existence of such undisputed evidence precluded the grant of summary judgment on the issue of actual malice. *Id.* Arpaio's

14

other citations to case law similarly fail to support his point and, in some instances, actually support the HuffPost Defendants' position.  *See Storey v. Wallace*, 60 Ill. 51, 56 (1871) (opinion did ***not*** discuss actual malice); *Koontz v. Weide*, 111 Kan. 709 (1922) ("a retraction . . . [is] received as tending to show an absence of malice"); *Whitcomb v. Hearst Corp.*, 329 Mass. 193, 198 (1952) (discussing a retraction's mitigation effect on damages where "the plaintiff ***did not claim actual malice***, and no special damage was claimed" (emphasis added)); *Davis v. Marxhausen*, 103 Mich. 315, 318-319 (1894) (discussion of nineteenth-century case where Kansas law applied that "presumes that the article was published maliciously," and evidence of a retraction could not rebut that presumption); *Dixie Fire Ins. Co. v. Betty*, 101 Miss. 880 (1912) (***not*** discussing actual malice); *Di Lorenzo v. New York News*, 432 N.Y.S.2d 483, 483 (1980) ("retraction in its traditional role is considered some evidence of lack of ill will").  Across the board, Arpaio's cited case law does not hold what he purports.

Moreover, Arpaio's extensive argument on this issue is misplaced, as regardless of whether a retraction can show a lack of actual malice, it is Arpaio's burden at this stage to adequately plead actual malice to begin with.  *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003) ("*Lohrenz II*") (noting the "heavy burden" public-figure defamation plaintiffs face in pleading actual malice).  He has not done, and cannot do, so here.[3]

### B.  The HuffPost Article was Substantially True.

The HuffPost Defendants' substantial truth argument provides another basis for dismissing Arpaio's Complaint.  The Court did not accept the HuffPost Defendants' substantial

---

[3] On February 27, 2020, the Ninth Circuit Court of Appeals issued an Opinion in *United States v. Arpaio*, --- F.3d ---, No. 17-10448 (9th Cir. Feb. 27, 2020), denying Arpaio's appeal to vacate his finding of guilt for criminal contempt of court.  *See also* Arpaio's Supplement of New Case Authority, ECF No. 30, Ex. 1.  Arpaio's Supplement of New Case Authority quotes a footnote from the Ninth Circuit's Opinion stating that while Arpaio was "[c]olloquially" convicted of

truth argument in *Arpaio I*; *see Arpaio I* Order at 7-8; but the HuffPost Defendants respectfully

assert it again for the record. *Cf. Campbell v. District of Columbia*, 894 F.3d 281, 287 (D.C. Cir.

2018) (arguments must be made in the lower court to preserve them for appeal).

Arpaio's Opposition does nothing to contradict the HuffPost Defendants' arguments

regarding the doctrine of substantial truth.  He does not address or dispute the fact that he was found

in criminal contempt of court.  Mot. at 4.  He also does not dispute that, by accepting a pardon, he

admitted his guilt.  Mot. at 5.  Nor does he dispute that people found in criminal contempt are

routinely sentenced to prison.  Mot. at 4.  Instead, he asserts with no support that the allegedly

defamatory statement should not be considered "minor" or "immaterial."  Opp. at 18.

---

contempt, he was not technically "convicted" because his sentence was never imposed.  *Id.* at 6
n.1.  The Ninth Circuit's Opinion has no impact as to the HuffPost Defendants' Motion to
Dismiss, however, for three reasons.  First, the line in the HuffPost Article on which Arpaio
bases his claims does not use the word "convicted" or any variation thereof.  *See* Compl. ¶ 19.
As such, it makes no difference whether Arpaio was "technically" or "[c]olloquially" convicted
of contempt of court.  *See* ECF No. 30, Ex. 1 at 6 n.1.  Second, defamation does not hinge on the
technical, legal meanings of words, but instead considers the colloquial or common meaning.
*See*, *e.g.*, *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984) ("we will analyze the common
usage or meaning of the specific language of the challenged statement").  As the Ninth Circuit's
Opinion itself stated, Arpaio *was* convicted of criminal contempt within the colloquial meaning
of the word "convicted."  ECF No. 30, Ex. 1 at 6 n.1 (also citing news articles colloquially
referring to Arpaio as being convicted of criminal contempt and acknowledging that even the
Ninth Circuit has not "always used the term with precision"); *see also id.* at 12.  Moreover, in
making its findings, the Ninth Circuit *affirmed* the District Court's holding in *United States v.
Arpaio*, Case No. CR-16-01012-001-PHX-SRB, 2017 WL 4839072 (D. Ariz. Oct. 19, 2017),
which the HuffPost Defendants cite in their Motion to Dismiss.  Mot. at 5 (quoting *United States
v. Arpaio* at *1; "A presidential pardon must be accepted to be effective," and "a pardon 'carries
an imputation of guilt; acceptance a confession of it,'" and noting that even the pardon referred
to Arpaio's "conviction").   Third, the test for actual malice is measured based on the time of
publication.  *See Bose Corp. v. Consumer Union*, 466 U.S. 485, 512 (1984) (ruling that the actual
malice standard focuses solely on the defendant's *actual* state of mind "at the time of
publication").  A court's finding in 2020 regarding the technical nature of Arpaio being found in
contempt of court cannot play any role in the actual malice inquiry for an article written in 2018.
For these reasons, the Court should disregard Arpaio's Supplement of New Case Authority, as
the Ninth Circuit's Opinion issued on February 27, 2020, does not support Arpaio's arguments
against the HuffPost Defendants' Motion to Dismiss.

Arpaio does not address substantial truth as applied to the facts of this case.  A publication will be constitutionally protected if the "gist" and "sting" of the allegedly defamatory publication would not produce a different effect in the mind of the reader than would the literal truth.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).  The HuffPost Defendants offered analogous case law demonstrating that the "gist" and "sting" of the allegedly defamatory statement is that Arpaio was found in criminal contempt, which is undisputedly true regardless of whether he served time in prison.  *See* Mot. at 23-27 (citing cases).  Arpaio completely ignores these authorities.  The gist and sting of the allegedly defamatory statement in the HuffPost Article is that Arpaio was found in criminal contempt, which carries prison time, and Arpaio failed to rebut that showing in every respect.  As such, the substantial truth doctrine provides another independent basis for dismissing Arpaio's claims.

## V.     ARPAIO'S CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AND FALSE LIGHT NECESSARILY FAIL.

As a starting point, these causes of action are equally subject to dismissal based on the doctrines of *res judicata* and issue preclusion, and because they are time-barred based on the relevant one-year statute of limitations.  *See Morgan*, 304 F. Supp. 3d at 251 (ruling that causes of action reasserted in a second action based on the same nucleus of facts *must* be dismissed pursuant to *res judicata*); *Jovanovic*, 561 F. Supp. 2d at 114 (claims such as false light and tortious interference with prospective business relations are subject to a one-year statute of limitations for publication torts where they are "intertwined with a defamation claim").  Even if the Court reaches the merits of these claims, rather than dismissing for their procedural insufficiency, Arpaio's ancillary claims fail for the same reason the defamation claims fail.  Arpaio completely fails to contradict any of the HuffPost Defendants' cited case law and

argument on his tortious interference and false light claims.  Instead, Arpaio lists a chaotic

smattering of cases that do not support his claims' viability.

**First,** Arpaio has no answer for the argument that his tortious interference and false light

claims fail because they are duplicative of his defamation claim.  *See* Mot. at 27.  This

straightforward and well-established rule requires the dismissal of ancillary claims based on the

same facts as a faulty defamation claim.  *See Arpaio I* Order at 12 ("the First Amendment

considerations governing the dismissal of Mr. Arpaio's defamation claims also require the dismissal

of his tortious interference and false light claims.").  This is because the "First Amendment

considerations that apply to defamation … apply also to [plaintiffs'] counts for false light and

tortious interference."  *Farah v. Esquire Magazine,* 736 F.3d 528, 540 (D.C. Cir. 2013).

**Second,** Arpaio's tortious interference claim fails because he cannot support his argument

that he expected to receive campaign donations from groups that had never given him money before

for a future run for political office that no one knew he was planning.  Rather than address his

failure to allege a valid business expectancy, *see Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978)

(affirming grant of motion to dismiss and holding that business expectations must be "commercially

reasonable to anticipate"), Arpaio cites inapplicable cases that do not help his cause.  In *Kimmel v.*

*Gallaudet University*, a formerly tenured professor sued a university for tortious interference after

she experienced a hostile work environment and reduced job opportunities.  639 F. Supp. 2d 34, 45

(D.D.C. 2009).  She also claimed she had lost future opportunities to work in academia.  Arpaio is

not the equivalent of a tenured professor; his foray into national politics following his being found

in criminal contempt was dismal, and—unlike a tenured professor—he has no basis for believing it

would be any different were he to run for the US Senate again in the future.  And in *Nanko*

*Shipping*, *USA v. Alcoa, Inc*., which Arpaio also cites, the District Court did not allow a plaintiff's

tortious interference claim to proceed even though the plaintiff identified specific contracts that were subjected to alleged interference.[4]  107 F. Supp. 3d 174, 183 (D.D.C. 2015).  Here, on the other hand, Arpaio identifies no contracts.  Instead, he simply points to two political action groups from which he *hoped* he *might* receive money *if* he were to run for office again.

**Third**, given that he was found in criminal contempt, Arpaio does not articulate in support of his false light claim how it would be "highly offensive" to incorrectly say he went to prison.  Arpaio cites *Benz v. Washington Newspaper Publishing Co., LLC*, No. 05-1760, 2006 WL 2844896 (D.D.C. Sept. 29, 2006), and *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990), for the general proposition that a "highly offensive" statement is an element of the false light tort, but he does not explain how the HuffPost Defendants' Article's error was "highly offensive."  Arpaio does not compare *Benz* or *White* to the facts of this case, and in fact those cases are distinguishable.  In *Benz*, the plaintiff adequately alleged false light based on an article stating that she used her job in the media to obtain romantic and sexual relationships with powerful people for personal gain.  2006 WL 2844896 at *6.  And in *White*, the plaintiff alleged that police statements would cause others to infer plaintiff had used an illegal drug.  909 F.2d at 522.  These allegations of offensive speech are nothing like the alleged false statement in this case, where the HuffPost Defendants reported that Arpaio was sent to prison for a crime that he has *admitted* to and for which prison time is routinely ordered.  Aside from the threshold reasons Arpaio's false light claim should be dismissed, he also cannot show that the alleged false light in which he has been placed would be "highly offensive" to a reasonable person who was also found in criminal contempt of court.

---

[4] The *Nanko Shipping* decision Arpaio cites was reversed on other grounds and remanded by the District of Columbia Circuit Court of Appeals.  *See Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461 (D.C. Cir. 2017).

19

For these reasons, in addition to the bases of *res judicata*, issue preclusion, and the statute of limitations, Arpaio's tortious interference and false light claims fail as a matter of law and must be dismissed.

## CONCLUSION

For the reasons discussed in their Motion to Dismiss and in this Reply, the HuffPost Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety and dismiss each of the claims against them with prejudice. Because Arpaio's re-filed Complaint is procedurally untenable and violates basic rules of civil procedure, because the Complaint is time-barred, and for the substantive reasons discussed herein, Arpaio's claims should be dismissed with prejudice and without leave to amend.

Dated:  February 28, 2020                    Respectfully submitted,

/s/ Jean-Paul Jassy
Jean-Paul Jassy (Admitted *Pro Hac Vice*)
William T. Um (Admitted *Pro Hac Vice*)
Elizabeth H. Baldridge (Admitted *Pro Hac Vice*)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile:  (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com


Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants*
*TheHuffingtonPost.com, Inc. and Kevin Robillard*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, a copy of the foregoing Reply in Support of the HuffPost Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) was electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Larry E. Klayman
**FREEDOM WATCH, INC..**
202 Pennsylvania Avenue, NW
Suite 345
Washington, DC 20006
Telephone: (561) 558-5336
leklayman@gmail.com

*Attorneys for Plaintiff Joseph Michael Arpaio*

Alison Schary
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
Telephone: (202) 973-4248
Facsimile: (202) 973-4499
alisonschary@dwt.com

Elizabeth A. McNamara
Rachel F. Strom
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Telephone: (212) 489-8230

*Attorneys for Defendants*
*Tessa Stuart & Rolling Stone*

/s/ Elizabeth Baldridge
Elizabeth Baldridge
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
ebaldridge@jassyvick.com

*Attorneys for Defendants*
*TheHuffingtonPost.com, Inc. and Kevin Robillard*