APRIL 01, 2020
11:38am PT by Eriq Gardner

# Media Companies Must Face Coal Executive's $12 Billion Libel Suit



Jeff Swensen/Getty Images

Don Blankenship

 

Don Blankenship alleges that he lost a race for U.S. Senate because he was called a "felon."

Don Blankenship, the former chief of Massey Energy who unsuccessfully attempted to run for Senate in West Virginia two years ago, has received the green light to proceed in a defamation suit that blames quite a number of individuals and media organizations for his political loss. Although a federal judge has cut more than a dozen journalists from the suit for lack of personal jurisdiction, Blankenship gets to move forward against 20 defendants including ABC, CNN, Fox News, MSNBC, *The Washington Post*, and even the National Republican Senatorial Committee.

In his complaint, Blankenship explains, "We live in an age of weaponized defamation where lies can be repeated in more ways at more times in more places with more speed than anyone could possibly have imagined even five years ago."

His suit concerns the aftermath of a 2015 trial where he faced charges related a 2010 explosion at one of his company's mines. A jury found him not guilty of the most serious counts, but he was convicted of a misdemeanor for conspiring to violate safety standards. The reason why big media outlets are now defendants largely comes down to references to him as a "felon" or "convicted felon" — a technically imprecise assessment given that he was cleared of the felony charges.

Blankenship and his demand for $2 billion in actual damages and $10 billion in punitive damages has ended up in the courtroom of U.S. District Court Judge John Copenhaver, who is 94 years old and was the last acting judge appointed by Gerald Ford before he took senior status last year. He's nevertheless ruling on a motion to dismiss.

We won't fully go through all 80 pages of the opinion (read in full here), but Judge Copenhaver repeatedly comes to the conclusion that Blankenship can state a viable claim for defamation. He shrugs off the defendants' contention that challenged statements were substantially true, and drawing inferences, accepts that Blankenship can plausibly allege that

defendants published statements with actual malice. For example, the judge writes, "The plaintiff's conviction is a matter of public record, which these political reporters should have been aware to consult."

The opinion also permits Blankenship to pursue another claim — false light invasion of privacy.

To defendants who argued that their statements hardly rose to a "major misrepresentation" that would offend the masses, Copenhaver responds, "Calling the plaintiff a 'felon' could place him in a false light that a reasonable person could consider 'highly offensive.'"

The newest decision may be contrasted with one a few months ago in a libel suit brought by Joe Arpaio. There, a judge ruled that a "mistake in legal nomenclature" wasn't enough to hold CNN liable.

The "lamestream media" finds itself in bed, or rather court, with "swamp" Republicans, led by Senate Majority Leader Mitch McConnell.

Here, the judge rules, "The plaintiff has alleged enough facts to support the plausible existence of a civil conspiracy between the NRSC and other defendants. The plaintiff has alleged a common plan between multiple people as part of the meetings between Senate Republicans and the NRSC. The alleged purpose of the common plan was to defame the plaintiff and place him in a false light, and thereby defeat his candidacy for the West Virginia Senate Republican primary election."

ADVERTISEMENT



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP,

     Plaintiff,

v.                     Civil Action No. 2:19-cv-00236

ANDREW NAPOLITANO et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are nineteen (19) motions to dismiss the First Amended Complaint in this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction and/or Rule 12(b)(6) for failure to state a claim.

## I.   Background

The plaintiff, Don Blankenship, initiated this action on March 14, 2019 in the Circuit Court of Mingo County, West Virginia, alleging claims of defamation and false light invasion of privacy against several media organizations and reporters.[1]

---

[1] The plaintiff has named 105 individual and organizational defendants across the United States, including media organizations, political organizations, news anchors, news reporters, writers, bloggers, and individuals involved in politics. Approximately half of the named defendants have been dismissed from the case so that fifty-two (52) named defendants remain.

See ECF No. 1.  The action was removed to this court pursuant to 28 U.S.C. § 1441 based on the original jurisdiction of this court under 28 U.S.C. § 1332 (diversity of citizenship jurisdiction).[2]  Id.

Following an explosion in a West Virginia mine on April 5, 2010 that resulted in the death of twenty-nine (29) miners, the United States government initiated an investigation into the cause of the explosion.  See First Am. Compl., ECF No. 14 ("Compl.") ¶¶ 136-41.  While the plaintiff was not charged with the death of the miners, the government later charged the plaintiff with three felonies, including conspiracy to defraud the federal Mine Safety and Health Administration, and one misdemeanor for conspiracy to violate federal mine safety laws.[3]  See id. ¶ 141.  On December 3, 2015, a federal jury found the plaintiff innocent of the felony charges but convicted him of the misdemeanor offense.  Id. ¶ 143.  The plaintiff was sentenced to one year in prison, which he served and from which he was released in the spring of 2017.  Id. ¶¶ 144-45.

---

[2] The plaintiff filed two similar cases alleging defamation and false light invasion of privacy against a media outlet and political figure that were removed to this court.  See Blankenship v. Boston Globe Media Partners, 2:19-cv-589; Blankenship v. Trump, 2:19-cv-00549 (alleging the above claims plus conspiracy to commit the same).

[3] The criminal case in which the plaintiff was charged is United States v. Blankenship, 5:14-cr-00244-1 before this court.

In January 2018, the plaintiff announced his campaign to run as a Republican for a United States Senate seat in West Virginia. Id. ¶ 146. The plaintiff lost his bid for the Republican party nomination in the primary election on May 8, 2018. Id. ¶ 190. The plaintiff alleges that media coverage was responsible for his loss due to allegedly defamatory statements about the plaintiff that referred to him as a "felon" or a "convicted felon,"[4] despite the fact that he was cleared of the felony charges and was only convicted of the misdemeanor offense. See id. ¶¶ 152-190. The plaintiff further alleges that there was an organized effort to defeat his campaign, in part through the allegedly defamatory media coverage, see id. ¶¶ 150-90, and that the alleged defamatory media coverage continued after the primary election, see id. ¶¶ 191-221.

The plaintiff alleges that these defamatory statements injured his reputation, prevented him from pursuing other businesses and opportunities, and were a material cause of his loss in the primary election. Id. ¶¶ 24, 190. In addition, the plaintiff alleges that many of these statements were made in conjunction with reference to the mine disaster and therefore had the additional effect, through inference, implication, innuendo and/or insinuation, of falsely attributing to him

---

[4] The exact reference varies among the defendants.

responsibility for murder.  Id. ¶¶ 23, 228, 242.  The plaintiff filed this suit alleging four causes of action: (1) defamation, (2) conspiracy to defame the plaintiff, (3) false light invasion of privacy, and (4) conspiracy to commit false light invasion of privacy.  See id. ¶¶ 222-50.  Nineteen (19) motions to dismiss have been filed by defendants under Rule 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(4) and (5) for insufficient service of process, and/or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[5]

## II.  Legal Standard

### A.  Rule 12(b)(2) Motion to Dismiss

Rule 12(b)(2) permits a defendant to challenge a complaint for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  When a district court considers a Rule 12(b)(2) motion based on the contents of the complaint and supporting affidavits without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing a prima facie case of jurisdiction.  Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935

---

[5] Five other motions to dismiss are moot because the named defendants have been dismissed by court order or joint stipulation.  See ECF Nos. 181, 200, 210, 224, 254.  In total, all of the motions to dismiss represent forty-seven (47) of the fifty-two (52) named defendants remaining in this case.  The following defendants did not file motions to dismiss: 35th Inc.; Hayride Media, LLC; Jim Heath; Matt Howerton; and Chris Jones.

F.3d 211, 226 (4th Cir. 2019); <u>Universal Leather, LLC v. Koro
AR, S.A.</u>, 773 F.3d 553, 558 (4th Cir. 2014).  The standard or
review is by a preponderance of the evidence.  <u>Mylan Labs., Inc.
v. Akzo, N.V.</u>, 2 F.3d 56, 60 (4th Cir. 1993).  The court may
consider affidavits submitted by both parties, but it must
resolve factual disputes and draw all reasonable inferences in
favor of the party asserting jurisdiction.  <u>Universal Leather</u>,
773 F.3d at 560; <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir.
1989) ("[T]he court must construe all relevant pleading
allegations in the light most favorable to the plaintiff, assume
credibility, and draw the most favorable inferences for the
existence of jurisdiction.").  The court must then determine
whether the facts proffered by the party asserting jurisdiction
make out a case of personal jurisdiction over the party
challenging jurisdiction.  <u>Sneha Media & Entm't, LLC v.
Associated Broad. Co. P Ltd.</u>, 911 F.3d 192, 196–97 (4th Cir.
2018).

        B.    <u>Rule 12(b)(6) Motion to Dismiss</u>

        Federal Rule of Civil Procedure 8(a)(2) requires that
a pleader provide "a short and plain statement of the claim
showing . . . entitle[ment] to relief."  Fed. R. Civ. P.
8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).  The
required "short and plain statement" must provide "'fair notice

of what the . . . claim is and the grounds upon which it
rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545
(2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957),
<u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 563).

Rule 12(b)(6) correspondingly permits a defendant to
challenge a complaint that "fail[s] to state a claim upon which
relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to
survive a motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"[6] <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).
The "[f]actual allegations [in the complaint] must be enough to
raise a right to relief above the speculative level" such that
relief is "plausible." <u>Twombly</u>, 550 U.S. at 555-56. A
"formulaic recitation of the elements of a cause of action will
not do." <u>Id.</u> at 555.

"A motion to dismiss tests the sufficiency of a
complaint." <u>Occupy Columbia v. Haley</u>, 738 F.3d 107, 116 (4th
Cir. 2013). The court's evaluation is therefore "generally
limited to a review of the allegations of the complaint itself.

---

[6] "[T]he usual standards of notice pleading apply in defamation
cases." <u>Hatfill v. N.Y. Times Co.</u>, 416 F.3d 320, 329 (4th Cir.
2005).

However, [the court] also consider[s] documents that are explicitly incorporated into the complaint by reference . . . ." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 551 U.S. at 94 (quoting Twombly, 550 U.S. at 555–56). The court must "draw all reasonable inferences in favor of the plaintiff," Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md., 684 F.3d 462, 467 (4th Cir. 2012), but the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences, Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).

Determining plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged wrongdoing. Twombly, 550 U.S. at 545. "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in

support of his claim entitling him to relief." <u>Edwards v. City</u>
<u>of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

## III. Applicable Law

Federal courts exercising jurisdiction through
diversity of citizenship must apply state substantive law. <u>Erie</u>
<u>R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>see also</u>
<u>Stonehocker v. Gen. Motors Corp.</u>, 587 F.2d 151, 154 (4th Cir.
1978) ("[F]ederal courts are to apply the substantive law the
State in which they are sitting would apply if the case had
originated in a State court."). Removal in this case was based
on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[7]
The court therefore considers relevant case law from the Supreme
Court of Appeals of West Virginia.

### A. Personal Jurisdiction

Rule 4(k)(1)(A) of the Federal Rules of Civil
Procedure authorizes a federal court to exercise personal
jurisdiction over a defendant in the manner provided by state
law. <u>See</u> <u>ESAB Group, Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 622

---

[7] The plaintiff moved to remand this case to the Circuit Court of
Mingo County, <u>see</u> ECF No. 5, but the court denied the motion, in
part, because a forum defendant had not been "properly joined
and served" before removal of the case, <u>see</u> ECF No. 133.

(4th Cir. 1997).  For a district court to assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute, and (2) the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993).  Where the state's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."  Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996).

 The applicable state law in West Virginia is the West Virginia long-arm statute, W. Va. Code § 56-3-33.  Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 525 (4th Cir. 1987).  The West Virginia long-arm statute is "coextensive with the full reach of due process."  In re Celotex Corp., 124 F.3d 619, 627–28 (4th Cir. 1997).  The statutory inquiry therefore merges with the constitutional inquiry, and the court's analysis centers on whether exercising personal

jurisdiction over a defendant is consistent with the Due Process Clause. Id.; see also J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 903 n.8 (2011) (noting that the West Virginia "[s]tate long-arm provision[] allow[s] the exercise of jurisdiction subject only to a due process limitation").

A court's exercise of jurisdiction over a non-resident defendant comports with the due process requirement if the defendant has "certain minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); see also Carefirst of Maryland, 334 F.3d at 397. In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). "Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). For that reason, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

A court may exercise personal jurisdiction over a non-resident defendant of the forum state by finding either (a) general jurisdiction, or (b) "specific jurisdiction based on conduct connected to the suit." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). General personal jurisdiction is considered "all purpose" jurisdiction as it "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." Walden v. Fiore, 571 U.S. 277, 284 n.6 (2014). General personal jurisdiction requires "continuous and systemic" contacts with the forum state. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir. 2016). The "paradigm forum" for general personal jurisdiction over a natural person is the person's domicile. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). The "paradigm forums" for a corporation are its place of incorporation and principal place of business. Id. A natural person's domicile is the state in which that person lives "with intent to make it a fixed and permanent home." Comm'r of Internal Revenue v. Swent, 155 F.2d 513, 515 (4th Cir. 1946); see also Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a

certain state of mind concerning one's intent to remain there.").[8]

Specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." <u>Goodyear Dunlop Tire Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). Specific personal jurisdiction requires that the defendant have "purposefully established minimum contacts in the forum State" such "that [the defendant] should reasonably anticipate being haled into court there." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." <u>Walden</u>, 571 U.S. at 284. The question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." <u>Id.</u> at 290.

The Fourth Circuit considers three factors in determining specific personal jurisdiction: "(1) the extent to which the defendant has purposefully availed itself of the

---

[8] A natural person's domicile differs from their residence in that a residence simply requires bodily presence as an inhabitant in a given place. <u>Swent</u>, 155 F.2d at 515. A natural person may have multiple residences but only has one domicile. <u>Id.</u>; <u>see also Holyfield</u>, 490 U.S. at 48 (noting that a person "can reside in one place but be domiciled in another").

privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." <u>Carefirst of Maryland</u>, 334 F.3d at 397 (internal quotation marks omitted). The plaintiff must prevail on each prong. <u>See Consulting Eng'rs</u>, 561 F.3d at 278-79.

The Fourth Circuit has consistently dismissed suits against a non-resident defendant who published information on the Internet for an audience outside the forum state. In <u>ALS Scan</u>, the Fourth Circuit affirmed the dismissal of a suit for lack of personal jurisdiction wherein a Maryland corporation filed suit against a Georgia-based Internet Service Provider for enabling a website owner to publish photographs on the Internet in violation of the Maryland corporation's copyrights. 293 F.3d at 709. The court concluded that:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

<u>Id.</u> at 714. "Under this standard, a person who simply places information on the Internet does not subject himself to

jurisdiction in each State into which the electronic signal is transmitted and received." Id.

In Young v. New Haven Advocate, the Fourth Circuit similarly found no personal jurisdiction over Connecticut defendants who posted news articles on the Internet that, in the context of discussing a Connecticut policy of housing prisoners in Virginia institutions, allegedly defamed the warden of a Virginia prison. 315 F.3d 256, 258-59 (4th Cir. 2002). The court determined that "the fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience." Id. at 263. "Something more than posting and accessibility is needed" and the newspaper "must, through the Internet postings, manifest an intent to target and focus on Virginia readers." Id. The court found that the "general thrust and content" of the newspaper's websites was "decidedly local" and did not manifest intent of targeting Virginia readers. See id. at 263-64. The court also found that the focus of the articles in question was the Connecticut prisoner transfer policy and its impact on the transferred prisoners and their families back home in Connecticut. Id. ("Connecticut, not Virginia, was the focal point of the articles.").

14

Other courts have similarly refrained from exercising personal jurisdiction over a non-resident defendant if the allegedly defamatory publication did not target a forum state audience. See, e.g., Busch v. Viacom Int'l, Inc., 477 F. Supp. 2d 764, 772 (N.D. Tex. 2007) (finding no personal jurisdiction over Jon Stewart in defamation case because "[t]he piece was not directed at viewers of The Daily Show in Texas, but was broadcast nationwide" and there was no evidence that Texas was the "focal point"); Revell v. Lidov, 317 F.3d 467, 475 (5th Cir. 2002) (finding no personal jurisdiction in defamation suit arising out of defendant's post on an internet bulletin board hosted by a New York university because "the post to the bulletin board here was presumably directed at the entire world . . . certainly it was not directed specifically at Texas").

In Calder v. Jones, the Supreme Court considered a libel case regarding a magazine article written by Florida residents about a California actress. 465 U.S. at 784-85. The article alleged that the actress had a drinking problem that interfered with her career. See id. at 788 n.9. The Court concluded that the writers were subject to personal jurisdiction in California because "California is the focal point both of the story and of the harm suffered," and the writers' "intentional, and allegedly tortious, actions were expressly aimed at

15

California." Id. at 789. The Court reached this conclusion
because the story "concerned the California activities of a
California resident . . . whose television career was centered
in California," the writers relied on California sources, and
"the brunt of the harm, in terms both of [the actress']
emotional distress and the injury to her professional
reputation, was suffered in California." See id. at 788–89.
The Court also noted that the magazine has its largest
circulation in California, by a considerable amount. See id. at
785, 790. Under the circumstances, the Florida residents must
have "reasonably anticipate[d] being haled into court" in
California to answer for the truth of their statements in the
article. Id. at 790.

    B.    Defamation

        Defamation is "[a] false written or oral statement
that damages another's reputation." Pritt v. Republican Nat.
Comm., 557 S.E.2d 853, 861 n.12 (W. Va. 2001) (quoting Black's
Law Dictionary 427 (7th ed. 1999)). Defamation published in
written form constitutes libel. Syl. Pt. 8, Greenfield v.
Schmidt Baking Co., 485 S.E.2d 391, 394 (W. Va. 1997). West
Virginia law identifies three types of plaintiffs in defamation
cases: (1) public officials and candidates for public office,
(2) public figures, and (3) private individuals. Syl. Pt. 10,

16

Hinerman v. Daily Gazette Co., 423 S.E.2d 560, 564 (W. Va. 1992). The plaintiff in this case qualifies as a candidate for public office, and may also qualify as a public figure in West Virginia based on his "prominence or notoriety." See State ex rel. Suriano v. Gaughan, 480 S.E.2d 548, 556 (W. Va. 1996); see generally Wilson v. Daily Gazette Co., 588 S.E.2d 197 (W. Va. 2003) (discussing types of public figures in defamation suits).

Public officials or candidates for public office must prove three elements by clear and convincing evidence in order to recover in a defamation action:

> (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false.

Syl. Pt. 1, Hinerman, 423 S.E.2d at 563 (emphasis omitted); see also Chafin v. Gibson, 578 S.E.2d 361, 366-68 (W. Va. 2003) (applying the three elements); Pritt, 557 S.E.2d at 861-63 (affirming that public officials must prove (1) a defamatory statement, (2) that was false, and (3) was published with actual malice). Public figures must also prove actual malice. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 244 (1986); Syl. Pt. 11, Pritt, 557 S.E.2d at 855. In addition, "a court should

17

not consider words or elements in isolation, but should view them in the context of the whole article." See Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 87 (W. Va. 1983) (quoting Rinsley v. Brandt, 700 F.2d 1304, 1310 (10th Cir. 1983)).

### (1) Defamatory Statement

Defamatory statements tend to defame the plaintiff and "reflect shame, contumely, and disgrace" upon them. See Syl. Pt. 1, Sprouse v. Clay Commc'n, Inc., 211 S.E.2d 674, 679 (W. Va. 1975). A statement may be described as defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Crump, 320 S.E.2d at 77 (citing Restatement (Second) of Torts § 559 (1977)). Defamation may be accomplished directly through direct reference, or indirectly through inference, implication, innuendo, or insinuation. See id.

"A court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." Syl. Pt. 6, Long v. Egnor, 346 S.E.2d 778, 780 (W. Va. 1986). In making this assessment, the court must decide whether the allegedly defamatory statement could be construed as a statement of fact or opinion. Pritt, 557 S.E.2d

at 861; Syl. Pt. 7, <u>Long</u>, 346 S.E.2d at 780.  A statement of
opinion that does not contain a "provably false assertion of
fact" is entitled to full constitutional protection.  Syl. Pt.
4, <u>Maynard v. Daily Gazette Co.</u>, 447 S.E.2d 293, 294 (W. Va.
1994); <u>see also</u> Syl. Pt. 7, <u>Long</u>, 346 S.E.2d at 780
("[S]tatements of opinion are absolutely protected under the
First Amendment and cannot form the basis for a defamation
action.").

Statements falsely charging a person with the
commission of any crime, whether a felony or a misdemeanor, are
actionable as defamation <u>per se</u> in West Virginia.  <u>See</u> <u>Milan v.
Long</u>, 88 S.E. 618, 619 (W. Va. 1916); <u>see also</u> <u>Mauck v. City of
Martinsburg</u>, 280 S.E.2d 216, 219 n.3 (W. Va. 1981) ("At common
law, defamation per se includes only imputations of a crime of
moral turpitude . . . ."); <u>Colcord v. Gazette Pub. Co.</u>, 145 S.E.
751, 753 (W. Va. 1928) ("Any printed or written publication
imputing to another a crime or moral delinquency is actionable
per se, without proof of special damages."); <u>Alderson v.
Kahle</u>, 80 S.E. 1109, 1110 (W. Va. 1914) ("The words 'thief' and
'robber' are clearly actionable at common law, for they import
guilt of criminal offenses.").

Based on the applicable law, all challenged statements
in this case that identify the plaintiff as a "felon,"

"convicted felon," or "felonious" are capable of a defamatory meaning because they reflect shame and disgrace on the plaintiff. The statements may also be considered defamatory <u>per se</u> because they impute a felony conviction. The defendants do not argue that any of their statements are opinions, but to the extent that any of the statements may be considered opinions, they are based on a "provably false assertion of fact" and thus are not absolutely protected under the First Amendment.

   (2)  *Falsity*

On the issue of falsity:

[West Virginia libel law] overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Syl. Pt. 4, <u>Gaughan</u>, 480 S.E.2d at 551. "[I]f something is 'substantially' true in overall effect, minor inaccuracies or falsities will not create falsity." <u>Matter of Callaghan</u>, 796 S.E.2d 604, 627 (W. Va. 2017).

The plaintiff in this case was convicted of conspiring to violate federal mine safety laws in violation of 18 U.S.C. § 371 and 30 U.S.C. § 820(d), and was sentenced to the "maximum permitted by law" of one-year imprisonment. <u>See</u> <u>United States</u>

v. Blankenship, 846 F.3d 663, 667 (4th Cir. 2017), cert. denied, 138 S. Ct. 315 (2017); ECF No. 333-1 at 45:16-20, 76:7-19 (Hr'g Tr.).[9]  The statutes under which the plaintiff was convicted do not state whether the offense is a misdemeanor or a felony.  A criminal offense that is not classified as a misdemeanor or a felony in the relevant statute is classified in accordance with 18 U.S.C. § 3559 based on "the maximum term of imprisonment authorized."  See 18 U.S.C. § 3559.  A term of imprisonment of "one year or less" is a misdemeanor, while a term of "more than one year" is a felony.  See 18 U.S.C. § 3559(a).

        The defendants largely argue that the references to "felon" are "substantially true" and do not render their statements materially false.  See, e.g., ECF No. 196 at 17-18 (CNN); ECF No. 221 at 7-10 (MSNBC); ECF No. 352 at 19 (Breitbart).  The defendants also argue that passing references to the plaintiff as a "felon" would have no different effect on the mind of a viewer than the plaintiff's conviction of conspiring to violate federal laws and the resulting maximum possible sentence of one year in prison.  See, e.g., ECF No. 196 at 17 (CNN).

---

[9] The plaintiff submitted the transcript of the sentencing hearing for his criminal case as part of a request for judicial notice.  See ECF No. 333-1.

All the defendants' statements identifying the plaintiff as a "felon" are materially false. The term "felon" is an objective label with a clear legal meaning –– having been convicted of a crime with a term of imprisonment of more than one year. A person either is or is not a felon; there is no in between or room for "substantial truth." The United States Code clearly outlines the difference between a felony and a misdemeanor even when the criminal statute does not clarify the category of the crime. The different consequences associated with being a felon, including that "felons can suffer numerous restrictions on their constitutional rights," further underscore that the two categories are distinct. See United States v. Chovan, 735 F.3d 1127, 1145 (9th Cir. 2013) (Bea, J., concurring); see also D.C. v. Heller, 554 U.S. 570, 631 (2008) (discussing that felons may be "disqualified" from exercising Second Amendment rights); United States v. McCane, 573 F.3d 1037, 1049 (10th Cir. 2009) (Tymkovich, J., concurring) ("After all, felons lose out on fundamental rights such as voting and serving on juries, and face discrimination that need only survive rational basis review."). The court also agrees that "society at large views a 'felon' far differently than a person who has committed an offense resulting in a misdemeanor conviction." See Myers v. The Telegraph, 773 N.E.2d 192, 198 (Ill. App. Ct. 2002)).

### (3)  *Actual Malice*

To prevail in a defamation claim, plaintiffs who are public officials, candidates for public office, or public figures must prove by clear and convincing evidence that the defendant made the defamatory statement with "actual malice" -- that is, "with knowledge that it was false or with reckless disregard of whether it was false or not."  New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964); Syl. Pt. 2, Gaughan, 480 S.E.2d at 551; see also Carr v. Forbes, Inc., 259 F.3d 273, 282 (4th Cir. 2001) ("Establishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence.").

"Actual malice is a subjective standard."  Reuber v. Food Chem. News, Inc., 925 F.2d 703, 714 (4th Cir. 1991) (en banc).  The Supreme Court of Appeals of West Virginia has also recognized that:

> The greatest obstacle that a public official libel plaintiff must overcome is the First Amendment requirement that the publisher of a libel against a public official have a <u>subjective appreciation</u> at the time of publication that either (1) the defamatory statement is false or (2) the defamatory statement is being published in reckless disregard of whether it is false.

Hinerman, 423 S.E.2d at 572 (emphasis in original).  Actual malice may be proven by circumstantial evidence.  See Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 668 (1989).

"[P]artisanship, animus toward the subject of a libel, or other 'malicious' motives" are not conclusive evidence of "actual malice" on their own, but a jury may consider them in determining "whether a subjective realization that the statement was false or a subjective realization that the statement was being published recklessly, existed at the time the statement was published." <u>Hinerman</u>, 423 S.E.2d at 573.

Reckless disregard of the truth, and thus a showing of actual malice, exists where there is "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" and yet published with such doubts. <u>See</u> <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968); <u>see also</u> <u>Bose Corp. v. Consumers Union of U.S., Inc.</u>, 466 U.S. 485, 511 n.30 (1984) (defining "reckless disregard" as when the defendant "subjectively entertained serious doubt as to the truth of his statement"). Alternatively, there must be sufficient evidence to permit the conclusion that the allegedly defamatory statement was "made with [a] high degree of awareness of [its] probable falsity." <u>See</u> <u>CACI Premier Tech., Inc. v. Rhodes</u>, 536 F.3d 280, 300 (4th Cir. 2008) (quoting <u>Garrison v. Louisiana</u>, 379 U.S. 64, 74 (1964)). Recklessness may be found where there are obvious

24

reasons to doubt the veracity or accuracy of information.  See St. Amant, 390 U.S. at 732.

Reliance on trustworthy sources for information does not support a showing of actual malice.  See, e.g., Horne v. WTVR, LLC, 893 F.3d 201, 211 (4th Cir. 2018), cert. denied, 139 S. Ct. 823 (2019) (finding no actual malice where a reporter relied on a confidential trusted source and there was no reason to doubt the accuracy of the source); Hatfill v. The New York Times Co., 532 F.3d 312, 325 (4th Cir. 2008) (finding no actual malice where a reporter relied on an expert); CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280, 295-304 (4th Cir. 2008) (finding no reckless disregard of the truth where a radio host used reliable sources, government-commissioned reports, and a published interview by another organization).  Because actual malice is a subjective standard, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard" on its own.  Harte-Hanks Commc'ns, 491 U.S. at 688, 692.  However, purposeful avoidance of the truth is a different matter, id. at 692, and a "newspaper's departure from accepted standards" may support a conclusion of reckless disregard of the truth.  Id. at 667–68.

The "mere presence" of previous stories in a newspaper's files does not establish that the newspaper knew that a statement was false "since the state of mind required for actual malice would have to be brought home to the persons in the [newspaper's] organization having responsibility for the publication of the [statement]." New York Times, 376 U.S. at 287. The plaintiff argues that several defendants knew that their statements were false at the time of publication because the corporate defendant with whom they were related had previously reported accurate information about the plaintiff's conviction. See, e.g., Compl. ¶¶ 166, 168 (Fox News); id. ¶¶ 169, 173, 191 (MSNBC); id. ¶¶ 171, 174 (CNN). However, the plaintiff does not allege specific facts that these individual defendants previously reported accurate information about the plaintiff's conviction. The plaintiff's allegations of knowledge based on previous articles or reporting do not alone support a plausible inference of actual malice on the part of the individual or corporate defendants.

Actual malice cannot be inferred from a failure to retract or correct a statement once the publisher learns that the statement is false. New York Times, 376 U.S. at 286; Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 614 (7th Cir. 2013). Likewise, actual malice cannot be inferred from correcting or

retracting a statement. The plaintiff alleges that certain defendants have not corrected or retracted their allegedly defamatory statements. See, e.g., Compl. ¶¶ 171, 174 (CNN, Sarah Elizabeth Cupp); id. ¶ 166 (Fox News, Neil Cavuto); id. ¶ 191 (MSNBC, Chris Hayes). Several defendants have issued retractions or corrections to their statements after becoming aware that the statements were false. See, e.g., id. ¶ 158 (Andrew Napolitano); ECF No. 198 at 13 (*The Washington Post*). None of these allegations are relevant to the issue of actual malice because actual malice is based on a defendant's subjective state of mind at the time the challenged statement was published, not whether or not they corrected the statement after publication. See Hinerman, 423 S.E.2d at 573.

C.    False Light Invasion of Privacy

West Virginia recognizes a legally protected interest in privacy. Tabata v. Charleston Area Med. Ctr., Inc., 759 S.E.2d 459, 464 (W. Va. 2014). Publicity that unreasonably places another in a false light before the public is an actionable invasion of privacy. Syl. Pt. 12, Crump, 320 S.E.2d at 74. In a false light invasion of privacy claim, the plaintiff must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread,

(3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be "highly offensive to a reasonable person," and (5) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed" (i.e., actual malice). See Taylor v. W. Virginia Dep't of Health & Human Res., 788 S.E.2d 295, 315–16 (W. Va. 2016) (citing Restatement (Second) of Torts § 652E (1977)); Crump, 320 S.E.2d at 87–88.

False light invasion of privacy claims are similar to defamation claims in that both require the publication of false material regarding the plaintiff. Crump, 320 S.E.2d at 87. In both cases, "a court should not consider words or elements in isolation, but should view them in the context of the whole article to determine if they constitute an invasion of privacy." Id. (quoting Rinsley, 700 F.2d at 1310). West Virginia courts therefore treat false light privacy claims in essentially the same manner as they treat defamation claims. Id.

Despite the similarities between defamation and invasion of privacy, they remain distinct theories of recovery with separate consideration. Id. at 86. Each action protects different interests: defamation actions involve injury to reputation, while privacy actions involve injury to emotions and

28

mental suffering.  Id. at 87.  Defamation requires a defamatory statement, but false light invasion of privacy instead requires the statement to be "offensive to a reasonable person."  Id. False light invasion of privacy also requires widespread publicity, which defamation does not require.  Id. at 87-88.

D.  Conspiracy

West Virginia recognizes the tort of civil conspiracy as a cause of action.  Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints, 801 S.E.2d 443, 458 (W. Va. 2017).  "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  Syl. Pt. 8, Dunn v. Rockwell, 689 S.E.2d 255, 259 (W. Va. 2009).  The cause of action is not created by the conspiracy itself but by the wrongful acts done by the defendants to injure the plaintiff.  Id.  "A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)."  Syl. Pt. 9, Dunn, 689 S.E.2d at 259.  A civil conspiracy must therefore be based on an underlying tort or

wrong.  <u>O'Dell v. Stegall</u>, 703 S.E.2d 561, 596 (W. Va. 2010)

(citing <u>Dunn</u>, 689 S.E.2d).

  In order for a civil conspiracy to be actionable, the

plaintiff must prove that the defendants have committed "some

wrongful act or have committed a lawful act in an unlawful

manner to the injury of the plaintiff." <u>Dunn</u>, 689 S.E.2d at

268-69.  A civil conspiracy may be proven by circumstantial

evidence.  <u>See</u> <u>Jane Doe-1</u>, 801 S.E.2d at 473.  Although a civil

conspiracy claim requires an underlying tort or harm resulting

from the conspiracy, the conspiracy claim may be disposed of

separately from the underlying cause of action.  <u>See</u> <u>id.</u> at 458.

## IV.  Analysis

  Some individual and corporate defendants assert

largely the same arguments in support of their motions under

Rule 12(b)(2).  They argue that they did not conduct any

relevant "activities in the state" or direct their conduct

toward West Virginia.  <u>See, e.g.</u>, ECF No. 196 at 25 (individual

CNN defendants); ECF No. 198 at 25 (*The Washington Post*

individual defendants); ECF No. 293 at 12 (Mediaite).  They also

argue that any reference to the plaintiff was in the context of

addressing numerous issues in national politics, directed toward

a national audience.  <u>See, e.g.</u>, ECF No. 196 at 25 (the CNN

individual defendants); ECF No. 213 at 9-10 (the Fox News individual defendants); ECF No. 221 at 19-20 (the MSNBC individual defendants). Individual defendants also affirm that they do not have connections to West Virginia, did not rely on sources located in West Virginia in preparing their news reports, and did not intend to target a West Virginia audience. See, e.g., ECF No. 253-6 ¶¶ 4-8 (Decker); ECF No. 253-7 ¶¶ 3-8 (Hensley); ECF No. 253-11 ¶¶ 3-8 (Resnick).

The plaintiff similarly asserts largely the same arguments in support of personal jurisdiction over the defendants. He argues that that the "general thrust" of the defendants' statements shows that the defendants manifested an intent to target a West Virginia audience such that they should have anticipated being haled into court in West Virginia to defend their statements. See, e.g., ECF No. 329 at 10-11; ECF No. 333 at 28; ECF No. 334 at 22. He also argues that the court should exercise personal jurisdiction over the defendants because West Virginia is the "focal point" of their defamatory statements and of the plaintiff's resulting harm. See, e.g., ECF No. 329 at 5-6, 11; ECF No. 334 at 23; ECF No. 341 at 19-20.

All the defendants largely assert the same arguments in support of their motions under Rule 12(b)(6). The defendants argue that the plaintiff fails to state a claim for either

defamation or false light invasion of privacy because the challenged statements were substantially true and because the plaintiff failed to allege plausibly that the defendants published the statements with actual malice. See, e.g., ECF No. 196 at 15, 23 (CNN); ECF No. 218 at 7-18 (Fox News); ECF No. 227 at 4-9 (News and Guts). The defendants also argue that the plaintiff merely asserts a generic and conclusory allegation that all the defendants acted with actual malice. See, e.g., ECF No. 198 at 19-20 (*The Washington Post*); ECF No. 218 at 13 (Fox News); ECF No. 227 at 8 (News and Guts). Some defendants assert that this case precisely implicates the kind of "passing mistakes" or "fleeting errors" that the actual malice standard is supposed to inoculate. See ECF No. 196 at 23 (CNN); ECF No. 198 at 21 (*The Washington Post*); ECF No. 392 at 6 (Williamson).

The plaintiff argues in opposition that his allegations create more than a plausible inference that the defendants acted with knowledge of the falsity of the challenged statements or with reckless disregard of their falsity. See, e.g., ECF No. 330 at 13; ECF No. 334 at 17; ECF No. 335 at 16. The plaintiff also asserts that some defendants are "sophisticated and knowledgeable political operatives" with "extensive experience and involvement in politics" so that they were at least reckless in publishing the allegedly defamatory

statements without complying with their own policies and procedures regarding the reporting of criminal convictions and first consulting the public record.  See, e.g., ECF No. 330 at 15; ECF No. 335 at 17; ECF No. 342 at 14.

A.    Cable News Network, Inc., Sarah Elizabeth Cupp, and Joe Lockhart (ECF No. 195)

On April 29, 2018, Cable News Network, Inc. ("CNN") host and chief political correspondent Dana Bash introduced a segment on the CNN program *CNN Newsroom* about the Republican primary in West Virginia.  ECF No. 196 at 11-12.  Bash opened the segment by explaining that "Don Blankenship served a year in prison for working conditions linked to the deadliest U.S. mine explosion in four decades.  He was the head of -- of the mining company at the time.  He reminds us it was just a misdemeanor . . . ."  ECF No. 195-2 at 2:5-9.  Kevin McLaughlin, a Republican Party strategist,[10] appeared as a guest during the segment and said about the plaintiff: "Well, I mean, pick your poison with this guy, right?  He doesn't live in West Virginia, he's a convicted felon."  See Compl. ¶ 160; ECF No. 196 at 12.

_____

[10] McLaughlin has been the Executive Director of the National Republican Senatorial Committee since December 2018.  See Compl. ¶ 82.

On May 2, 2018, defendant Sarah Elizabeth Cupp hosted a round-table discussion about various political topics, including primary elections in multiple states, on the television program *S.E. Cupp Unfiltered* on CNN's subsidiary network HLN.  See Compl. ¶ 171; ECF No. 196 at 13.  When discussing the West Virginia primary election, Cupp played a clip of the plaintiff speaking at the May 1, 2018 primary debate wherein the plaintiff discusses his conviction and corruption at the Department of Justice.  See Compl. ¶¶ 162, 171; ECF No. 196 at 13.  Cupp responded that: "'You wanna talk about the Justice Department, I know something about the Justice Department.' That's because you're a convict!  You're a felon!  Oh my god!" Compl. ¶ 171; ECF No. 195-4 at 13:21-24.

On May 7, 2018, the host of *CNN Tonight*, Don Lemon addressed several topics of national interest.  ECF No. 196 at 12.  About forty (40) minutes into the segment, Lemon introduced a segment about the West Virginia Republican primary, noting that President Donald Trump had tweeted to urge people to vote against the plaintiff.  See id.  Joe Lockhart, a CNN political contributor, stated during the segment that: "What's striking here is in Trump's tweet this morning, he didn't say anything about Roy Moore and his personal problems.  He didn't say don't vote for Blankenship because he went to jail.  He's a convicted

felon, he's a racist, and he's crazy." <u>See</u> Compl. ¶ 179; ECF No. 196 at 12.

On May 8, 2018, Cupp again discussed primary elections across the country on *S.E. Cupp Unfiltered* and said about the plaintiff that: "In case you missed it, a former coal baron and convicted felon is running for senate in West Virginia." <u>See</u> Compl. ¶ 174; ECF No. 196 at 13-14. The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) as to defendants Cupp and Lockhart, and pursuant to Rule 12(b)(6) against all three defendants. ECF No. 195.

### (1)  *Personal Jurisdiction*

The court lacks general jurisdiction over defendants Cupp and Lockhart because neither individual is domiciled in West Virginia. The court also lacks specific jurisdiction over these individual defendants because the plaintiff has not presented sufficient evidence to establish by a preponderance of the evidence that the "general thrust and content" of the statements was focused on West Virginia, or that the statements were uttered with the manifest intent of targeting a West Virginia audience. The allegedly defamatory statements were comments during broadcasts about national political issues to a national audience. It would not be reasonable for Cupp or

Lockhart to anticipate being haled into a West Virginia court on the basis of comments in a broadcast about political issues across several states aimed at a national audience.  The motion to dismiss with respect to defendants Cupp and Lockhart is granted for lack of personal jurisdiction.

### (2)  *Failure to State a Claim*

The plaintiff's allegations are sufficient at this stage to create a "plausible inference" that the CNN defendants uttered their statements with knowledge of their falsity or with reckless disregard of their falsity.  Cupp made her comment after showing a clip of the May 1, 2018 primary debate at which the plaintiff emphasized that his conviction was for a misdemeanor.  See Compl. ¶ 162.  There is a plausible inference that Cupp knew her statement was false, or that she otherwise recklessly disregarded the falsity of her statement, because she was reporting on an event in which the plaintiff affirmed the truth.  The same inference extends to Cupp's second statement since she was again commenting on the same conviction.

For the false light invasion of privacy claim, CNN argues, in addition to the requirements of falsity and actual malice, that the challenged statements cannot be considered "highly offensive" or a "major misrepresentation" because the

plaintiff was convicted of what the federal court considered to be a "dangerous" and "very serious" crime resulting in a one-year term of imprisonment.  See ECF No. 196 at 23-24.  As previously discussed, the court finds that society views a felon differently from a misdemeanant.  Calling the plaintiff a "felon" could place him in a false light that a reasonable person could consider "highly offensive."  The motion to dismiss is therefore denied with respect to CNN.

B.  WP Company LLC, Josh Dawsey, Jenna Johnson, Dana Milbank, and Amber Phillips (ECF No. 197)

On May 8, 2018, WP Company LLC ("*The Washington Post*") published an op-ed by Dana Milbank discussing a number of politicians and political groups in relation to the idea of "Trumpism."  ECF No. 198 at 11.  Milbank opines that: "Now we have Blankenship, Roy Moore, Joe Arpaio and a proliferation of name-calling misfits and even felons on Republican ballots. They are monsters created by the GOP, or rather the power vacuum the GOP has become."  Compl. ¶ 189; ECF No. 198 at 11.  The online version of the opinion article includes a hyperlink to another news article that correctly states that the plaintiff was convicted of a "misdemeanor . . . for conspiring to violate mine safety laws, which sent him to prison for a year."  ECF No. 197-7 at 2; ECF No. 198 at 12.

37

On July 25, 2018, Jenna Johnson and Josh Dawsey published an article on *The Washington Post* website discussing primary campaigns in over a dozen states. ECF No. 198 at 12. In the only paragraph about the West Virginia primary, the authors describe a tweet by President Trump regarding the primary: "A day before West Virginia's Senate primary, Trump urged Republicans to vote for either Rep. Evan Jenkins or Attorney General Patrick Morrisey but not Don Blankenship, a former coal mine owner and felon." <u>See</u> Compl. ¶ 218; ECF No. 198 at 12-13. The same article appeared in print in *The Washington Post* on July 27, 2018. <u>See</u> Compl. ¶ 220; ECF No. 198 at 12.

On August 9, 2018, *The Washington Post* published an online article by Amber Phillips stating that:

> Three convicted felons have run or are running for office this year. Two have lost — in New York, former congressman Michael Grimm vying for his old seat, and in West Virginia, former coal baron Don Blankenship. Former Arizona sheriff Joe Arpaio is still in the running for Senate in Arizona, and he has been embraced by the White House.

Compl. ¶ 221; ECF No. 198 at 13. The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) as to defendants Dawsey, Johnson, Milbank, and Phillips, and pursuant to Rule 12(b)(6) as to all the defendants. ECF No. 197.

### (1)  *Personal Jurisdiction*

The court lacks general jurisdiction over the individual defendants because none of them is domiciled in West Virginia.  The court also lacks specific jurisdiction over these defendants because the "general thrust and content" of their statements was not focused on West Virginia, and their statements were not published online or in print with the manifest intent of targeting a West Virginia audience.  There is no evidence that *The Washington Post* website directs electronic activity into West Virginia or that it intentionally targets a West Virginia audience with its content.  The allegedly defamatory statements were stray comments in news articles about national political issues aimed at a national audience, or at least aimed at an audience in the Washington, DC area.  It would not be reasonable for these defendants to anticipate being haled into a West Virginia court on the basis of these comments.  The court therefore grants the defendants' motion to dismiss with respect to defendants Dawsey, Johnson, Milbank, and Phillips for lack of personal jurisdiction.

### (2)  *Failure to State a Claim*

The plaintiff's allegations are sufficient at this stage to create a "plausible inference" that the defendants

published their statements with actual malice.  The plaintiff's conviction is a matter of public record, which these political reporters should have been aware to consult.  See Harte-Hanks Commc'ns, 491 U.S. at 667-68 (noting that a "newspaper's departure from accepted standards" may support a conclusion of reckless disregard to the truth).  Drawing reasonable inferences in favor of the plaintiff, the court finds that the plaintiff alleges enough facts to raise a reasonable expectation that discovery will reveal evidence of alleged wrongdoing.  The motion to dismiss is denied with respect to *The Washington Post*.

C.    Eli Lehrer (ECF No. 205) & *Charleston Gazette-Mail*
      (ECF No. 242)

On May 25, 2018, the *Charleston Gazette-Mail* newspaper published an article by Eli Lehrer, both based in West Virginia, stating that: "Former coal executive, convicted felon and self-described 'Trumpier-than-Trump['] West Virginia candidate Don Blankenship wants to remain in his U.S. Senate race after losing the Republican primary."  Compl. ¶ 212; ECF No. 2015-1 at 2. The defendants filed motions to dismiss pursuant to Rule 12(b)(6).  ECF Nos. 205, 242.

For the same reasons discussed in *The Washington Post* motion to dismiss, the plaintiff's allegations are sufficient at this stage to create a "plausible inference" that the defendants

here published their statement with actual malice.  The motions to dismiss are denied with respect to Eli Lehrer and the *Charleston Gazette-Mail*.

> **D.** **Fox News Network, LLC, Bradley Blakeman, Neil Cavuto, Stephanie Hamill, John Layfield, Elizabeth Macdonald, and Andrew Napolitano (ECF Nos. 211, 216)**

On April 25, 2018, former judge Andrew Napolitano appeared on a panel on the Fox News Network, LLC ("Fox News") program *Outnumbered* and said that: "[Don Blankenship] went to jail for manslaughter, after being indicted."[11]  See Compl. ¶¶ 16, 156; ECF No. 213 at 3.  The plaintiff asserts that Napolitano knew that the manslaughter claim was false because Napolitano is a former judge of the Superior Court of New Jersey and is a Fox News "Senior Judicial Analyst."  See Compl. ¶ 17.  Nevertheless, the plaintiff alleges that Napolitano made this statement "in part, in furtherance of the coordinated effort to defeat Mr. Blankenship's candidacy by any means."  See id. ¶ 157.

On May 7, 2018, Neil Cavuto appeared on the Fox Business Network program *Coast to Coast with Neil* and twice referred to the plaintiff as a "convicted felon" during panel

---

[11] Although this statement is different from the majority of defendants' statements identifying the plaintiff as a "felon," the accusation of manslaughter is clearly false.

41

discussions of the upcoming primary and general elections. See id. ¶ 166; ECF No. 213 at 3-4. Also on May 7, 2018, John Layfield hosted the Fox Business program *The Evening Edit* and referred to the plaintiff as "a felon who's got a probation officer, who could end up in Congress." See Compl. ¶ 168; ECF No. 213 at 4. Bradley Blakeman, a political consultant, appeared as a guest on the same program and stated, in reference to the plaintiff, that: "We can't have the standard bearer of our party running for statewide office, and the guy is a felon." See Compl. ¶ 168; ECF No. 213 at 4.

On May 8, 2018, Stephanie Hamill appeared on a panel on the Fox Business Network *Making Money* and said in reference to the plaintiff that: "[I]t might be difficult for him to actually win a general election because of his issue being a convicted felon." See Compl. ¶ 167; ECF No. 213 at 4-5. The plaintiff also alleges that Hamill made the statement, in part, as part of a concerted effort to defeat the plaintiff by falsely smearing him. See id. On May 9, 2018, Elizabeth Macdonald appeared on a panel on the Fox Business show *The Evening Edit* and referred to the plaintiff as a "felon." See Compl. ¶ 196; ECF No. 213 at 5.

The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) as to the individual defendants Napolitano,

Cavuto, Blakeman, Layfield, Hamill, and MacDonald, <u>see</u> ECF No. 211; pursuant to Rules 12(b)(5) for insufficient or untimely service of process as to defendants Blakeman, Hamill, MacDonald, and Napolitano, <u>see</u> <u>id.</u>; and pursuant to Rule 12(b)(6) against all the defendants, <u>see</u> ECF No. 216.

### (1) *Personal Jurisdiction*

The court lacks general jurisdiction over the individual defendants because none of them is domiciled in West Virginia. The court also lacks specific jurisdiction over these defendants because there is not sufficient evidence to show that the "general thrust and content" of the statements was focused on West Virginia, or that the statements were published with the manifest intent of targeting a West Virginia audience. All the programs on which the statements aired are broadcast nationwide. The plaintiff does not present evidence to show that a West Virginia audience is targeted in general by these programs or specifically on the dates in question. Furthermore, the allegedly defamatory statements were stray comments during much longer broadcasts about national political issues. It would not be reasonable for the individual defendants to anticipate being haled into a West Virginia court on the basis of these comments. The court therefore grants the defendants' motion to dismiss with respect to the individual defendants.

With regard to the arguments about insufficient or untimely service of process raised by defendants Blakeman, Hamill, MacDonald, and Napolitano, the court finds that issue moot in light of their dismissal just noted.

### (2) *Failure to State a Claim*

The plaintiff's allegations are sufficient at this stage to create a "plausible inference" that the Fox News defendants uttered their statements with knowledge of their falsity or with reckless disregard of their falsity. The parties have not demonstrated that television or broadcast media should be held to a different standard from print media when assessing actual malice. Like *The Washington Post*, the Fox News defendants should have been aware to consult the public record regarding the plaintiff's conviction. See Harte-Hanks Commc'ns, 491 U.S. at 667–68. Drawing reasonable inferences in favor of the plaintiff, the court finds that the plaintiff alleges enough facts to raise a reasonable expectation that discovery will

reveal evidence of alleged wrongdoing.  The motion to dismiss is denied with respect to Fox News.[12]

E.  **MSNBC Cable, LLC; NBCUniversal, LLC; CNBC, LLC; Leigh Ann Caldwell; Chris Hayes; Joy Ann Lomena-Reid; and Brian Schwartz (ECF No. 220)**

On April 16, 2018, Chris Hayes, an MSNBC Cable, LLC ("MSNBC") reporter and host of the program *All In With Chris Hayes*, posted the following statement to his Twitter account @chrislhayes: "The GOP may very well nominate a felonious coal baron found responsible for dozens of miners' deaths to [sic] as their senate nominee in WV."  Comp. ¶ 169; ECF No. 221 at 3. The plaintiff argues that a reasonable person would know from the reference to "coal baron" and "senate nominee in WV" that Hayes was referring to the plaintiff.  See Comp. ¶ 169.

On April 23, 2018, Hayes discussed the plaintiff's campaign advertisements on his show, *All In With Chris Hayes* on MSNBC, and stated: "That was a campaign ad in the Year of our Lord 2018 for a convicted felon Don Blankenship who spent a year in jail for his role in a mine disaster that killed 29 people,

---

[12] Fox News also argues that the false light invasion of privacy claim fails because the plaintiff has failed to allege a private, as distinguished from a public, fact.  See ECF No. 218 at 18-19.  However, the standard for a false light invasion of privacy claim does not require the fact to be a private one. See Taylor, 788 S.E.2d at 315-16; Crump, 320 S.E.2d at 87-88.

calling for Hillary Clinton to be locked up." Compl. ¶ 170; ECF No. 221 at 4.

On May 4, 2018, Joy Ann Lomena-Reid guest-hosted the MSNBC program *All In With Chris Hayes*, and identified the plaintiff as "coal baron and convicted felon Don Blankenship." See Compl. ¶ 172; ECF No. 221 at 4. On May 9, 2018, Hayes spoke about the plaintiff's loss in the May 8th primary election and stated: "[T]hus endeth the brief and unsuccessful Senate bid of convicted felon Don Blankenship." ECF No. 221 at 4-5.

On May 17, 2018, Leigh Ann Caldwell published an article on NBCUniversal's NBCNews.com website about the Republican party's strategy to win midterm general elections in various states. See Compl. ¶ 206; ECF No. 221 at 5. In one paragraph, Caldwell writes that: "The president urged West Virginia voters to support either Morrissey or another establishment candidate over ex-coal baron and convicted felon Dan Blankenship, who was running a Trump-like campaign." ECF No. 221 at 5.

On June 25, 2018, Brian Schwartz published an article on CNBC.com about Donald Trump, Jr. fundraising for Republican Senate candidates. See ECF No. 221 at 5-6. Schwartz only mentions the plaintiff in one paragraph: "[Trump, Jr.] also campaigned with Morrisey in early June when he was competing in

a crowded primary that included coal baron and convicted felon Don Blankenship who is now running as a third party candidate." See Compl. ¶ 219; ECF No. 221 at 5-6.

The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) as to defendants Caldwell, Hayes, Lomena-Reid, and Schwartz; pursuant to Rules 12(b)(4) and 12(b)(5) for insufficient service of process as to defendants, Schwartz, CNBC, and NBCUniversal; and pursuant to Rule 12(b)(6) against all the defendants.[13] See ECF No. 220.

### (1) *Personal Jurisdiction*

The court lacks general jurisdiction over the individual defendants because none of them is domiciled in West Virginia. The court also lacks specific jurisdiction over these defendants because there is not sufficient evidence to show that the "general thrust and content" of the statements was aimed at West Virginia, or that the statements were published with the manifest intent of targeting a West Virginia audience. Hayes' Twitter account, the broadcasts, and the publications are all

---

[13] Defendant Lomena-Reid initially joined the motion for dismissal pursuant to Rules 12(b)(4) and 12(b)(5) for insufficient service of process, but she withdrew her argument about late service in a notice to the court. See ECF No. 326. The notice does not modify any other arguments in the motion to dismiss. See id.

directed at national audiences to report on issues of national interest.  The plaintiff does not present evidence to show that a West Virginia audience is targeted in general by these broadcasts or publications, or that the defendants targeted a West Virginia audience with the specific statements at issue.  Furthermore, the allegedly defamatory statements in the broadcasts and publications were stray comments during reports of national political issues -- neither the plaintiff nor West Virginia was the main subject of these pieces.  It would not be reasonable for the individual defendants to anticipate being haled into a West Virginia court on the basis of these statements.  The court therefore grants the defendants' motion to dismiss with respect to the individual defendants.

### (2)  *Insufficient Service of Process*

A defendant must be served a summons and a copy of the complaint within ninety (90) days after the complaint is filed.  Fed. R. Civ. P. 4(m).  If a defendant is not served within the 90-day period, the court -- on motion or <u>sua sponte</u> after notice to the plaintiff -- must dismiss the action without prejudice against the unserved defendant or order that service be made within a specified time.  <u>Id.</u>  However, the court "must extend the time for service for an appropriate period" if the plaintiff

shows "good cause" for the failure to serve the defendant
timely.  Id.

     With regard to the arguments about insufficient
service of process raised by defendant Schwartz, the court finds
that issue moot in light of his dismissal just noted.

     The First Amended Complaint, filed on April 9, 2019,
names CNBC and NBCUniversal as defendants.  The plaintiff failed
to serve these two defendants by the 90-day service deadline on
July 8, 2019.  See ECF No. 221 at 14.  These defendants were not
served until September 5, 2019.  See ECF No. 305.  This service
came after the defendants filed their motion to dismiss on
August 16, 2019.  The plaintiff did not seek a waiver of service
under Rule 4(d), or otherwise request an extension of time to
serve until the plaintiff's responsive filing on September 30,
2019.  See ECF No. 333. The plaintiff attributes the untimely
service to an error by plaintiff's counsel.  ECF No. 333 at 23.

     The plaintiff named over one hundred defendants in
this single suit.  Coordinating service of process for each
defendant is a cumbersome task for such a myriad of defendants,
but it is a task that the plaintiff undertook when filing suit.
It seems that the plaintiff was not aware of the failure to
serve until the defendants raised it as a ground for dismissal
The plaintiff does not assert any "good cause" for failure to

serve these two defendants other than unexplained error by plaintiff's counsel, which the court finds not to constitute good cause.  See, e.g., Attkisson v. Holder, 925 F.3d 606, 627 (4th Cir. 2019) ("[G]ood cause generally exists when the failure of service is due to external factors, such as the defendant's intentional evasion of service.").  The court therefore grants the motion to dismiss CNBC and NBCUniversal without prejudice.

### (3)  *Failure to State a Claim*

For the same reasons discussed in the Fox News motion to dismiss, the plaintiff's allegations are sufficient at this stage to create a "plausible inference" that the defendants here published their statement with actual malice.  The plaintiff alleges enough facts to raise a reasonable expectation that discovery will reveal evidence of alleged wrongdoing.  The motion to dismiss is denied with respect to MSNBC.

### F.  News and Guts, LLC (ECF No. 226)

On May 7, 2018, News and Guts, LLC ("News and Guts") published an article titled "Don Blankenship: A Felon, a Racist and a Possible GOP Senate Nominee."  See Compl. ¶ 177; ECF No. 227 at 5-6.  News and Guts filed a motion to dismiss pursuant to Rule 12(b)(6).  ECF No. 226.

For the same reasons discussed in *The Washington Post* motion to dismiss, the plaintiff's allegations are sufficient at this stage to create a "plausible inference" that the defendants here published their statement with actual malice. The motion to dismiss is denied.

G. National Republican Senatorial Committee (ECF No. 228) & Kevin McLaughlin (ECF No. 236)

On April 29, 2018, Kevin McLaughlin appeared on the CNN program *CNN Newsroom* and said about the plaintiff that: "Well, I mean, pick your poison with this guy, right? He doesn't live in West Virginia, he's a convicted felon." Compl. ¶¶ 18, 160; ECF No. 196 at 12. The plaintiff asserts that McLaughlin knew the statement was false. See id. ¶¶ 18, 161.

The plaintiff alleges that, in the weeks before the May 8th primary election, members of the National Republican Senatorial Committee ("NRSC") participated in "clandestine meetings" to discuss a "menu" of possible ways to defeat the plaintiff in the primary election. See id. ¶¶ 14, 150. The plaintiff further alleges that the NRSC and Kevin McLaughlin conspired with 35th Inc. and unnamed defendants (Does 26-50) in a common plan to commit defamation and false light invasion of

51

privacy against the plaintiff.[14]  See id. ¶¶ 233, 246.  The
plaintiff argues that McLaughlin committed overt acts in
furtherance of the conspiracy by referring to the plaintiff as a
"convicted felon" on CNN.  See id. ¶¶ 234-35, 247-48.

McLaughlin filed a motion to dismiss pursuant to Rule
12(b)(2) for lack of personal jurisdiction and pursuant to Rule
12(b)(6) for failure to state a claim.  ECF No. 236.  The NRSC
filed a motion to dismiss pursuant to Rule 12(b)(6) for failure
to state a claim.  ECF No. 228.

### (1)  *Personal Jurisdiction*

The court lacks general jurisdiction over Kevin
McLaughlin because he is not domiciled in West Virginia.  The
court also lacks specific jurisdiction over McLaughlin for the
same reason as the CNN individual defendants – the allegedly
defamatory statement was a stray comment during a broadcast
about national political issues to a national audience.  It
would not be reasonable that the "general thrust" of that
singular statement should make McLaughlin anticipate being haled

---

[14] Defendant 35th Inc. is also listed in the First Amended
Complaint as "35th PAC."  See Compl. ¶ 37.  35th Inc. did not
file a motion to dismiss in this case.  The plaintiff provides
no information as to the make-up or purpose of 35th Inc.

into a West Virginia court.  The court therefore grants
McLaughlin's motion to dismiss.

### (2)  *Failure to State a Claim (Conspiracy)*

The NRSC argues that the plaintiff attempts to tie
liability to the NRSC on the theory that it conspired with other
defendants to defame him, but the plaintiff fails to allege any
specific acts or defamatory statements by the NRSC or any of its
employees.  See ECF No. 230 at 7, 10.  The NRSC also argues that
the plaintiff's accusation of conspiracy is pure speculation
because the plaintiff does not allege facts to support a "common
plan."  See id. at 11-12.  The plaintiff argues in opposition
that he sufficiently alleges conspiracy by the NRSC and other
defendants in this suit -- namely 35th Inc., McLaughlin, and
Does 26-50 -- to commit the underlying torts of defamation and
false light invasion of privacy.  See ECF No. 339 at 13-14.

The plaintiff has alleged enough facts to support the
plausible existence of a civil conspiracy between the NRSC and
other defendants.  The plaintiff has alleged a common plan
between multiple people as part of the meetings between Senate
Republicans and the NRSC.  The alleged purpose of the common
plan was to defame the plaintiff and place him in a false light,
and thereby defeat his candidacy for the West Virginia Senate

Republican primary election.  The plaintiff specifically alleges that defendants 35th Inc., McLaughlin, Napolitano, and Hamill are involved, and that the latter three took overt steps in furtherance of the common plan by defaming the plaintiff on news broadcasts.  See Compl. ¶¶ 157 (Napolitano), 167 (Hamill), 235 (McLaughlin).  Accepting the factual allegations as true and drawing reasonable inferences in favor of the plaintiff, the court finds that the plaintiff alleges enough facts to raise a reasonable expectation that discovery will reveal evidence of alleged wrongdoing.  The NRSC's motion to dismiss is denied.

## H.  FiscalNote, Inc. and Griffin Connolly (ECF No. 234)

On May 7, 2018, FiscalNote, Inc. d/b/a Roll Call published an article, which states that: "West Virginia GOP Senate candidate Don Blankenship suggested that establishment Republicans are 'misinforming' President Donald Trump and telling him to oppose his campaign 'because they do not want me to be in the U.S. Senate and promote the president's agenda,' the convicted felon and businessman wrote Monday morning on Facebook."  See Compl. ¶ 175; ECF No. 235 at 6.  The article also states that: "Blankenship was convicted of conspiracy to violate federal mine safety laws after 29 miners were killed in the 2010 Upper Big Branch Mine disaster."  See ECF No. 234-1 at 2; ECF No. 235 at 6.  The plaintiff alleges that Griffin

54

Connolly wrote the article, <u>see</u> Compl. ¶ 175, and later affirms
that "Griffin Connolly contributed to [the article]," <u>see</u> ECF
No. 340.[15]  Defendants FiscalNote, Inc. and Connolly filed a
motion to dismiss pursuant to Rule 12(b)(6).  ECF No. 234.

The plaintiff's allegations are sufficient at this
stage to create a "plausible inference" that the defendants
published the statement with actual malice.  The defendants
argue that Connolly should be dismissed from the suit because he
did not author the article in question.  However, Connolly
contributed to the article and thus bears some responsibility
for its content.  The article correctly states the plaintiff's
crime of conviction but mischaracterizes the conviction as a
felony.  Drawing reasonable inferences in favor of the
plaintiff, the court finds that the plaintiff alleges enough
facts to raise a reasonable expectation that discovery will
reveal evidence of alleged wrongdoing.  The motion to dismiss is
denied.

---

[15] The court does not have information about why the author was
not named as a defendant in this suit, or what Connolly
contributed to the article.

I.  **The Washington Times, LLC and Ben Wolfgang (ECF No. 238)**

On May 3, 2018, the plaintiff alleges that *The Washington Times*, a publication of The Washington Times, LLC, published an article by Ben Wolfgang in which Wolfgang writes that the West Virginia Republican primary "also includes former Massey Energy CEO and convicted felon Don Blankenship." See Compl. ¶ 162.  The plaintiff asserts that *The Washington Times* and Wolfgang knew that the statement was false because *The Washington Times* had reported a few weeks prior that the plaintiff had served a year in prison for a misdemeanor conviction.  See id. ¶ 163.  The plaintiff further asserts that *The Washington Times* and Wolfgang published the statement with malicious intent as part of a coordinated effort to defeat the plaintiff's candidacy.  See id.

On May 16, 2018, the plaintiff alleges that *The Washington Times* published an opinion article stating that: "The state's Republican primary pitted the state attorney general, a congressman, and a convicted felon against each other.  The felon, Don Blankenship, did prison time for his role in a coal-mining disaster that killed 29 persons, and he would likely have been a disastrous nominee." See id. ¶ 205.  The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) as to both

The Washington Times, LLC and Wolfgang, and pursuant to Rule 12(b)(6).  ECF No. 238.

### (1)  *Personal Jurisdiction*

The court lacks general jurisdiction over the defendants because none of them is domiciled in West Virginia.  The court also lacks specific jurisdiction over both defendants because the "general thrust and content" of their statements was not focused on West Virginia, and their statements were not published online with the manifest intent of targeting a West Virginia audience.  In contrast to <u>Calder v. Jones</u>, the plaintiff here is not the main subject of the articles and there is no evidence showing that the defendants targeted West Virginia or that *The Washington Times* has a significantly high circulation or distribution in West Virginia.  In fact, there is no evidence that *The Washington Times* website directs electronic activity into West Virginia or that it intentionally targets a West Virginia audience with its content.  The allegedly defamatory statements were stray comments in news articles about national political issues aimed at a national audience.  It would not be reasonable for these defendants to anticipate being haled into a West Virginia court on the basis of these comments.  The court therefore grants the defendants' motion to dismiss for lack of personal jurisdiction.

J.    <u>The Daily Beast Company, LLC and Gideon Resnick (ECF Nos. 253, 258)</u>

On May 8, 2018, The Daily Beast Company, LLC ("The Daily Beast") published an article online by Gideon Resnick reviewing primary campaigns in Indiana, Ohio, and West Virginia. <u>See</u> ECF No. 256 at 34. The article states that: "West Virginia Republicans could choose a felon who was responsible for the death of 29 miners to be their candidate for the U.S. Senate." Compl. ¶ 188.

The defendants filed motions to dismiss pursuant to Rule 12(b)(2) as to both The Daily Beast and Resnick, ECF No. 253, and pursuant to Rule 12(b)(6) as to both as well, ECF No. 258.[16]

(1) *Personal Jurisdiction*

The court lacks general jurisdiction over The Daily Beast and Gideon Resnick because neither of them is domiciled in West Virginia. The court also lacks specific jurisdiction over

---

[16] Defendants Daily News L.P.; Los Angeles Times Communications, LLC; The National Journal Group LLC; Cathleen Decker; Nicole Hensley, Josh Kraushaar, and David Martosko join in these motions for dismissal based on separate alleged defamatory statements. Capitol Hill Publishing, Inc. and Jen Kerns are listed as defendants and parties to these motions as well, but they were terminated from this suit pursuant to a court order. <u>See</u> ECF No. 307.

these defendants because there is no evidence that their statement was published online with the manifest intent of targeting a West Virginia audience. The allegations support the conclusion that The Daily Beast website does not direct electronic activity into West Virginia. To the extent that the website can be considered to target West Virginia, the statistics of website usage in West Virginia show that any "targeting" is <u>de minimis</u>, especially with regard to the small number of West Virginia users who actually read the article.[17] It would not be reasonable for these defendants to anticipate being haled into a West Virginia court on the basis of their statement in the article. The court therefore grants the motion to dismiss for lack of personal jurisdiction as to The Daily Beast and Gideon Resnick.

K.   <u>Daily News L.P. and Nicole Hensley (ECF Nos. 253, 258)</u>

On May 8, 2018, Daily News L.P.[18] published an article by Nicole Hensley stating that: "Blankenship, a convicted felon,

---

[17] The Daily Beast reports that users of its website from West Virginia accounted for 0.17% of total users during the month in which the article was published. <u>See</u> ECF No. 253-2 ¶ 12. In West Virginia, only six (6) users viewed the article as of August 16, 2019, which accounts for 0.9% of the total user traffic to the article. <u>See</u> <u>id.</u> ¶ 16.

[18] Daily News L.P. was substituted for Tribune Publishing Company, LLC as a defendant in this suit. <u>See</u> ECF No. 194.

conceded the Republican primary to State Attorney General Patrick Morrisey." Compl. ¶ 186. The defendants filed motions to dismiss pursuant to Rule 12(b)(2) as to both Daily News L.P. and Hensley, ECF No. 253, and pursuant to Rule 12(b)(6) as to both as well, ECF No. 258.

### (1) *Personal Jurisdiction*

The court lacks general jurisdiction over Daily News L.P. and Nicole Hensley because neither of them is domiciled in West Virginia. The court also lacks specific jurisdiction over these defendants because their statement was not published online with the manifest intent of targeting a West Virginia audience. The factual allegations support the conclusion that the Daily News L.P. website does not direct electronic activity into West Virginia. The statistics of website usage in West Virginia further show that any "targeting" is <u>de minimis</u>, especially with regard to the small number of West Virginia users who actually read the article.[19] The court therefore

---

[19] Daily News L.P. reports that users of its website from West Virginia accounted for 0.17% of total users during the month in which the article was published. <u>See</u> ECF No. 253-3 ¶ 19. Only thirty (30) users located in West Virginia viewed the article as of July 2019, which accounts for 0.27% of the total user traffic to the article. <u>See id.</u> ¶ 22.

grants the motion to dismiss for lack of personal jurisdiction as to Daily News L.P. and Nicole Hensley.

## L.    Los Angeles Times Communications, LLC and Cathleen Decker (ECF Nos. 253, 258)

On May 8, 2018, Los Angeles Times Communications, LLC ("the Los Angeles Times") published an online article by Cathleen Decker in which Decker refers to "Don Blankenship, a wealthy felon." Compl. ¶ 181. The defendants filed motions to dismiss pursuant to Rule 12(b)(2) as to both the Los Angeles Times and Decker, ECF No. 253, and pursuant to Rule 12(b)(6) as to both as well, ECF No. 258.

### (1)  *Personal Jurisdiction*

The court lacks general jurisdiction over The Los Angeles Times and Cathleen Decker because neither of them is domiciled in West Virginia. The court also lacks specific jurisdiction over these defendants because there is no evidence that their statement was published online with the manifest intent of targeting a West Virginia audience. The allegations support the conclusion that The Los Angeles Times website does not direct electronic activity into West Virginia. The statistics of website usage in West Virginia show that any "targeting" is de minimis, especially with regard to the small

61

number of West Virginia users who actually read the article.[20]
Again, the plaintiff fails to allege specific facts to establish
personal jurisdiction by a preponderance of the evidence.  The
court grants the motion to dismiss for lack of personal
jurisdiction as to the Los Angeles Times and Cathleen Decker.

      M.    **The National Journal Group LLC and Josh Kraushaar (ECF
          Nos. 253, 258)**

      On April 10, 2018, the plaintiff alleges that The
National Journal Group, LLC published an article by John
Kraushaar stating that: "Republicans have been concerned that
they could blow a winnable race against Sen. Joe Manchin of West
Virginia if a convicted felon (Don Blankenship) ends up as their
nominee."  Compl. ¶ 154.  The defendants filed motions to
dismiss pursuant to Rule 12(b)(2) as to both The National
Journal Group, LLC and Kraushaar, ECF No. 253, and pursuant to
Rule 12(b)(6) as to both as well, ECF No. 258.

---

[20] The Los Angeles Times reports that its primary readership is
in California.  See ECF No. 253-4 ¶¶ 4, 7.  It also reports that
users of its website from West Virginia accounted for 0.1% of
total users in the month when the article was published.  See
id. ¶ 18.  Only forty-eight (48) West Virginia users viewed the
article as of August 15, 2019, which accounts for 1.1% of the
total user traffic to the article.  See id. ¶ 20.

### (1) *Personal Jurisdiction*

National Journal Group, LLC is the publisher of a website and print publication that provides news coverage, commentary, and analysis on national political and policy issues for a Washington, D.C. audience of government affairs professionals.  ECF No. 253-5 ¶¶ 6-7.  No copies of the print publication were delivered outside the Washington, D.C. metropolitan areas in 2018 or 2019.  See id. ¶¶ 13-17.  Articles published on the website are available free of charge for seven days, after which the content is only available to paying subscribers.  Id. ¶ 9.  The website had at most ten (10) subscribers in West Virginia between April 2018 and July 2019, including two universities and five staff members of a West Virginia Congressman.  See id. ¶ 10.  National Journal Group, LLC reports that users of the website from West Virginia accounted for 0.20% of total users during the month in which the article was published.  See id. ¶ 11.  Only fifteen (15) users located in West Virginia viewed the article as of April 2019, which accounts for 0.20% of the total user traffic to the article.  See id. ¶ 19.  Fourteen of those fifteen users viewed the article during the initial window when the article was available free of charge.  Id.

The court lacks general jurisdiction over both defendants because neither of them is domiciled in West Virginia. The court also lacks specific jurisdiction over these defendants because the factual allegations clearly support the conclusion that the National Journal Group, LLC does not direct electronic activity into West Virginia. In fact, National Journal Group, LLC almost exclusively targets audiences in the Washington, D.C. metropolitan area. The court therefore grants the motion to dismiss for lack of personal jurisdiction as to National Journal Group, LLC and Josh Kraushaar.

N.    David Martosko (ECF Nos. 253, 258)

On May 11, 2018, David Martosko published an article on the *Daily Mail* website, which states that: "Morrisey prevailed in a nasty Republican primary this week that included convicted felon Don Blankenship, whose comments about 'Chinapeople' drove voters to abandon him."[21] Compl. ¶ 201; ECF No. 253-10 ¶ 6. Martosko filed motions to dismiss pursuant to Rule 12(b)(2), ECF No. 253, and pursuant to Rule 12(b)(6), ECF No. 258.

---

[21] The defendant Daily Mail and General Trust PLC ("*Daily Mail*") was terminated from this suit pursuant to a court order. See ECF No. 389.

### (1)   *Personal Jurisdiction*

The court lacks general jurisdiction over David Martosko because he is not domiciled in West Virginia. The court also lacks specific jurisdiction over Martosko because there is no evidence that the statement was published online with the manifest intent of targeting a West Virginia audience.[22] The plaintiff fails to present any specific factual allegations with regard to jurisdiction over Martosko. The plaintiff merely asserts the same general arguments and conclusions. The court therefore grants the motion to dismiss for lack of personal jurisdiction as to David Martosko.

### O.   American Broadcasting Companies, Inc. (ECF No. 258)

On July 24, 2018, American Broadcasting Companies, Inc ("ABC") posted the following tweet to its Twitter account @ABCPolitics: "Don Blankenship, the former coal baron and

---

[22] Martosko alleges that the DailyMail.com has its largest U.S. readership in states with larger populations, with only a "tiny fraction" in West Virginia. See ECF No. 253-10 ¶ 9.

convicted felon . . . ."[23]  Compl. ¶ 215; ECF No. 261-1 at 2.
ABC filed a motion to dismiss pursuant to Rule 12(b)(6).  ECF
No. 258.

The plaintiff's allegations are sufficient at this
stage to create a "plausible inference" that ABC posted the
tweet with actual malice.  The plaintiff's conviction is a
matter of public record, which ABC should be aware to consult.
Drawing reasonable inferences in favor of the plaintiff, the
court finds that the plaintiff alleges enough facts to raise a
reasonable expectation that discovery will reveal evidence of
alleged wrongdoing.  The motion to dismiss is denied as to ABC.

P.    Mediaite, LLC and Tamar Auber (ECF No. 292)

On May 3, 2018, Mediaite, LLC published an article by
Tamar Auber about the plaintiff's campaign advertisement.  See
ECF No. 293 at 3.  Auber writes that: "The convicted felon
turned Senate hopeful then tried to defend the whole thing by

---

[23] The plaintiff also alleges that, on July 24, 2018, Frontrunner
published an article quoting an ABC News Article with the phrase
"convicted felon."  See Compl. ¶ 217.  Frontrunner is not a
named defendant.  The plaintiff does not clarify whether the
phrase "convicted felon" is attributed to Frontrunner or ABC.
To the extent that the plaintiff attributes this statement to
ABC, the plaintiff does not provide a copy of the Frontrunner
article or any information about the ABC article.  The
allegation is therefore insufficient to allege a claim against
ABC.  The plaintiff does not pursue this claim in his response
to the motion to dismiss.  See ECF No. 332 at 13-15.

claiming he was an 'Americanperson' during the Fox News debate on Tuesday, adding there are also 'Koreanpersons' and 'Africanpersons.'" See Compl. ¶ 164; ECF No. 293 at 3. The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction as to both defendants, and pursuant to Rule 12(b)(6) for failure to state a claim for both defendants. ECF No. 292.

### (1) *Personal Jurisdiction*

In addition to the general arguments against these defendants, the plaintiff argues that the content of the Mediaite, LLC website aims specifically at a West Virginia audience based on approximately 484 references to West Virginia on the website, including stories only relevant to a West Virginia audience and approximately 114 pages that mention the plaintiff. See ECF No. 341 at 21.

The court lacks general jurisdiction over the individual defendants because neither of them is domiciled in West Virginia. However, the court finds that the plaintiff establishes a prima facie case for personal jurisdiction over the defendants by a preponderance of the evidence. The allegations demonstrate that the "general thrust and content" of the article was focused on West Virginia. Unlike many of the

other statements in this suit, the plaintiff is the main subject
of this article and was not a stray reference in a longer
article about national politics.  The content of the Mediaite,
LLC website, as alleged by the plaintiff, also provides evidence
that the defendants targeted a West Virginia audience for at
least some of their content.  The strength of this evidence is
weak since the plaintiff does not explain what percentage the
West Virginia content represents of the website's overall
content or over what period of time this content was published.
Despite this weakness, the West Virginia content on the website
combined with the focus of the article solely on West Virginia
politics supports a finding of personal jurisdiction by a
preponderance of the evidence.

### (2) *Failure to State a Claim*

The plaintiff's allegations are sufficient to create a
"plausible inference" that the defendants published their
statements with actual malice.  The article quotes the plaintiff
from the debate on May 1, 2018, the same event at which the
plaintiff emphasized that his conviction was for a misdemeanor.
It is therefore plausible to infer that the defendants knew
their statement was false based on their reporting of the very
event in which the plaintiff confirmed the truth of his

conviction, or that the defendants recklessly disregarded the truth from that event.   The motion to dismiss is denied.

Q.   <u>Breitbart News Network, LLC and Michael Patrick Leahy (ECF No. 351)</u>

On May 10, 2018, the plaintiff alleges that Breitbart News Network, LLC ("Breitbart News"), a national news website, published an article by Michael Patrick Leahy in which Leahy thrice describes the plaintiff as a "convicted felon."   <u>See</u> Compl. ¶ 198.   The defendants filed a motion to dismiss pursuant to Rule 12(b)(2) as to both defendants, and pursuant to Rule 12(b)(6).   ECF No. 351.

(1)   <u>*Personal Jurisdiction*</u>

The court lacks general jurisdiction over both defendants because neither of them is domiciled in West Virginia.   The court also lacks specific jurisdiction over these defendants because the plaintiff does not allege enough factual information to meet his burden of establishing personal jurisdiction over each defendant.   The plaintiff's complaint only alleges three stray references to the plaintiff as a "convicted felon."   No information is provided about the context of those remarks or the subject of the article in which they appear.   There is no information to determine whether the

"general thrust and content" of the statements was focused on West Virginia, or whether the defendants regularly engage in conduct to target a West Virginia audience.

The plaintiff provides statistical information about the number of references to West Virginia and the plaintiff on the Breitbart News website, which the court accepts for this purpose as true. See ECF No. 358 at 12 (reporting 2,220 references to West Virginia on the website, including stories only relevant to a West Virginia audience and approximately 42 pages that mention the plaintiff). However, the plaintiff errs by omitting what percentage of the website these references represent. Any national news website would naturally have content that references a particular state, but the percentage of the overall content is necessary to determine how much the website targets the audience of that state. Cf. Calder 465 U.S. at 785-90 (discussing the magazine circulation in California compared to other states). Based on the sparse information provided, the plaintiff fails to establish personal jurisdiction by a preponderance of the evidence. The court therefore grants the defendants' motion to dismiss for lack of personal jurisdiction.

R.    J.W. Williamson & WataugaWatch (ECF Nos. 42, 391, 393)

        The plaintiff alleges three defamatory publications by
the defendants WataugaWatch and Jerry Wayne ("J.W.") Williamson.
On April 15, 2018, WataugaWatch posted an article about the
plaintiff, which states that: "[W]ith the scary upstart being a
recent felon who presided over a coal company that lied about
the deaths of 29 coal miners, one Don Blankenship, who's
notorious in West Virginia without necessarily being electable."
See Compl. ¶ 155; ECF No. 392 at 1-2.  Williamson asserts that
the use of "felon" was intended to mean "someone who has served
time in jail."  ECF No. 392 at 2.

        On May 7, 2018, WataugaWatch posted an article about
several state primary elections, which opines that: "Holy crap!
Democratic incumbent Joe Manchin has been considered the most
endangered Democrat in the US Senate, but the Republican voters
in their primary tomorrow may grant him a reprieve . . . if they
choose felon coal baron Don Blankenship to run against him."
Compl. ¶ 180; ECF No. 392 at 2.

        On July 24, 2018, the plaintiff alleges that
WataugaWatch published an article stating that: "Blankenship, a
felon coal mine operator who came in third (last) on May 8th in
the Republican primary for US Senate, makes it a habit to stick
his thumb in the establishment's eye."  Compl. ¶ 216.

Williamson filed <u>pro se</u> a combined answer with numerous affirmative defenses, motion to dismiss, and motion for sanctions on June 19, 2019.[24]  See ECF No. 42.  Williamson later filed a separate motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6).  See ECF Nos. 391, 392.  Williamson also filed an amended motion to dismiss, asserting the same grounds for dismissal.  See ECF No. 393.

### (1) *Personal Jurisdiction*

J.W. Williamson is the owner and sole author of the political blog site WataugaWatch.  ECF No. 391-1 ¶¶ 1, 2. WataugaWatch is not incorporated and does not otherwise constitute a legal entity separate from Williamson who uses WataugaWatch as a blog to publish his own articles on cultural news and opinions on political and cultural topics.  See <u>id.</u> ¶¶ 2, 5.  Williamson uses WataugaWatch to express an interest in Appalachian regional politics.  See ECF No. 392 at 1.

The court lacks general jurisdiction over the defendant because he is not domiciled in West Virginia. However, the court finds that the plaintiff establishes a <u>prima</u>

---

[24] Documents filed <u>pro se</u> are "to be liberally construed," and "must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Erickson v. Pardus</u>, 551 U.S. at 94 (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

facie case for personal jurisdiction over Williamson by a
preponderance of the evidence.  Williamson admits that the
content of his blog focuses on Appalachian regional politics and
that the articles about the plaintiff were "in the context of
issues in national politics, directed at a regional audience."
See ECF No. 392 at 1, 8.  The Appalachian region includes West
Virginia, so a West Virginia audience is necessarily part of an
Appalachian "regional audience."  The allegations therefore
demonstrate that the "general thrust and content" of the article
was more likely than not aimed toward West Virginia.

#### (2)  *Failure to State a Claim*

        The plaintiff's allegations are sufficient to create a
plausible inference that Williamson published his articles with
actual malice.  As a blogger, Williamson cannot reasonably be
held to the same "accepted standard" as corporate newspapers.
However, the standard for actual malice does not vary based on
whether the defendant is a public figure or corporation.  The
potential reach and impact of Williamson's alleged defamation
may not be as impactful as defendants with nationwide audiences,
but such a determination is for the finder of fact and not for
the court to assess at the motion-to-dismiss stage.  Based on
the three publications and drawing reasonable inferences in
favor of the plaintiff, the court finds that the plaintiff

alleges enough facts to raise a reasonable expectation that discovery will reveal evidence of alleged wrongdoing.  The motion to dismiss is denied.

### (3)  <u>Rule 11 Sanctions</u>

By submitting a pleading to the court, a party certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," four conditions are true: (1) the pleading is not presented for an improper purpose (e.g., to harass, cause unnecessary delay), (2) the claims and defenses are warranted by existing law, (3) the factual allegations have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, and (4) denials of factual allegations are warranted on the evidence or are reasonably based on belief or a lack of information.  <u>See</u> Fed. R. Civ. P. 11(b).

The court, after notice and a reasonable opportunity to respond, may impose an appropriate sanction on a party that the court determines has violated Rule 11(b) or is responsible for the violation.  Fed. R. Civ. P. 11(c)(1).  A motion for Rule 11 sanctions has three mandatory requirements: (1) the motion must be made separately from any other motion, (2) the motion must describe the specific conduct that allegedly violates Rule

74

11, and (3) before filing the motion with the court, the movant must serve the offending party and allow a "safe harbor" period of twenty-one (21) days -- or another time that the courts sets -- for the offending party to withdraw or correct the challenged pleading.  <u>See</u> Fed. R. Civ. P. 11(c)(2); <u>Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 389 (4th Cir. 2004).

As part of his answer filed <u>pro se</u>, defendant Williamson requests sanctions pursuant to Rule 11.  <u>See</u> ECF No. 42 at 1, 9.  Williamson does not meet the requirements for a Rule 11 motion for sanctions because he does not file the motion separate from any other motion, and he does not describe any of the specific conduct that is alleged to violate Rule 11. Although the court generally provides more leniency to <u>pro se</u> parties, the requirements under Rule 11 are mandatory for all parties regardless of representation and they are clearly outlined in the Federal Rules of Civil Procedure, to which Williamson cites in his answer/motion.  Williamson's request for sanctions is therefore denied.

## V. Conclusion

For the foregoing reasons, it is ORDERED that:

(1)   The motion to dismiss by CNN, Sarah Elizabeth Cupp,
      and Joe Lockhart (ECF No. 195) be, and it hereby is
      granted as to Cupp and Lockhart, and denied as to CNN;
      and Cupp and Lockhart be, and they hereby are,
      dismissed from this suit;

(2)   The motion to dismiss by WP Company LLC, Josh Dawsey,
      Jenna Johnson, Dana Milbank, and Amber Phillips (ECF
      No. 197) be, and it hereby is granted as to Dawsey,
      Johnson, Milbank, and Phillips, and denied as to WP
      Company LLC; and Dawsey, Johnson, Milbank, and
      Phillips be, and they hereby are, dismissed from this
      suit;

(3)   The motions to dismiss by Eli Lehrer (ECF No. 205) and
      by the *Charleston Gazette-Mail* (ECF No. 242) be, and
      they hereby are, denied;

(4)   The motions to dismiss by Fox News, Bradley Blakeman,
      Neil Cavuto, Stephanie Hamill, John Layfield,
      Elizabeth Macdonald, and Andrew Napolitano (ECF Nos.
      211, 216) be, and they hereby are, granted as to
      Blakeman, Cavuto, Hamill, Layfield, Macdonald, and
      Napolitano, and denied as to Fox News; and Blakeman,
      Cavuto, Hamill, Layfield, Macdonald, and Napolitano
      be, and they hereby are, dismissed from this suit;

(5)   The motion to dismiss by MSNBC, NBCUniversal, CNBC,
      Leigh Ann Caldwell, Chris Hayes, Joy Ann Lomena-Reid,
      and Brian Schwartz (ECF No. 220) be, and it hereby is,
      granted as to NBCUniversal, CNBC, Caldwell, Hayes,
      Lomena-Reid, and Schwartz, and denied as to MSNBC;
      Caldwell, Hayes, Lomena-Reid, and Schwartz be, and
      they hereby are, dismissed from this suit; and
      NBCUniversal and CNBC be, and they hereby are,
      dismissed from this suit without prejudice;

(6)   The motion to dismiss by News and Guts, LLC (ECF No.
      226) be, and it hereby is, denied;

(7)   The motion to dismiss by the National Republican
      Senatorial Committee (ECF No. 228) be, and it hereby
      is, denied;

(8) The motion to dismiss by Kevin McLaughlin (ECF No. 236) be, and it hereby is, granted; and the defendant be, and he hereby is, dismissed from this suit;

(9) The motion to dismiss by FiscalNote, Inc. and Griffin Connolly (ECF No. 234) be, and it hereby is, denied;

(10) The motion to dismiss by The Washington Times, LLC and Ben Wolfgang (ECF No. 238) be, and it hereby is, granted; and the defendants be, and they hereby are, dismissed from this suit;

(11) The motion to dismiss under Rule 12(b)(2) by The Daily Beast, Daily News L.P., the Los Angeles Times, The National Journal Group, Cathleen Decker, Nicole Hensley, Josh Kraushaar, David Martosko, and Gideon Resnick (ECF No. 253) be, and it hereby is, granted; and the defendants be, and they hereby are, dismissed from this suit;

(12) The motion to dismiss under Rule 12(b)(6) by ABC and other defendants[25] (ECF No. 258) be, and it hereby is, denied as to ABC;

---

[25] These defendants were dismissed as part of ECF No. 253 for lack of personal jurisdiction.

(13) The motion to dismiss by Mediaite, LLC and Tamar Auber (ECF No. 292) be, and it hereby is, denied;

(14) The motion to dismiss by Breitbart News and Michael Patrick Leahy (ECF No. 351) be, and it hereby is, granted; and the defendants be, and they hereby are, dismissed from this suit;

(15) The motions to dismiss by J.W. Williamson & WataugaWatch (ECF Nos. 42, 391, 393) be, and they hereby are, denied.

In addition, it is ORDERED that the following motions be, and they hereby are, denied as moot because the defendants have already been dismissed pursuant to other court orders:

(1) The motion to dismiss by Mike Argento (ECF No. 181);

(2) The motion to dismiss by TheHuffingtonPost.com, Inc. and Michelangelo Signorile (ECF No. 200);

(3) The motion to dismiss by Andrew Feinberg and Breakfast Media, LLC (ECF No. 210);

(4) The motion to dismiss by Dan Rather (ECF No. 224); and

(5)   The motion to dismiss by the Democratic Senatorial Campaign Committee, Lauren Passalacqua, Ben Ray, David Bergstein, Courtney Rice, and Justin Lavoie (ECF No. 254).

Based on the above dismissals, twenty (20) defendants remain in this suit: 35th Inc.; American Broadcasting Companies, Inc.; Cable News Network, Inc.; FiscalNote, Inc.; Fox News Network, LLC; Hayride Media, LLC; Mediaite, LLC; MSNBC Cable LLC; National Republican Senatorial Committee; News and Guts, LLC; The Charleston Gazette-Mail; WataugaWatch; WP Company LLC; Tamar Auber; Griffin Connolly; Jim Heath; Matt Howerton; Chris Jones; Eli Lehrer; and J. W. Williamson.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

ENTER: March 31, 2020

John T. Copenhaver, Jr.
Senior United States District Judge