# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOSEPH MICHAEL ARPAIO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 19-3366 |
| ) | |
| **KEVIN ROBILLARD,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The Court once again finds itself tasked with resolving Plaintiff Joseph Arpaio's grievances against two media entities—TheHuffingtonPost.com, Inc. ("HuffPost") and Rolling Stone LLC ("Rolling Stone")—Kevin Robillard (an employee of HuffPost), and Tessa Stuart (an employee of Rolling Stone).[1] Plaintiff alleges that defendants defamed him in online news articles covering his 2018 campaign for United States Senate in Arizona. He also alleges that defendants tortiously interfered with prospective business relations and portrayed him in a false light.

The Court previously addressed these claims in the case of *Arpaio v. Zucker*, Case No. 18-cv-2894 (RCL) (D.D.C.). The Court granted defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiff did not allege any facts of actual malice. In response, plaintiff filed the instant case with a revised complaint. Plaintiff claims that the new complaint properly corrects the deficiencies of the old complaint.

---

[1] The Court will refer to HuffPost and Mr. Robillard collectively as "the HuffPost defendants." Likewise, the Court will refer to Rolling Stone and Ms. Stuart collectively as "the Rolling Stone defendants."

For their part, defendants argue that plaintiff's claims have already been litigated and are barred by *res judicata*. But even if they are not, defendants argue that they must be dismissed nonetheless because they still fail to state a claim.

Before the Court are defendants' motions to dismiss pursuant to Rule 12(b)(6) and the HuffPost defendants' motion for sanctions. For the reasons that follow, the Court will hold that plaintiff's claims are barred by *res judicata* and grant defendants' motions to dismiss, but the Court will deny the HuffPost defendants' motion for sanctions.

### Background

The facts underlying this case ("*Arpaio II*") are virtually identical to those presented in *Arpaio v. Zucker* ("*Arpaio I*"):

> Mr. Arpaio served as the Sheriff of Maricopa County from 1993 to 2017. Compl. ¶ 14, ECF No. 1. During his tenure as Sheriff, Mr. Arpaio was frequently at the center of various controversies. Among them was Mr. Arpaio's handling of his office's policing tactics in Latino neighborhoods, as detailed in *Melendres v. Arapaio*, No. CV-07-2513-PHX-GMS. In *Melendres*, Judge G. Murray Snow enjoined then-Sheriff Arpaio and his office from "detaining any person based only on knowledge or reasonable belief . . . that the person is unlawfully present within the United States because as a matter of law such knowledge does not amount to reasonable belief that the person" committed a crime. *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 U.S. Dist. LEXIS 214888, at *4 (D. Ariz. July 31, 2017). Judge Snow would go on to refer Mr. Arpaio for an investigation of criminal contempt based on the court's finding that Mr. Arpaio had knowledge of the injunction and continued to engage in conduct that violated it. *See id.* at *3; *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 U.S. Dist. LEXIS 111489, at *5–6 (D. Ariz. Aug. 19, 2016).
>
> The U.S. Department of Justice brought criminal contempt charges against Mr. Arpaio but agreed to limit the sentence it would seek to six months. Mar. 1, 2017 Order, *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB (D. Ariz.) (Dkt. No. 83) at 2–3. On July 31, 2017, Judge Susan R. Bolton found Mr. Arpaio guilty of criminal contempt of court. *Arpaio*, 2017 U.S. Dist. LEXIS 214888, at *26; *see id.* at *25 (explaining how Mr. Arpaio "flagrant[ly] disregard[ed]" Judge Snow's order). On August 25, 2017, President Donald Trump pardoned Mr. Arpaio, thereby mooting Mr. Arpaio's sentencing. *United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB, 2017 U.S. Dist. LEXIS 182254, at *4 (D. Ariz. Oct. 19, 2017).

*Arpaio I* Mem. Op. 2, ECF No. 56. The Court described defendants' conduct as follows:

> On November 13, 2018, Rolling Stone published an online article written by defendant Tessa Stuart (collectively "the Rolling Stone defendants") about Kyrsten Sinema's electoral victory over Martha McSally in the 2018 Arizona U.S. Senate race. The article referred to Mr. Arpaio as an "ex-felon" when explaining who Martha McSally defeated in the Arizona Republican primary. Within hours of the article's publication, Rolling Stone revised the article and changed "ex-felon" to "presidential pardonee." The revised article further clarified that Mr. Arpaio was convicted of a misdemeanor and the editor's note contains an apology.
>
> . . .
>
> On November 5, 2018, HuffPost published an online article written by defendant Kevin Robillard (collectively "the HuffPost defendants") about Kyrsten Sinema's record. The article mentioned Mr. Arpaio and erroneously stated that he had been sent to prison for his contempt of court conviction. Within two days, HuffPost explicitly corrected the mistake in the prior version of the article.

*Id.* at 4 (internal citations omitted).

Although the Court held that the HuffPost and Rolling Stones defendants' publications were not substantially true, the Court dismissed the claims against them with prejudice because plaintiff failed to allege facts of actual malice:

> Mr. Arpaio's complaint does not come close to adequately pleading facts of actual malice. The complaint makes only two attempts to explain why defendants acted with actual malice. The first attempt alleges that "[d]efendants acted with actual malice insofar as they knew that the statements made against Plaintiff Arpaio were false and/or recklessly disregarded their falsity." Compl. ¶ 40. This allegation is nothing more than a "[t]hreadbare recital[]" of the definition of actual malice. *See Iqbal*, 556 U.S. at 678; *Sullivan*, 376 U.S. at 280. As such, the Court can easily dismiss that allegation.
>
> The second attempt to allege facts of actual malice requires more elaboration. Mr. Arpaio alleges that defendants were motivated by "malice and leftist enmity" when they made their respective errors. Compl. ¶ 47. The Court understands that portion of his complaint to mean that allegations of differences in political opinions should satisfy the requirement to plead facts of actual malice. Even assuming the alleged "leftist enmity" is real, the motivations behind defendants' communications— inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law. *See Harte-Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("[A defendant's] motive in publishing a

3

story . . . cannot provide a sufficient basis for finding actual malice."). Furthermore, "a media defendant's 'adversarial stance' may be 'fully consistent with professional, investigative reporting' and is not 'indicative of actual malice.'" *Lohrenz*, 223 F. Supp. 2d at 46 (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)).

The Court will not pry open the gates of discovery just because Mr. Arpaio believes the erroneous communications were motivated by differences in political opinions. Doing so would run afoul of the Supreme Court's landmark ruling in *New York Times Co. v. Sullivan*. *See* 376 U.S. at 271–72 (noting that errors are inevitable when there is free debate and that they too must be protected to give breathing room to those exercising their freedom of expression). Allegations of "leftist enmity" cannot trump the guarantees of the First Amendment. Accordingly, the Court will grant defendants' motions to dismiss pursuant to Rule 12(b)(6).

*Id.* at 9–10 (footnote omitted).

Rather than appeal or otherwise challenge the Court's October 31, 2019, ruling, plaintiff filed this case on November 7, 2019. The *Arpaio II* complaint is largely the same as the *Arpaio I* complaint and its claims arise from the same allegedly defamatory articles. *See generally Arpaio I* Compl., ECF No. 1; *Arpaio II* Compl., ECF No. 1. But the *Arpaio II* complaint differs from the *Arpaio I* complaint in some respects: (1) it excludes the three CNN defendants from *Arpaio I*; (2) it adds two causes of action (general defamation and defamation by implication); and (3) it attempts to cure the *Arpaio I* complaint's deficiencies by adding a new subsection dedicated to alleging facts of actual malice. *See Arpaio II* Compl. ¶¶ 4–7, 31–48, 65–71, 72–80.

Defendants argue that plaintiff's claims have already been litigated and are barred by *res judicata*. But even if they are not, defendants argue that they must be dismissed nonetheless because they fail to state a claim. The HuffPost Defendants also argue that plaintiff's new case is time-barred.

### *Res Judicata*

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Claim preclusion bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. at 748–49). "By 'precluding parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

Regarding claim preclusion, the Court holds that the claims in *Arpaio I* are, for legal purposes, the same as the claims in *Arpaio II*. Even though plaintiff added two causes of action in *Arpaio II* (general defamation and defamation by implication), the Court sees no meaningful distinction between the new causes of action and the old ones. *See Montgomery v. Risen*, 197 F. Supp. 3d 219, 231, 266 (D.D.C. 2016) (dismissing general defamation, defamation per se, and defamation by implication claims for failure to prove actual malice). Furthermore, plaintiff does not explain why he could not have asserted all of these claims in *Arpaio I*. *See U.S. ex rel Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 77–78 (D.D.C. 2011) (a plaintiff who attempts to assert new claims in a second lawsuit based on the same nucleus of facts previously asserted and decided

5

violates *res judicata* principles). Plaintiff's claims in *Arpaio I* and *Arpaio II* are based the same nucleus of facts—defendants' allegedly defamatory articles.

Although plaintiff opted against suing the CNN defendants from *Arpaio I* again, the remaining defendants form *Arpaio I* are the only defendants in this case, so *Arpaio II* involves the same parties. Furthermore, the Court's ruling in *Arpaio I*, which dismissed plaintiff's claims pursuant to Rule 12(b)(6), set forth a final, valid judgment on the merits. *See Arpaio I* Order, ECF No. 55. For *res judicata* purposes, "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). Finally, plaintiff does not contest that this Court is a court of competent jurisdiction, so plaintiff's claims must be barred by claim preclusion.

Similarly, plaintiff's claims are also barred by issue preclusion. As the Court stated above, issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. at 748–49). The question of whether defendants defamed plaintiff was actually litigated and resolved in the Court's dismissal of plaintiff's claims in *Arpaio I*. So *Arpaio II* could be dismissed on these grounds as well.

Plaintiff's argument that he should have been permitted to file an amended complaint in *Arpaio I* does not save this case either.[2] *See* Pl.'s Mem. Opp. HuffPost Defs.' Mot. Dismiss 1–3,

---

[2] During the *Arpaio I* oral arguments, the Court questioned whether public figure plaintiffs in defamation cases can ever plead facts of actual malice sufficient to withstand a Rule 12(b)(6) motion without being able to get inside the head of a defendant accused of defamation (and without discovery). *See Arpaio I* July 25, 2019 Tr. 16:1–12, ECF No. 50. Later on in the hearing, plaintiff's counsel stated that "[plaintiff] clearly is not a felon. [Defendants] had reason to know he is not a felon. They had reason to know he didn't go to prison. They had reason to know what else we allege. We have said that specifically in the complaint. But if Your Honor does not feel it is specific enough, I will move to amend it with your leave in that regard." *Id.* at 49:17–23. Plaintiff's counsel also offered to submit a supplemental brief regarding the Court's ruling in *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002), *see id.* at 48:17–23, which he filed the day after oral arguments were held. *See Arpaio I* Notice of Bench Brief, ECF No. 49.

ECF No. 27. He claims that he prudently filed a new case because the Court erred in dismissing *Arpaio I* with prejudice. *See id.* at 2–3. But plaintiff had at least two procedurally sound options to challenge the Court's ruling: either file a timely appeal or a motion to reconsider the Court's judgment.[3] Plaintiff opted to file a new case instead—a decision that runs contrary to case law.

Accordingly, the Court will grant defendants' motions to dismiss plaintiff's claims pursuant to Rule 12(b)(6) because his claims are barred by *res judicata*.

## **Sanctions**

The HuffPost defendants moved to sanction plaintiff for filing and pursuing this case. In addition to seeking dismissal of this case, they ask the Court to award them their costs and attorneys' fees.

When a party presents a pleading or written motion to the Court, the attorney signing the document certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2). Rule 11(c) authorizes sanctions for violations of Rule 11(b). *See Rafferty v. NYNEX Corp.*, 60 F.3d 844, 852 (D.C. Cir. 1995). In *Rafferty*, the D.C. Circuit held that "once the district court finds that a pleading is not well grounded in fact, not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or is interposed for any improper purpose, 'Rule 11 *requires* that sanctions of some sort be imposed.'" *Id.* (emphasis in original) (quoting *Westmoreland v. CBS, Inc.*, 770 F.2d 1168,

---

But plaintiff never filed a motion for leave to amend his complaint during the approximately three-month time period between oral arguments and the Court's ruling on the case. The *Arpaio I* defendants were deprived of any meaningful opportunity to oppose leave to file an amended complaint because plaintiff failed to file such a motion.

[3] Plaintiff admits that he did not appeal the Court's ruling in *Arpaio I* because the D.C. Circuit is "a very liberal forum" that is "likely not favorably disposed towards Plaintiff Sheriff Arpaio[.]" Pl.'s Mem. Opp. HuffPost Defs.' Mot. Dismiss 3. He also states that an appeal would have "been costly and delayed adjudication on the merits." *Id.* Plaintiff's status as a public figure ("America's Toughest Sheriff") does not grant him special privileges—he cannot circumvent the normal appeals process because of alleged philosophical disagreements with D.C. Circuit judges.

1174–75 (D.C. Cir. 1985)). If a party's conduct warrants sanctions, courts have discretion to impose monetary and/or non-monetary sanctions, including dismissal of the action. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 554 (1991).[4]

The HuffPost defendants argue that plaintiff filed a frivolous case for an improper purpose. They compare this case to other cases within this Circuit where sanctions were imposed against plaintiffs who repeatedly filed the same cases after disappointing results. *See Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 21–23, 27 (D.D.C. 2004) (granting sanctions against a plaintiff and attorneys for filing a new complaint while the D.C. Circuit considered the dismissal of the original complaint and then attempting to amend a complaint against the same defendant in an unrelated case to include the rejected arguments after the D.C. Circuit affirmed the dismissal of the original complaint); *McLaughlin v. Bradlee*, 602 F. Supp. 1412, 1413–14, 1420 (D.D.C. 1985) (granting sanctions against a plaintiff who unsuccessfully attempted to advance the same case in four different trial courts and four post-judgment motions to change the outcome of the final dismissal).

Although the Court agrees with the HuffPost defendants that this case is frivolous, plaintiff's decision to initiate *Arpaio II* is not as egregious as the plaintiffs' actions in *Reynolds* and *McLaughlin*. The Court is not convinced that plaintiff filed this case for an improper purpose. Rather, the filing of this case seems to be the result of a legal miscalculation, which the Court corrects today by dismissing the case. Accordingly, the Court will deny the HuffPost defendants' motion for sanctions.

---

[4] Rule 11 requires the party moving for Rule 11 sanctions to serve the sanctions motion at least twenty-one days prior to filing it with the court, thus giving the other party a safe harbor window to withdraw the offending pleading or motion. Fed. R. Civ. P. 11(c)(2). The HuffPost defendants have satisfied this requirement. *See* Mot. Sanctions 4, ECF No. 24.

## **Conclusion**

Plaintiff may feel slighted by the Court's ruling in *Arpaio I*, but his filing of an entirely new case was inappropriate. The Court has limited resources—including time—to dedicate to each case before it, and it would be overwhelmed if disappointed plaintiffs could repackage and refile their cases as soon as they are dismissed. Indeed, our entire judicial system depends on parties following procedural rules and limits to endless litigation. And so, to be clear, nothing in this opinion should be understood to be an invitation to refile this case.

The Court **GRANTS** defendants' motions to dismiss pursuant to Rule 12(b)(6) and **DENIES** the HuffPost defendants' motion for sanctions. A separate order follows.

Date:   April 29, 2020                                   _____/s/_____
                                                                            Royce C. Lamberth
                                                                            United States District Judge